



Michael N. Anhar
3183 Kendra Ct.
Turlock, CA, 95382-1335
P: (209) 669-3909
michael.anhar@gmail.com
*Plaintiff, Self-Represented*

# UNITED STATES DISTRICT COURT

## For the Eastern District of California

### Fresno Division

| | |
|---|---|
| **Michael N. Anhar,** | Case No.: *1:19-CV-00496-LJO-EPG* |
| Plaintiff; | **Verified Civil Complaint for Actual, Statutory, and Punitive Damages and Injunctive Relief** |
| v. | |
| **Citibank, N.A.,** subsidiary of bank holding company Citigroup Inc. | 1. Violations of Truth in Lending Act (15 U.S.C. §§ 1601–1667f) |
| Defendant. | 2. Violations of Fair Credit Billing Act (15 U.S.C. §§ 1666–1666j) |
| | 3. Breach of Contract |

DEMANDED AMOUNT: $1,081,298.84

JURY TRIAL DEMANDED

**Citibank can't do that!**
Photo taken by Mr. Anhar on 08/25/18
(at ≈ 8:15 p.m.) showing the drive-thru
ATM screen at Citibank's Turlock branch
after the fourth time Citibank refused
Mr. Anhar's conforming cash payment.

## I.   OVERVIEW

1.     This is the case of "Citibank can't do that!" It concerns

Michael N. Anhar's now-closed Citi® ThankYou® Preferred Mastercard®.

Mr. Anhar pristinely maintained this credit-card account for 12+ years, but

he closed it on 08/25/18 when Citibank *refused—four times*—to accept and

credit his conforming cash payment, thereby failing to perform, harming him,

and thus breaching its own written contract. Citibank's rationale for this?—

Its own Aug-18 interest charge caused Mr. Anhar's account to go over limit,

resulting in Mr. Anhar's *suspension* from making conforming cash *payment*.

Since then, Citibank has gone on to violate the Truth in Lending Act

("TILA")[1] at least 17 times, especially Part B[2] and Part D (i.e., the Fair

Credit Billing Act; "FCBA").[3]

---

[1] 15 U.S.C. §§ 1601–1667f.
[2] 15 U.S.C. §§ 1631–1651.
[3] 15 U.S.C. §§ 1666–1666j.

## II.  JURISDICTION & VENUE

2.      This court has "original jurisdiction of all civil actions arising under the ... laws ... of the United States."[4] This is a federal-question case arising from Citibank's TILA violations. Thus, this court has subject-matter jurisdiction. This court has further subject-matter jurisdiction under TILA, which permits the bringing of a civil-liability action "within one year from the date of the occurrence of the violation."[5] Citibank's first TILA/FCBA violations were on 09/24/18, and its most recent were on or about 03/22/19. Thus, the statute of limitations is far from expiring. Further, this account isn't subject to arbitration per Mr. Anhar's 11/03/16 arbitration rejection and Citibank's 11/10/16 confirmation thereof.

3.      Venue is proper because "[a] civil action may be brought in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... ."[6] Stanislaus County is where Mr. Anhar and Citibank formed contract, as well as where Citibank breached that contract and repeatedly violated TILA/FCBA for more than half a year. Therefore, this court, whose geographic jurisdiction includes Stanislaus County (and the federal questions arising therein), is the proper venue for bringing this action. Accordingly, this court has personal jurisdiction over Citibank.

---

[4] 28 U.S.C. § 1331.
[5] 15 U.S.C. § 1640(e).
[6] 28 U.S.C. § 1391(b)(2).

## III. THE PARTIES

4.      Plaintiff is Michael N. Anhar, who resides at 3183 Kendra Ct., Turlock, CA, 95382-1335, in Stanislaus County. His home phone number is (209) 669-3909. He's lived at his home for almost 20 years. Mr. Anhar is a former adjunct professor of communication studies and English composition and has been competitively selected, four times, to present his research at national academic conference. He received highest honors when he finished his graduate studies at Sacramento State with a 3.97 GPA. Prior, he was a Dean's List recipient at Stanislaus State, where during his post-baccalaureate studies, he carried a consistent 4.0 GPA. Published since he was 17, he's also been a business owner twice over and has an extensive IT background. He's had four student loans with Defendant, plus a checking and savings account, as well as a more recent *second* credit card—all now closed by Mr. Anhar.

5.      Defendant Citibank, N.A.'s head office is at 701 E. 60th St. N., Sioux Falls, SD, 57104-0432, in Minnehaha County. Its parent is Citigroup Inc., a Delaware Corp. whose principle place of business (executive office) is at 388 Greenwich St., New York, NY, 10013-2375, in New York County. Its phone number is (212) 559-1000. Its CEO is Michael Corbat, whose 2017 salary was $23M.[7] As of 09/30/18, Citigroup's total assets are nearly $2T.[8]

---

[7] Anders Melin and Jennifer Surane, *Citigroup Lifts Corbat's Compensation 48% to $23 Million for 2017*, Bloomberg (9:23 p.m., Mar. 10, 2019), https://tinyurl.com/23M-Salary.
[8] National Information Center, *Holding Companies with Assets Greater Than $10 Billion*, The NIC Public Web Site (5:33 p.m., Mar. 11, 2019), https://tinyurl.com/2T-Assets.

## IV.  STATEMENT OF THE CASE

6.     Citibank's breach of contract arose on 08/25/18 (at ≈ 8:10 p.m.) when through no fault of his own and without any prior notice or good cause, Citibank refused—*four times*—to accept and credit Mr. Anhar's conforming $120 cash payment in USD at two PIN-accessed Citibank ATMs at its Turlock branch, all without exceeding $3,000 for the month. After its refusals, Mr. Anhar returned home and called Citibank's Customer Service at about 8:42 p.m. He spent nearly an hour on the phone, and with all parties consenting, audio-recorded the latter portion of the call, which he later transcribed. He spoke first with an agent, Ayush, then a supervisor, Mohit. Talking with Ayush was annoying and unproductive, as he kept insisting there was nothing wrong with the account while arbitrarily offering to send a new PIN. The conversation with Mohit was even worse, becoming increasingly heated and dysfunctional as he kept taking a series of contradictory guesses about the problem. At one point, Mohit shifted from "there's nothing wrong on the account at all" to "it got suspended."

7.     After spending some time rummaging through several guesses, Mohit circled back to his first hypothesis: Citibank had refused Mr. Anhar's payment because Citibank had suspended his account and had done so not just for making purchases and getting cash advances but also for accepting conforming cash payment. As Mr. Anhar parsed out during the conversation,

Citibank had done this because when it applied Aug-18's interest charge, Citibank itself caused the account to go over limit by $24.93. This trivial overage (which Citibank had caused 35 other times[9]—three of which were by a higher amount[10]—*all without issue*) was entirely caused by/comprised of Citibank's own interest, and because of it, Citibank refused Mr. Anhar's proper payment. If Citibank had honored that payment like it was required to and had done for years, then the account would've gone back under the limit Citibank exceeded in the first place, restoring Citibank's consideration (extension of credit) to Mr. Anhar, which was at the heart of the contract.

8.     On learning from Mohit that Citibank had really suspended his decade-old account and had done so under such contemptible circumstances, Mr. Anhar pressed the issue. With Mohit momentarily stunned into silence and unable to counter Mr. Anhar's valid points, Mohit grew defensive and derided, "You're not calling to get help. You're calling to complain." Besides fanning the flames, all this did was further erode what little confidence, trust, and respect remained in the relationship between the two contracted parties. When Mr. Anhar warned Mohit that if he persisted, then Mr. Anhar would close not only the suspended account but also his second account and then

---

[9] Jul-09, **Aug-09**, Sep-10, Feb-11, Nov-11, Feb-13, Mar-13, Apr-13, Jan-15, Feb-15, Mar-15, Apr-15, May-15, Jun-15, Jul-15, Aug-15, Sep-15, Oct-15, Nov-15, Dec-15, Jan-16, Feb-16, Mar-16, Apr-16, May-16, Jun-16, Jul-16, Aug-16, Oct-16, Dec-16, Apr-17, Jul-17, May-18, **Jun-18, Jul-18**.
[10] **Aug-09, Jun-18, Jul-18**.

1   forward his recording of the call to Citibank, Mohit taunted, "Well, sir,

2   that's not really a threat to me." Still not satiated, the ever-soft-spoken Mohit

3   interrupted Mr. Anhar to school *him* on the fundamentals of conversation,

4   importance of listening, and the need not to talk over him (Mohit). Now fully

5   realizing that his clientage was a joke and less than worthless to Citibank,

6   Mr. Anhar closed both accounts. Despite this, Mohit *again—twice more—*

7   suggested sending Mr. Anhar a new PIN and activating his new card (on his

8   now *closed* account). Citibank's dealings with Mr. Anhar had devolved into

9   something inescapably capricious and controlling, and that's not a contract.

10         9.      Mr. Anhar ended the call with Mohit and promptly filed an

11   appropriate albeit futile CFPB complaint. About two weeks later, he received

12   Citibank's 09/10/18 reply, which did little more than confirm that Citibank

13   had intentionally and unapologetically suspended Mr. Anhar's account just

14   as Mohit had guessed. Namely, Citibank wrote:

15         The error you received when attempting to make your
           payment at the ATM for your account ending in 1276 was due
16         to the amount of the balance that exceeded your credit limit,
           which resulted in the suspension of your account. Although
17         your account ending in 2471 also exceeded the credit limit,
           this account was not suspended at the time your $40.00
18         payment was received.

19   Citibank's statement here is quite cunning, barely concealing its attempt to

20   gaslight Mr. Anhar. It simultaneously conveys an air of technical formality

21   while subtly using circular reasoning and passive voice to try to shift blame

22

away from itself to Mr. Anhar. It couches the intentional contract-breaching

refusal to accept Mr. Anhar's conforming payment as an error, as if it were

unintentional and would be corrected. And it self-servingly references the

overage without (a) specifying it was a trivial $24.93; (b) admitting it was

entirely caused by and comprised of Citibank's own charge; (c) reconciling

Citibank's 35 other occasions of similarly causing Mr. Anhar's account to go

over limit, without suspension; (d) mentioning that on three such occasions,

Citibank had pushed Mr. Anhar's account over limit by more than $24.93,

also without suspension; and (e) acknowledging the arbitrariness of

suspending Mr. Anhar's first account but not his similarly situated second.

Namely, that same month, Citibank had pushed his second account over limit

but had *accepted* his conforming cash payment on that account. In fact, it had

done so on the same night, at the same time, and on one of the same ATMs

that it had refused his conforming cash payment on his first account.

10.     Ultimately, Citibank's refusal to accept and credit Mr. Anhar's

conforming payment was in direct contravention of its revised cash-payment

policy as established in its 05/08/18 Update and reaffirmed in its 06/22/18

June Statement, 07/23/18 July Statement, and 09/17/18 Account Update.

When read concurrently with the governing 10/23/16 Card Agreement, the

revised cash-payment policy serves to amend the agreement. Under these

combined and undisputed contractual elements and written provisions,

Mr. Anhar's repeatedly proffered $120 cash payment constituted a conforming payment. Thus, Citibank's refusal to accept and credit that payment constitutes intentional failure to perform, which means Citibank materially breached its own agreement. Once Citibank breached the contract, it became void, and the debt thereunder became invalid.

11.     Despite all the above, for the last seven-plus months (chronicled below), Citibank has kept treating the debt as valid, committing nearly 25 TILA/FCBA violations along the way. It has relentlessly made prohibited collections calls to Mr. Anhar's home, sent him barred dunning letters, issued fraudulent monthly billing statements, manufactured hundreds of dollars in finance charges, and created lasting harm to his creditworthiness by falsely reporting to the credit bureaus that his account is seriously delinquent. Citibank's willful, knowing, and persistent wrongful billing on, dunning of, and third-party reporting of an account that's closed, a debt that's invalid, and a contract that's void, amounts to fraud and oppression. For his part, Mr. Anhar has exhaustively tried to mitigate and resolve this case, but Citibank has discarded both him and the law. Citibank—a *national* bank—has done this not as an exception-to-the-rule but as standard operating procedure under color of corporate policy. This strongly suggests the claims alleged here have harmed many similarly situated Citibank clients. Thus, this case presents both a personal and public interest in bringing Citibank to justice.

## V.   STATEMENT OF FACTS

### A.   <u>2006</u>

12.   Mr. Anhar opened the account on or about 08/16/06, which at the time went under the Citi® Diamond Preferred® branding with an account number ending in 8417.

### B.   <u>2016</u>

13.   Citibank mailed Mr. Anhar its 10/23/16 Card Agreement.

14.   Citibank received Mr. Anhar's 11/03/16 arbitration rejection.

15.   Citibank mailed Mr. Anhar its 11/10/16 confirmation of his arbitration rejection.

### C.   <u>2018</u>

#### i.   *May*

16.   Citibank mailed Mr. Anhar its 05/08/18 Update setting forth Citibank's revised cash-payment policy.

#### ii.   *June*

17.   Citibank posted its 06/22/18 June Statement wherein it (a) reiterated its revised cash-payment policy and (b) assessed a $26.57 interest charge, pushing Mr. Anhar's account over limit by $26.40, not resulting in account suspension.

#### iii.   *July*

18.   Citibank posted its 07/23/18 July Statement wherein it

(a) reiterated its revised cash-payment policy and (b) assessed a $26.69 interest charge, pushing Mr. Anhar's account over limit by $25.60, not resulting in account suspension.

### iv.   August

19.    Citibank posted its 08/22/18 August Statement wherein it assessed a $25.80 interest charge, pushing Mr. Anhar's account over limit by $24.93, resulting in account suspension and rejection of his cash payment.

20.    On 08/25/18 (at ≈ 8:10 p.m.), using the front ATM at Citibank's Turlock branch (Geer Rd.), Mr. Anhar dipped then removed his Citi® ThankYou® Preferred Mastercard® as prompted, tapped English » Payment » Insert Cash, accurately keyed his PIN, and pressed "ENTER." This immediately produced Citibank's blue "I can't do that" screen, which lasted about 10 seconds, followed immediately by automatic logout, leaving Mr. Anhar unable to complete his ATM payment transaction.

21.    On the same night (at ≈ 8:11 p.m.), at the same front ATM, Mr. Anhar's second ATM payment attempt yielded the same result.

22.    On the same night (at ≈ 8:13 p.m.), now at the rear ATM (same branch), Mr. Anhar's third ATM payment attempt yielded the same result.

23.    On the same night (at ≈ 8:14 p.m.), at the same rear ATM, Citibank *accepted* Mr. Anhar's $40 cash payment on his *second* account despite Citibank's interest having pushed that account over limit as well.

24.     On the same night (at ≈ 8:15 p.m.), still at the same rear ATM, Mr. Anhar's fourth ATM payment attempt on his *first* account again yielded Citibank's blue "I can't do that" screen and automatic logout.

25.     On the same night (at ≈ 8:42 p.m.), Mr. Anhar did as instructed by Citibank's blue "I can't do that" screen: He called Customer Service and spoke first with an agent, Ayush, then a supervisor, Mohit. The call lasted nearly one hour. Mohit and Mr. Anhar discussed Citibank's suspending Mr. Anhar's account for making purchases, getting cash advances, and accepting cash payment because Citibank had caused his account to go over limit with Citibank's Aug-18 interest charge. Mr. Anhar closed both his Citibank accounts effective immediately.

26.     Citibank received Mr. Anhar's 08/26/18 CFPB complaint.

27.     On 08/27/18, now without any open card accounts, Mr. Anhar drove to the Turlock branch of Valley First Credit Union ("VFCU"). In a process that took about 1.5 hours, he opened a checking and requisite savings account; deposited into his savings account the requisite $25, which remains on hold for the life of the account; paid the $1 membership fee; made a $74 cash deposit into his checking account, of which he used $10 to pay for a debit card; and tested that debit card at the branch ATM. He later spent another half-hour-or-so updating his online payment information with various merchants (e.g., AT&T, Geico, Amazon, etc.).

### v.    September

28.    Citibank's Amy True (president's office) posted and mailed Mr. Anhar a 09/10/18 reply to his first CFPB complaint, confirming Citibank's intentional suspension of his first but not second account.

29.    Citibank received Mr. Anhar's 09/10/18 CFPB feedback about Citibank's reply to his first complaint.

30.    Citibank received Mr. Anhar's 09/10/18 CFPB complaint.

31.    At his request, Citibank's Customer Service mailed Mr. Anhar a 09/17/18 confirmation of Citibank's revised cash-payment policy.

32.    Citibank posted its 09/24/18 September Statement.

33.    Citibank's Amy True posted and mailed Mr. Anhar a 09/25/18 reply to his second CFPB complaint.

34.    Citibank received Mr. Anhar's 09/26/18 CFPB feedback about Citibank's reply to his second complaint.

35.    Mr. Anhar mailed Citibank's Amy True and Customer Service his 09/28/18 (1st) billing dispute notice wholly refuting Citibank's September Statement.

36.    Citi Client First mailed Mr. Anhar its 09/30/18 dunning letter.

### vi.    October

37.    On 10/02/18, Citibank's Amy True and Customer Service received Mr. Anhar's 09/28/18 (1st) billing dispute notice.

38. On 10/05/18 (at ≈ 2:17 p.m. PST), without having responded to Mr. Anhar's first billing dispute notice, Ethan of Citi Client First made a collections call to Mr. Anhar's home, which Mr. Anhar consentingly recorded and later transcribed.

39. Citi Client First received Mr. Anhar's 10/09/18 refutation of its first dunning letter.

40. Citibank's G. Stevens (Vice President) mailed Mr. Anhar a 10/11/18 stop-calling confirmation.

41. Citibank's Amy True mailed Mr. Anhar a 10/15/18 reply to his two CFPB feedback submissions.

42. Citibank's G. Stevens received Mr. Anhar's 10/17/18 reply to Citibank's stop-calling confirmation.

43. Citibank posted its 10/22/18 October Statement.

44. Citibank's Amy True received Mr. Anhar's 10/22/18 refutation of Citibank's CFPB-feedback reply.

45. Without having responded to Mr. Anhar's first billing dispute notice, Citibank's G. Stevens mailed Mr. Anhar a 10/24/18 dunning letter.

46. Citibank's Customer Service received Mr. Anhar's 10/24/18 (2nd) billing dispute notice wholly refuting Citibank's October Statement.

47. Citibank's G. Stevens received Mr. Anhar's 10/31/18 refutation of Citibank's second dunning letter.

### vii.    November

48.    As of 11/22/18, Citibank's response to Mr. Anhar's first billing dispute notice had been outstanding for two complete billing cycles.

49.    Citibank posted its 11/22/18 November Statement.

50.    Citibank's Customer Service received Mr. Anhar's 11/24/18 (3rd) billing dispute notice wholly refuting Citibank's November Statement.

### viii.    December

51.    Citibank's Customer Service mailed Mr. Anhar its 12/10/18 written response to his third billing dispute notice.

52.    Citibank's Customer Service received Mr. Anhar's 12/18/18 *further* notice following Citibank's 12/10/18 reply to his third notice.

53.    As of 12/24/18, Citibank's response to Mr. Anhar's second billing dispute notice had been outstanding for two complete billing cycles.

54.    Citibank posted its 12/24/18 December Statement.

55.    Without having responded to Mr. Anhar's first or second billing dispute notice, Citibank's G. Stevens mailed Mr. Anhar a 12/26/18 dunning.

56.    Citibank's Customer Service received Mr. Anhar's 12/26/18 (4th) billing dispute notice wholly refuting Citibank's December Statement.

57.    Citibank received Mr. Anhar's 12/26/18 CFPB complaint.

58.    Mr. Anhar filed a 12/26/18 complaint with the Office of the Comptroller of the Currency ("OCC").

59. Mr. Anhar filed a 12/26/18 complaint with the Calif. Dept. of Business Oversight.

60. The Calif. Dept. of Business Oversight mailed Mr. Anhar a 12/27/18 reply referring his complaint to the CFPB.

61. Mr. Anhar filed a 12/30/18 complaint with the FDIC.

62. Mr. Anhar filed a 12/30/18 complaint with the Federal Reserve.

**D.   2019**

> *i.   January*

63. In Jan-19, Mr. Anhar mailed Experian his credit-file dispute.

64. In Jan-19, Mr. Anhar filed a TransUnion credit-file dispute.

65. Mr. Anhar received a 01/02/19 email reply from the FDIC referring his complaint to the CFPB.

66. The OCC mailed Mr. Anhar a 01/03/19 reply referring his complaint to the CFPB.

67. Without having responded to Mr. Anhar's first, second, or fourth billing dispute notice, Citibank's G. Stevens mailed Mr. Anhar a 01/04/19 dunning letter.

68. Citibank's Customer Service mailed Mr. Anhar a 01/05/19 cryptic letter of unknown purpose.

69. Citibank's Customer Service mailed Mr. Anhar its 01/07/19 written response to his fourth billing dispute notice.

70.    Citibank's G. Stevens received Mr. Anhar's 01/07/19 refutation of Citibank's third dunning letter.

71.    Mr. Anhar received a 01/07/19 email reply from the Federal Reserve referring his complaint to the CFPB.

72.    Citibank's Skye Roxton (president's office) posted and mailed Mr. Anhar a 01/08/19 reply to his third CFPB complaint.

73.    Citibank received Mr. Anhar's 01/09/19 CFPB feedback about Citibank reply to his third complaint.

74.    Citibank's Skye Roxton received Mr. Anhar's 01/09/19 refutation of Citibank's reply to his third CFPB complaint.

75.    Citibank's G. Stevens received Mr. Anhar's 01/12/18 refutation of Citibank's fourth dunning letter.

76.    Citibank's Customer Service received Mr. Anhar's 01/12/18 refutation of Citibank's 01/05/19 cryptic letter.

77.    Citibank's Customer Service received Mr. Anhar's 01/14/19 *further* notice following Citibank's 01/07/19 reply to his fourth notice.

78.    Citibank posted its 01/22/19 January Statement for billing period 12/25/18–01/22/19 wherein it listed a $35 credit to Mr. Anhar's account but backdated it 12/24/18—one day before the billing period began.

79.    Citibank's Customer Service received Mr. Anhar's 01/25/19 (5th) billing dispute notice wholly refuting Citibank's January Statement.

80. Mr. Anhar sent TransUnion a 01/26/19 Investigation Request.

### ii. February

81. Mr. Anhar mailed the OCC his 02/03/19 appeal.

82. Experian mailed Mr. Anhar its 02/06/19 notice that it would be unable to honor his January credit-file dispute for lack of information.

83. Citibank posted its 02/22/19 February Statement.

84. Mr. Anhar mailed Citibank's Customer Service his 02/26/19 (6th) billing dispute notice wholly refuting Citibank's February Statement.

### iii. March

85. On 03/01/19, Mr. Anhar re-mailed his OCC appeal.

86. On 03/13/19, Mr. Anhar received via UPS Citibank's 03/01/19 cryptic letter of unknown purpose.

87. Mr. Anhar mailed Citibank's Customer Service his 03/14/19 refutation of its 03/01/19 cryptic letter.

88. Citibank's Customer Service received Mr. Anhar's 03/16/19 addendum to his fifth billing dispute notice.

89. On 03/19/19, Mr. Anhar mailed Experian a new submission of his Jan-19 credit-file dispute.

90. Citibank posted its 03/22/19 March Statement.

91. Mr. Anhar mailed Citibank's Customer Service his 03/23/19 (7th) billing dispute notice wholly refuting his March Statement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

## VI.  CLAIMS

### A.  <u>Count 1</u>

#### i.  *Breach of Contract*[11]
08/25/18 Refusing to Perform

> This Card Agreement … is your contract with us. … Any amendments to this Agreement also are part of this Agreement.[12] We're updating our policy around making cash payments … . Starting July 21, 2018 … : Cash payments on your credit card will no longer be accepted by bank employees at Citibank branches.[13] [P]roprietary Citibank ATMs will accept cash payments up to $3,000 per credit card account per calendar month with your credit card PIN.[14]

92.   Mr. Anhar incorporates by reference all preceding paragraphs.

93.   Mr. Anhar and Citibank entered into contract.

94.   Mr. Anhar did all, or substantially all, the significant things the contract required him to do, including proffering conforming cash payment.

95.   Citibank was bound by the terms of its contract, which required Citibank to accept and credit conforming cash payment.

96.   Citibank repeatedly refused to accept and credit Mr. Anhar's 08/25/18 conforming cash payment, which the contract required Citibank to do, constituting intentional failure to perform and thus material breach.

97.   Mr. Anhar has been harmed and continues to be harmed.

---

[11] Calif. Civil Code §§ 1549–1701.

[12] 10/23/16 Card Agreement.

[13] 05/08/18 Update.

[14] 06/22/18 June Statement, p. 3; 07/23/18 July Statement, p. 3; *see also* 09/17/18 Account Update.

98.   Citibank's breach of contract was and continues to be a substantial factor, if not the sole factor, in causing Mr. Anhar's harm.

**B.   Count 2**

   **i.   *Criminal*[15] *& Civil*[16] *Violation of TILA, Part B***
   09/24/18 Disregarding of Statement Requirements

> The creditor ... shall transmit to the obligor ... a statement setting forth ... [t]he total amount credited to the account during the period[,] ... [t]he balance on which the finance charge was computed ... [the fact that] the balance [was] determined without first deducting all credits during the period, ... [and] the amount of such [credits] ... .[17]

99.   Mr. Anhar incorporates by reference all preceding paragraphs.

100.   Citibank's Sep-18 statement imposed a $53.80 finance charge.

101.   Citibank wrongfully refused to set forth a $3,174.93 credit to the account following Citibank's 08/25/18 breach of contract.

102.   Citibank wrongfully refused to set forth the post-credit correct balance on which the finance charge was computed, the amount of the credit, and the fact that the balance was calculated without first applying the credit.

103.   Citibank was subject to the provisions of TILA's Part B, which imposed on Citibank several statement requirements.

104.   Citibank willfully and knowingly disregarded those statement requirements, which TILA imposed on Citibank, thereby violating TILA.

---

[15] 15 U.S.C. §§ 1611(1) and (3).
[16] 15 U.S.C. §§ 1640(a).
[17] 15 U.S.C. §§ 1637(b)(3) and (7).

### c.   Count 3

#### i.   *Criminal & Civil Violation of TILA, Part B*
10/22/18 Disregarding of Statement Requirements

105.   Mr. Anhar incorporates by reference all preceding paragraphs.

106.   Citibank's Oct-18 statement imposed a $60.45 finance charge.

107.   Citibank wrongfully refused to set forth a $3,228.73 credit to the account following Citibank's 08/25/18 breach of contract and Citibank's subsequent wrongful billings.

108.   Citibank wrongfully refused to set forth the post-credit correct balance on which the finance charge was computed, the amount of the credit, and the fact that the balance was calculated without first applying the credit.

109.   Citibank was subject to the provisions of TILA's Part B, which imposed on Citibank several statement requirements.

110.   Citibank willfully and knowingly disregarded those statement requirements, which TILA imposed on Citibank, thereby violating TILA.

### D.   Count 4

#### i.   *Criminal & Civil Violation of TILA, Part B*
11/22/18 Disregarding of Statement Requirements

111.   Mr. Anhar incorporates by reference all preceding paragraphs.

112.   Citibank's Nov-18 statement imposed a $63.72 finance charge.

113.   Citibank wrongfully refused to set forth a $3,289.18 credit to the account following Citibank's 08/25/18 breach of contract and Citibank's

subsequent wrongful billings.

114.   Citibank wrongfully refused to set forth the post-credit correct balance on which the finance charge was computed, the amount of the credit, and the fact that the balance was calculated without first applying the credit.

115.   Citibank was subject to the provisions of TILA's Part B, which imposed on Citibank several statement requirements.

116.   Citibank willfully and knowingly disregarded those statement requirements, which TILA imposed on Citibank, thereby violating TILA.

**E.**   **Count 5**

**i.**   ***Criminal & Civil Violation of TILA, Part B***
12/24/18 Disregarding of Statement Requirements

117.   Mr. Anhar incorporates by reference all preceding paragraphs.

118.   Citibank's Dec-18 statement imposed a $65.23 finance charge.

119.   Citibank wrongfully refused to set forth a $3,352.90 credit to the account following Citibank's 08/25/18 breach of contract and Citibank's subsequent wrongful billings.

120.   Citibank wrongfully refused to set forth the post-credit correct balance on which the finance charge was computed, the amount of the credit, and the fact that the balance was calculated without first applying the credit.

121.   Citibank was subject to the provisions of TILA's Part B, which imposed on Citibank several statement requirements.

122.   Citibank willfully and knowingly disregarded those statement

requirements, which TILA imposed on Citibank, thereby violating TILA.

**F.** **Count 6**

**i.** ***Criminal & Civil Violation of TILA, Part B***
01/22/19 Disregarding of Statement Requirements

123.    Mr. Anhar incorporates by reference all preceding paragraphs.

124.    Citibank's Jan-19 statement imposed a $63.31 finance charge.

125.    Citibank wrongfully refused to set forth a $3,418.13 credit to the account following Citibank's 08/25/18 breach of contract and Citibank's subsequent wrongful billings.

126.    Citibank wrongfully refused to set forth the post-credit correct balance on which the finance charge was computed, the amount of the credit, and the fact that the balance was calculated without first applying the credit.

127.    Citibank was subject to the provisions of TILA's Part B, which imposed on Citibank several statement requirements.

128.    Citibank willfully and knowingly disregarded those statement requirements, which TILA imposed on Citibank, thereby violating TILA.

**G.** **Count 7**

**i.** ***Criminal & Civil Violation of TILA, Part B***
02/22/19 Disregarding of Statement Requirements

129.    Mr. Anhar incorporates by reference all preceding paragraphs.

130.    Citibank's Feb-19 statement imposed a $65.84 finance charge.

131.    Citibank wrongfully refused to set forth a $3,446.44 credit to

the account following Citibank's 08/25/18 breach of contract and Citibank's subsequent wrongful billings.

132.   Citibank wrongfully refused to set forth the post-credit correct balance on which the finance charge was computed, the amount of the credit, and the fact that the balance was calculated without first applying the credit.

133.   Citibank was subject to the provisions of TILA's Part B, which imposed on Citibank several statement requirements.

134.   Citibank willfully and knowingly disregarded those statement requirements, which TILA imposed on Citibank, thereby violating TILA.

### H.   Count 8

#### i.   *Criminal & Civil Violation of TILA, Part B*
03/22/19 Disregarding of Statement Requirements

135.   Mr. Anhar incorporates by reference all preceding paragraphs.

136.   Citibank's Mar-19 statement imposed a $28.37 finance charge.

137.   Citibank wrongfully refused to set forth a $3,512.28 credit to the account following Citibank's 08/25/18 breach of contract and Citibank's subsequent wrongful billings.

138.   Citibank wrongfully refused to set forth the post-credit correct balance on which the finance charge was computed, the amount of the credit, and the fact that the balance was calculated without first applying the credit.

139.   Citibank was subject to the provisions of TILA's Part B, which imposed on Citibank several statement requirements.

140. Citibank willfully and knowingly disregarded those statement requirements, which TILA imposed on Citibank, thereby violating TILA.

## I. **Count 9**

### i. *Criminal & Civil Violation of TILA, Part B*
01/22/19 Falsifying of Billing Statement

> The creditor ... shall transmit to the obligor ... a statement setting forth ... [t]he ... date of each extension of credit during the period ... .[18]

141. Mr. Anhar incorporates by reference all preceding paragraphs.

142. Citibank's Jan-19 statement imposed a $63.31 finance charge.

143. Citibank's statement was for the period of 12/25/18–01/22/19.

144. Citibank's statement set forth a 12/24/18 $35 credit.

145. Citibank's line-item credit was backdated to one day before the billing period even began.[19]

146. Citibank was subject to the provisions of TILA's Part B, which imposed on Citibank several statement requirements that inherently necessitated Citibank not set forth false or fraudulent information.

147. Citibank willfully and knowingly disregarded at least one such requirement, which TILA imposed on Citibank, thereby violating TILA.

---

[18] 15 U.S.C. § 1637(b)(2).

[19] Coincidentally, if not suspiciously, 12/24/18 would have been the last day for Citibank to respond legally to Mr. Anhar's 10/24/18 billing dispute notice. So backdating this otherwise random and arbitrary credit may have been Citibank's failed attempt to avoid detection while pretending to satisfy its obligation to respond within two billing cycles.

J.      **Count 10**

     *i.*    ***Criminal & Civil Violation of FCBA***
         10/05/18 Disregarding of Collections Prohibition

> [T]he creditor shall, ... prior to taking any action to collect the [disputed] amount, or any part thereof, indicated by the obligor[,] ... make appropriate corrections in the account of the obligor ... or ... send a written explanation or clarification to the obligor, after having conducted an investigation ... .[20]

148.    Mr. Anhar incorporates by reference all preceding paragraphs.

149.    Citibank posted its 09/24/18 September Statement.

150.    Mr. Anhar mailed Citibank, at its billing-inquiries address, his 09/28/18 (1st) billing dispute notice.

151.    Mr. Anhar's notice was in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief the statement had a billing error, specified the amount of that billing error, and stated the reason for his belief that the statement contained a billing error.

152.    Citibank's Customer Service received Mr. Anhar's dispute notice on 10/02/18, which was far fewer than 60 days after Citibank's 09/24/18 statement transmittal.

153.    Ethan from Citi Client First made a 10/05/18 collections call to Mr. Anhar's home, which Mr. Anhar answered.

154.    Citibank's collections call was barred because Citibank hadn't yet responded (and never did respond) to Mr. Anhar's dispute notice, and

---

[20] 15 U.S.C. § 1666(a); *see also American Express Co. v. Koerner*, 452 U.S. 233 (1981)

two complete billing cycles hadn't passed since Citibank received that notice.

155.   Citibank was subject to the provisions of FCBA, which imposed on Citibank a conditional collections prohibition.

156.   Citibank willfully and knowingly disregarded that collections prohibition, which FCBA imposed on Citibank, thereby violating FCBA.

### K.   Count 11

#### i.   *Criminal & Civil Violation of FCBA*
10/24/18 Disregarding of Collections Prohibition

157.   Mr. Anhar incorporates by reference all preceding paragraphs.

158.   Citibank posted its 09/24/18 September Statement.

159.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 09/28/18 (1st) billing dispute notice.

160.   Mr. Anhar's notice was in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief the statement had a billing error, specified the amount of that billing error, and stated the reason for his belief that the statement contained a billing error.

161.   Citibank's Customer Service received Mr. Anhar's dispute notice on 10/02/18, which was far fewer than 60 days after Citibank's 09/24/18 statement transmittal.

162.   Citibank's G. Stevens mailed Mr. Anhar a 10/24/18 dunning.

163.   Citibank's dunning was barred because Citibank hadn't yet responded (and never did respond) to Mr. Anhar's dispute notice, and two

complete billing cycles hadn't passed since Citibank received that notice.

164. Citibank was subject to the provisions of FCBA, which imposed on Citibank a conditional collections prohibition.

165. Citibank willfully and knowingly disregarded that collections prohibition, which FCBA imposed on Citibank, thereby violating FCBA.

### L.   Count 12

#### i.   *Criminal & Civil Violation of FCBA*
12/26/18 Disregarding of Collections Prohibition

166. Mr. Anhar incorporates by reference all preceding paragraphs.

167. Citibank posted its 09/24/18 September Statement.

168. Mr. Anhar mailed Citibank, at its billing-inquiries address, his 09/28/18 (1st) billing dispute notice.

169. Citibank posted its 10/22/18 October Statement.

170. Mr. Anhar mailed Citibank, at its billing-inquiries address, his 10/24/18 (2nd) billing dispute notice.

171. Mr. Anhar's notices were in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief each statement had a billing error, specified the amount of each billing error, and stated the reason for his belief that each statement contained a billing error.

172. Citibank's Customer Service received Mr. Anhar's first dispute notice on 10/02/18, which was far fewer than 60 days after Citibank's 09/24/18 statement transmittal.

173. Citibank's Customer Service received Mr. Anhar's second dispute notice a few days after 10/24/18, which was far fewer than 60 days after Citibank's 10/22/18 statement transmittal.

174. Citibank's G. Stevens mailed Mr. Anhar a 12/26/18 dunning.

175. Citibank's dunning was barred because as of 11/22/18 and 12/24/18, respectively, two complete billing cycles had passed since Citibank received Mr. Anhar's 09/28/18 and 10/24/18 dispute notices, but Citibank hadn't responded (and never did respond) to either of those notices.

176. Citibank was subject to the provisions of FCBA, which imposed on Citibank a conditional collections prohibition.

177. Citibank willfully and knowingly disregarded that collections prohibition, which FCBA imposed on Citibank, thereby violating FCBA.

### M.   Count 13

#### i.   *Criminal & Civil Violation of FCBA*
01/04/19 Disregarding of Collections Prohibition

178. Mr. Anhar incorporates by reference all preceding paragraphs.

179. Citibank posted its 12/24/18 December Statement.

180. Mr. Anhar mailed Citibank, at its billing-inquiries address, his 12/26/18 (4th) billing dispute notice.

181. Mr. Anhar's notice was in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief the statement had a billing error, specified the amount of that billing error, and

stated the reason for his belief that the statement contained a billing error.

182.   Citibank's Customer Service received Mr. Anhar's dispute notice a few days after 12/26/18, which was far fewer than 60 days after Citibank's 12/24/18 statement transmittal.

183.   Citibank's G. Stevens mailed Mr. Anhar a 01/04/19 dunning.

184.   Citibank's dunning was barred because it was sent before Citibank responded on or after 01/07/19 to Mr. Anhar's 12/26/18 notice.

185.   Citibank was subject to the provisions of FCBA, which imposed on Citibank a conditional collections prohibition.

186.   Citibank willfully and knowingly disregarded that collections prohibition, which FCBA imposed on Citibank, thereby violating FCBA.

**N.**   **Count 14**

*i.*   ***Criminal & Civil Violation of FCBA***
11/22/18 Disregarding of Response Requirements

187.   Mr. Anhar incorporates by reference all preceding paragraphs.

188.   Citibank posted its 09/24/18 September Statement.

189.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 09/28/18 (1st) billing dispute notice.

190.   Mr. Anhar's notice was in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief the statement had a billing error, specified the amount of that billing error, and stated the reason for his belief that the statement contained a billing error.

191.   Citibank's Customer Service received Mr. Anhar's dispute notice on 10/02/18, which was far fewer than 60 days after Citibank's 09/24/18 statement transmittal.

192.   As of 11/22/18, two complete billing cycles had passed since Citibank received Mr. Anhar's dispute notice, but Citibank hadn't responded (and never did respond) to that notice.

193.   Citibank was subject to the provisions of FCBA, which imposed on Citibank dispute response requirements.

194.   Citibank willfully and knowingly disregarded those response requirements, which FCBA imposed on Citibank, thereby violating FCBA.

    o.   **Count 15**

        i.   ***Criminal & Civil Violation of FCBA***
           12/24/18 Disregarding of Response Requirements

195.   Mr. Anhar incorporates by reference all preceding paragraphs.

196.   Citibank posted its 10/22/18 October Statement.

197.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 10/24/18 (2nd) billing dispute notice.

198.   Mr. Anhar's notice was in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief the statement had a billing error, specified the amount of that billing error, and stated the reason for his belief that the statement contained a billing error.

199.   Citibank's Customer Service received Mr. Anhar's dispute notice a few days after 10/24/18, which was far fewer than 60 days after Citibank's 10/22/18 statement transmittal.

200.   As of 12/24/18, two complete billing cycles had passed since Citibank received Mr. Anhar's dispute notice, but Citibank hadn't responded (and never did respond) to that notice.

201.   Citibank was subject to the provisions of FCBA, which imposed on Citibank dispute response requirements.

202.   Citibank willfully and knowingly disregarded those response requirements, which FCBA imposed on Citibank, thereby violating FCBA.

P.   **Count 16**

i.   ***Criminal & Civil Violation of FCBA***
10/22/18 Disregarding of Subsequent Statement Requirement

> For the purposes of this section, "action to collect the amount, or any part thereof, indicated by an obligor under paragraph (2)" does not include the sending of statements ... if ... the creditor indicates the payment of such amount is not required pending the creditor's compliance with this section.[21]

203.   Mr. Anhar incorporates by reference all preceding paragraphs.

204.   Citibank posted its 09/24/18 September Statement.

---

[21] 15 U.S.C. § 1666(c)(2); *see also Gray v. American Exp. Co.*, 743 F.2d 10 (D.C. Cir. 1984) ("[T]he card issuer must notify the cardholder on subsequent statements of account that he need not pay the amount in dispute until the card issuer has complied with Sec. 1666.").

205.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 09/28/18 (1st) billing dispute notice.

206.   Mr. Anhar's notice was in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief the statement had a billing error, specified the amount of that billing error, and stated the reason for his belief that the statement contained a billing error.

207.   Citibank's Customer Service received Mr. Anhar's dispute notice on 10/02/18, which was far fewer than 60 days after Citibank's 09/24/18 statement transmittal.

208.   Citibank posted its 10/22/18 October Statement without indicating Mr. Anhar wasn't required to pay the disputed amount.

209.   Citibank was subject to the provisions of FCBA, which imposed on Citibank a subsequent statement requirement.

210.   Citibank willfully and knowingly disregarded that statement requirement, which FCBA imposed on Citibank, thereby violating FCBA.

Q.   **Count 17**

   i.   ***Criminal & Civil Violation of FCBA***
   11/22/18 Disregarding of Subsequent Statement
   Requirement

211.   Mr. Anhar incorporates by reference all preceding paragraphs.

212.   Citibank posted its 09/24/18 September Statement.

213.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 09/28/18 (1st) billing dispute notice.

214.   Citibank posted its 10/22/18 October Statement.

215.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 10/24/18 (2nd) billing dispute notice.

216.   Mr. Anhar's notices were in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief each statement had a billing error, specified the amount of each billing error, and stated the reason for his belief that each statement contained a billing error.

217.   Citibank's Customer Service received Mr. Anhar's first dispute notice on 10/02/18, which was far fewer than 60 days after Citibank's 09/24/18 statement transmittal.

218.   Citibank's Customer Service received Mr. Anhar's second dispute notice a few days after 10/24/18, which was far fewer than 60 days after Citibank's 10/22/18 statement transmittal.

219.   Citibank posted its 11/22/18 November Statement without indicating Mr. Anhar wasn't required to pay the disputed amounts.

220.   Citibank was subject to the provisions of FCBA, which imposed on Citibank a subsequent statement requirement.

221.   Citibank willfully and knowingly disregarded that statement requirement, which FCBA imposed on Citibank, thereby violating FCBA.

R.    **Count 18**

    i.    ***Criminal & Civil Violation of FCBA***
        12/24/18 Disregarding of Subsequent Statement
        Requirement

222.   Mr. Anhar incorporates by reference all preceding paragraphs.

223.   Citibank posted its 09/24/18 September Statement.

224.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 09/28/18 (1st) billing dispute notice.

225.   Citibank posted its 10/22/18 October Statement.

226.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 10/24/18 (2nd) billing dispute notice.

227.   Mr. Anhar's notices were in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief each statement had a billing error, specified the amount of each billing error, and stated the reason for his belief that each statement contained a billing error.

228.   Citibank's Customer Service received Mr. Anhar's first dispute notice on 10/02/18, which was far fewer than 60 days after Citibank's 09/24/18 statement transmittal.

229.   Citibank's Customer Service received Mr. Anhar's second dispute notice a few days after 10/24/18, which was far fewer than 60 days after Citibank's 10/22/18 statement transmittal.

230.   Citibank posted its 12/24/18 December Statement without indicating Mr. Anhar wasn't required to pay the disputed amounts.

231.   Citibank was subject to the provisions of FCBA, which imposed on Citibank a subsequent statement requirement.

232.   Citibank willfully and knowingly disregarded that statement requirement, which FCBA imposed on Citibank, thereby violating FCBA.

### s.   Count 19

#### i.   *Criminal & Civil Violation of FCBA*
01/22/19 Disregarding of Subsequent Statement Requirement

233.   Mr. Anhar incorporates by reference all preceding paragraphs.

234.   Citibank posted its 09/24/18 September Statement.

235.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 09/28/18 (1st) billing dispute notice.

236.   Citibank posted its 10/22/18 October Statement.

237.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 10/24/18 (2nd) billing dispute notice.

238.   Mr. Anhar's notices were in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief each statement had a billing error, specified the amount of each billing error, and stated the reason for his belief that each statement contained a billing error.

239.   Citibank's Customer Service received Mr. Anhar's first dispute

1    notice on 10/02/18, which was far fewer than 60 days after Citibank's

2    09/24/18 statement transmittal.

3         240.   Citibank's Customer Service received Mr. Anhar's second

4    dispute notice a few days after 10/24/18, which was far fewer than 60 days

5    after Citibank's 10/22/18 statement transmittal.

6         241.   Citibank posted its 01/22/19 January Statement without

7    indicating Mr. Anhar wasn't required to pay the disputed amounts.

8         242.   Citibank was subject to the provisions of FCBA, which imposed

9    on Citibank a subsequent statement requirement.

10        243.   Citibank willfully and knowingly disregarded that statement

11   requirement, which FCBA imposed on Citibank, thereby violating FCBA.

12        **T.**   **Count 20**

13             *i.*   ***Criminal & Civil Violation of FCBA***
                      02/22/19 Disregarding of Subsequent Statement
14                    Requirement

15        244.   Mr. Anhar incorporates by reference all preceding paragraphs.

16        245.   Citibank posted its 09/24/18 September Statement.

17        246.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his

18   09/28/18 (1st) billing dispute notice.

19        247.   Citibank posted its 10/22/18 October Statement.

20        248.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his

21   10/24/18 (2nd) billing dispute notice.

22

249. Mr. Anhar's notices were in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief each statement had a billing error, specified the amount of each billing error, and stated the reason for his belief that each statement contained a billing error.

250. Citibank's Customer Service received Mr. Anhar's first dispute notice on 10/02/18, which was far fewer than 60 days after Citibank's 09/24/18 statement transmittal.

251. Citibank's Customer Service received Mr. Anhar's second dispute notice a few days after 10/24/18, which was far fewer than 60 days after Citibank's 10/22/18 statement transmittal.

252. Citibank posted its 02/22/19 February Statement without indicating Mr. Anhar wasn't required to pay the disputed amounts.

253. Citibank was subject to the provisions of FCBA, which imposed on Citibank a subsequent statement requirement.

254. Citibank willfully and knowingly disregarded that statement requirement, which FCBA imposed on Citibank, thereby violating FCBA.

### U.   **Count 21**

#### i.   ***Criminal & Civil Violation of FCBA***
03/22/19 Disregarding of Subsequent Statement Requirement

255. Mr. Anhar incorporates by reference all preceding paragraphs.

256. Citibank posted its 09/24/18 September Statement.

257.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 09/28/18 (1st) billing dispute notice.

258.   Citibank posted its 10/22/18 October Statement.

259.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 10/24/18 (2nd) billing dispute notice.

260.   Mr. Anhar's notices were in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief each statement had a billing error, specified the amount of each billing error, and stated the reason for his belief that each statement contained a billing error.

261.   Citibank's Customer Service received Mr. Anhar's first dispute notice on 10/02/18, which was far fewer than 60 days after Citibank's 09/24/18 statement transmittal.

262.   Citibank's Customer Service received Mr. Anhar's second dispute notice a few days after 10/24/18, which was far fewer than 60 days after Citibank's 10/22/18 statement transmittal.

263.   Citibank posted its 03/22/19 March Statement without indicating Mr. Anhar wasn't required to pay the disputed amounts.

264.   Citibank was subject to the provisions of FCBA, which imposed on Citibank a subsequent statement requirement.

265.   Citibank willfully and knowingly disregarded that statement requirement, which FCBA imposed on Citibank, thereby violating FCBA.

v.  **Count 22**

    i.  ***Criminal & Civil Violation of FCBA***
        Oct- and Nov-18 Disregarding of Third-Party
        Reporting Prohibition

> After receiving a notice from an obligor as provided in section 1666(a) of this title, ... the obligor's failure to pay the amount indicated by the obligor ... [and the amount itself] may not be reported as delinquent to any third party until the creditor has met the requirements of section 1666 ... .[22]

266.  Mr. Anhar incorporates by reference all preceding paragraphs.

267.  Citibank posted its 09/24/18 September Statement.

268.  Mr. Anhar mailed Citibank, at its billing-inquiries address, his 09/28/18 (1st) billing dispute notice.

269.  Mr. Anhar's notice was in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief the statement had a billing error, specified the amount of that billing error, and stated the reason for his belief that the statement contained a billing error.

270.  Citibank's Customer Service received Mr. Anhar's dispute notice on 10/02/18, which was far fewer than 60 days after Citibank's 09/24/18 statement transmittal.

271.  As of 11/22/18, two complete billing cycles had passed since Citibank received Mr. Anhar's dispute notice, but Citibank hadn't responded (and never did respond) to that notice.

---

[22] 15 U.S.C. § 1666a(a).

272.   In Oct- and Nov-18, Citibank reported Mr. Anhar's nonpayment as a delinquency minimally to the three nation credit bureaus.

273.   Citibank was subject to the provisions of FCBA, which imposed on Citibank a conditional third-party reporting prohibition.

274.   Citibank willfully and knowingly disregarded that reporting prohibition, which FCBA imposed on Citibank, thereby violating FCBA.

### w.   Count 23

#### i.   *Criminal & Civil Violation of FCBA*
Nov- and Dec-18 Disregarding of Third-Party Reporting Prohibition

275.   Mr. Anhar incorporates by reference all preceding paragraphs.

276.   Citibank posted its 10/22/18 October Statement.

277.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 10/24/18 (2nd) billing dispute notice.

278.   Mr. Anhar's notice was in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief the statement had a billing error, specified the amount of that billing error, and stated the reason for his belief that the statement contained a billing error.

279.   Citibank's Customer Service received Mr. Anhar's dispute notice a few days after 10/24/18, which was far fewer than 60 days after Citibank's 10/22/18 statement transmittal.

280.    As of 12/24/18, two complete billing cycles had passed since Citibank received Mr. Anhar's dispute notice, and Citibank hadn't responded (and never did respond) to that notice.

281.    In Nov- and Dec-18, Citibank reported Mr. Anhar's nonpayment as a delinquency minimally to the three nation credit bureaus.

282.    Citibank was subject to the provisions of FCBA, which imposed on Citibank a conditional third-party reporting prohibition.

283.    Citibank willfully and knowingly disregarded that reporting prohibition, which FCBA imposed on Citibank, thereby violating FCBA.

### x.    Count 24

#### i.    *Criminal & Civil Violation of FCBA*
Dec-18 and Jan-19 Disregarding of Third-Party Reporting Prohibition

> If a creditor receives a further written notice from an obligor[,] ... a creditor may not report to any third party that the [disputed] amount ... is delinquent because the obligor has failed to pay [the disputed] amount ... unless the creditor also reports that the amount is in dispute and, at the same time, notifies the obligor of the name and address of each party to whom the creditor is reporting ... the delinquency.[23]

284.    Mr. Anhar incorporates by reference all preceding paragraphs.

285.    Citibank posted its 11/22/18 November Statement.

286.    Mr. Anhar mailed Citibank, at its billing-inquiries address, his 11/24/18 (3rd) billing dispute notice.

---

[23] 15 U.S.C. § 1666a(b).

287.   Mr. Anhar's notice was in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief the statement had a billing error, specified the amount of that billing error, and stated the reason for his belief that the statement contained a billing error.

288.   Citibank's Customer Service received Mr. Anhar's dispute notice a few days after 11/24/18, which was far fewer than 60 days after Citibank's 11/22/18 statement transmittal.

289.   On or about 12/10/18, Citibank's Customer Service mailed Mr. Anhar its opposing written response to his dispute notice.

290.   Mr. Anhar mailed Citibank, at its billing-inquiries address, his 12/18/18 *further* billing dispute notice.

291.   In Dec-18 and Jan-19, Citibank reported Mr. Anhar's nonpayment as a delinquency minimally to the three nation credit bureaus.

292.   At the time, Citibank didn't report the amount as being in dispute while simultaneously notifying Mr. Anhar of the names and addresses of third parties to whom Citibank was reporting any delinquency.

293.   Citibank was subject to the provisions of FCBA, which imposed on Citibank a conditional third-party reporting prohibition.

294.   Citibank willfully and knowingly disregarded that reporting prohibition, which FCBA imposed on Citibank, thereby violating FCBA.

**Y.   Count 25**

  *i.   **Criminal & Civil Violation of FCBA***
    Jan- and Feb-19 Disregarding of Third-Party
    Reporting Prohibition

295. Mr. Anhar incorporates by reference all preceding paragraphs.

296. Citibank posted its 12/24/18 December Statement.

297. Mr. Anhar mailed Citibank, at its billing-inquiries address, his 12/26/18 (4th) billing dispute notice.

298. Mr. Anhar's notice was in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief the statement had a billing error, specified the amount of that billing error, and stated the reason for his belief that the statement contained a billing error.

299. Citibank's Customer Service received Mr. Anhar's dispute notice a few days after 12/26/18, which was far fewer than 60 days after Citibank's 12/24/18 statement transmittal.

300. On or about 01/07/19, Citibank's Customer Service mailed Mr. Anhar its opposing written response to his dispute notice.

301. Mr. Anhar mailed Citibank at its billing-inquiries address his 01/14/19 *further* billing dispute notice.

302. In Jan- and Feb-19, Citibank reported Mr. Anhar's nonpayment as a delinquency minimally to the three nation credit bureaus.

303.   At the time, Citibank didn't report the amount as being in dispute while simultaneously notifying Mr. Anhar of the names and addresses of third parties to whom Citibank was reporting any delinquency.

304.   Citibank was subject to the provisions of FCBA, which imposed on Citibank a conditional third-party reporting prohibition.

305.   Citibank willfully and knowingly disregarded that reporting prohibition, which FCBA imposed on Citibank, thereby violating FCBA.

## VII. DEMAND FOR RELIEF

Mr. Anhar demands relief from Citibank as follows:

1.   Costs of suit.

2.   Prejudgment interest.

3.   Actual damages[24] of $75,011 under all 25 claims to compensate Mr. Anhar for his exhaustive seven-plus months and several-hundred hours of seeking help from then repelling Citibank, establishing alternate accounts, filing and following up on more than half-a-dozen agency complaints, researching and drafting some two-dozen letters, reviewing nearly 360 pages of billing statements spanning 12+ years, making numerous calculations of the data contained in those statements, making and receiving various phone calls, fielding dozens of harassing and illegal collections calls, requesting and reviewing credit files, filing numerous disputes with credit bureaus, placing

---

[24] 15 U.S.C. § 1640(a)(1).

1    freezes on credit files, placing fraud alerts on credit files, bringing this action

2    as a self-represented litigant (and all that that entails), and so on.

3        4.    Criminal statutory damages[25] of $5,000 and/or a 1-year prison

4    sentence for CEO Michael Corbat under all 24 TILA/FCBA claims.

5        5.    Civil statutory damages[26] of $801.44 under all 24 TILA/FCBA

6    claims.

7        6.    Civil statutory damages[27] of $486.40 under all 16 FCBA claims.

8        7.    Punitive damages[28] of $1,000,000 under all 24 TILA/FCBA

9    claims for willful, knowing, and persistent pattern and practice of fraud and

10   oppression.

11       8.    An order requiring Citibank to issue immediately to Mr. Anhar

12   corrected billing statements for each month since 08/25/18, including a final

13   billing statement showing a $0 balance.

14       9.    An order requiring Citibank to correct immediately all its

15   internal and external (third-party) records and reports (past, present, future)

16   to reflect that (a) effective 08/25/18, the account is no longer due and owing

17   or under contract due to Citibank's contractual breach, and (b) the account

18   closure date of both Mr. Anhar's credit card accounts is 08/25/18.

---

[25] 15 U.S.C. §§ 1611(1) and (3).
[26] 15 U.S.C. §§ 1640(a)(2)(A)(iii).
[27] 15 U.S.C. §§ 1640(a)(2)(A)(i); *see also Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877 (9th Cir. 2011) ("[Collections and credit reporting] violations of the FCBA are not subject to the single-recovery limitation under § 1640(g).").
[28] 15 U.S.C. §§ 1640(a)(2)(A)(iii).

10.   Preliminary and permanent injunctions prohibiting Citibank, including its parent, officers, managers, employees, agents, representatives, members, affiliates, contractors, subsidiaries, successors, assignees, heirs, executors, trustees, and attorneys, from taking, or reporting that they are taking, any adverse action against Mr. Anhar and/or his account.

**VIII. DEMAND FOR JURY TRIAL**

Mr. Anhar demands a jury trial on all issues triable of right by a jury.

**IX.   VERIFICATION**

I verify under penalty of perjury that the foregoing is true and correct.

Executed: April 15, 2019
in Turlock, California, U.S.A.

MICHAEL N. ANHAR
*Plaintiff, Self-Represented*
3183 Kendra Ct.
Turlock, CA, 95382-1335
P: (209) 669-3909
michael.anhar@gmail.com