# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL N. ANHAR,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CITIBANK, N.A.,<br>subsidiary of bank holding company<br>Citigroup Inc.,<br><br>　　　　　Defendant. | Case No. 1:19-cv-00496-LJO-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT AND CIVIL VIOLATIONS OF THE TRUTH IN LENDING ACT AND THE FAIR CREDIT BILLING ACT; AND THAT THE CLAIMS FOR CRIMINAL VIOLATIONS BE DISMISSED WITH PREJUDICE<br><br>(ECF No. 1)<br><br>**TWENTY-ONE (21) DAY DEADLINE** |

　　　　Plaintiff, Michael N. Anhar, is proceeding *pro se* and *in forma pauperis*, in this action alleging claims against Defendant, Citibank, N.A., for breach of contract, violations of the Truth in Lending Act, and violations of the Fair Credit Billing Act. (ECF No. 1.) Plaintiff filed the complaint commencing this action on April 17, 2019. (*Id.*)

　　　　For the reasons described below, the Court recommends finding that, viewing the facts alleged in the Complaint liberally and in the light most favorable to Plaintiff, and for purposes of screening only, Plaintiff has stated claims against Defendant for civil violations of the Truth in Lending Act, for civil violations of the Fair Credit Billing Act, and for breach of contract. The Court recommends dismissing with prejudice the claims for criminal violations of the Truth in

Lending Act and the Fair Credit Billing Act because Plaintiff does not have standing to pursue these claims.

## I. SCREENING REQUIREMENT

Under 28 U.S.C. § 1915(e)(2), in any case in which a plaintiff is proceeding *in forma pauperis*, the Court must conduct a review of the complaint to determine whether it "state[s] a claim on which relief may be granted," is "frivolous or malicious," or "seek[s] monetary relief against a defendant who is immune from such relief." If the Court determines that the complaint fails to state a claim on which relief may be granted, it must be dismissed. *Id.* Similarly, if the Court determines the complaint is frivolous or malicious, it must be dismissed. *Id.* An action is deemed to be frivolous if it is "of little weight or importance: having no basis in law or fact" and malicious if it was filed with the "intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.* at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hosp. Bldg. Co. v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342

1  (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after
2  *Iqbal*).

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

The Complaint (ECF No. 1) alleges that on August 25, 2018, Plaintiff attempted four times to make a cash payment of $120 on his Citibank credit card at Citibank ATMs, but his payment was refused, and the message on the ATM stated: "I can't do that right now. For assistance, please call Customer Service." Plaintiff contacted Citibank customer service about his inability to make a cash payment and was eventually informed that his credit card account had been suspended because, when Citibank applied the August 2018 interest charge to Plaintiff's credit card account, that interest charge caused the account to exceed the credit limit by $24.93.

Plaintiff had a second credit card with Citibank that had also exceeded the credit limit as a result of Citibank's application of the August 2018 interest charge, yet that second account was not suspended, and Plaintiff was able to make a cash payment on that account. Further, Citibank's charging of interest on both of Plaintiff's Citibank credit card accounts had, on 35 previous occasions, caused the credit cards to exceed the credit limit, and Citibank had not on those previous occasions suspended Plaintiff's credit card accounts. If Citibank had accepted the $120 cash payment Plaintiff attempted to make on the suspended account, the account would have gone back under the credit limit.

Plaintiff closed both of his credit card accounts and promptly filed a CFPB[1] complaint. Citibank responded to the CFPB complaint as follows:

> The error you received when attempting to make your payment at the ATM for your account ending in 1276 was due to the amount of the balance that exceeded your credit limit, which resulted in the suspension of your account. Although your account ending in 2471 also exceeded the credit limit, this account was not suspended at the time your $40.00 payment was received.

(ECF No. 1 at 7.)

Plaintiff alleges that this refusal to accept the payment violated the terms of the agreement between Plaintiff and Defendant:

---

[1] Plaintiff does not define the acronym "CFPB." The Court assumes that the acronym stands for Consumer Financial Protection Bureau.

3

> Citibank's refusal to accept and credit Mr. Anhar's conforming payment was in direct contravention of its revised cash-payment policy as established in its 05/08/18 Update and reaffirmed in its 06/22/18 June Statement, 07/23/18 July Statement, and 09/17/18 Account Update. When read concurrently with the governing 10/23/16 Card Agreement, the revised cash-payment policy serves to amend the agreement. Under these combined and undisputed contractual elements and written provisions, Mr. Anhar's repeatedly proffered $120 cash payment constituted a conforming payment. Thus, Citibank's refusal to accept and credit that payment constitutes intentional failure to perform, which means Citibank materially breached its own agreement. Once Citibank breached the contract, it became void, and the debt thereunder became invalid.

(ECF No. 1 at 8-9.)

Plaintiff alleges that, over the next seven months, Defendant continued to treat the debt as valid and committed nearly 25 Truth in Lending Act and Fair Credit Billing Act violations:

> [Citibank] has made prohibited collections calls to Mr. Anhar's home, sent him barred dunning letters,[2] issued fraudulent monthly billing statements, manufactured hundreds of dollars in finance charges, and created lasting harm to his creditworthiness by falsely reporting to the credit bureaus that his account is seriously delinquent. Citibank's willful, knowing, and persistent wrongful billing on, dunning of, and third-party reporting of an account that's closed, a debt that's invalid, and a contract that's void, amounts to fraud and oppression.

(ECF No. 1 at 9 (footnote added); *see* ECF No. 1 at 10-18 (providing detailed allegations).)

Plaintiff brings claims against Citibank for breach of contract (Claim 1); criminal and civil violations of the Truth in Lending Act (Claims 2 through 9), and criminal and civil violations of the Fair Credit Billing Act (Claims 10 through 25).

**III. DISCUSSION**

    **A. <u>Claims for Civil Violations of the Truth in Lending Act (Claims 2-9)</u>**

        1. *Claims 2-8*

In claims 2 through 8, Plaintiff alleges that Defendant committed civil violations of sections 127(b)(3) and (7) of the Truth in Lending Act ("TILA"),[3] 15 U.S.C. § 1637(b)(3) and (7), which provide:

    (b) Statement required with each billing cycle.

---

[2] A "dunning letter" is a demand for payment from a delinquent debtor. *See* Black's Law Dictionary (11th ed. 2019) (Defining "dun" as: "To demand payment from (a delinquent debtor) <his creditors are dunning him daily>.").

[3] Plaintiff also cites to section 140 of the TILA, 15 U.S.C. § 1640(a), which provides for civil liability to be imposed upon any creditor "who fails to comply with any requirement imposed under this part [B] . . . ." The sections of the TILA upon which Plaintiff relies are contained in Part B.

> The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable:
>
> . . . .
>
> (3) The total amount credited to the account during the period.
>
> . . . .
>
> (7) The balance on which the finance charge was computed and a statement of how the balance was determined. If the balance is determined without first deducting all credits during the period, that fact and the amount of such payments shall also be disclosed.

15 U.S.C. § 1637(b)(3), (7).

Plaintiff alleges that Defendant violated these provisions by imposing finance charges; failing to credit Plaintiff's account in various amounts "following Citibank's 08/25/18 breach of contract and Citibank's subsequent wrongful billings"; and "refusing to set forth the post-credit correct balance on which the finance charge was computed, the amount of the credit, and the fact that the balance was calculated without first applying the credit." (ECF No. 1 at 20-25.) These allegations, construed liberally in favor of Plaintiff, are sufficient, at the screening stage, to state a cognizable claim for violation of § 1637(b)(3) and (7).

        2.    *Claim 9*

In Claim 9, Plaintiff alleges that Defendant violated section 127(b)(2) of the TILA, 15 U.S.C. § 1637(b)(2), which provides, in relevant part, that the creditor must include in statements provided to obligors the following information, to the extent applicable:

> The amount and date of each extension of credit during the period, and a brief identification, on or accompanying the statement of each extension of credit in a form prescribed by the Bureau sufficient to enable the obligor either to identify the transaction or to relate it to copies of sales vouchers or similar instruments previously furnished, except that a creditor's failure to disclose such information in accordance with this paragraph shall not be deemed a failure to comply with this part or this subchapter if (A) the creditor maintains procedures reasonably adapted to procure and provide such information, and (B) the creditor responds to and treats any inquiry for clarification or documentation as a billing error and an erroneously billed amount under section 1666 of this title. . . .

15 U.S.C. § 1637(b)(2).

Plaintiff alleges Defendant violated this provision by the following alleged conduct:

5

> Citibank's Jan-19 statement imposed a $63.13 finance charge. Citibank's statement was for the period of 12/25/18-01/22/19. Citibank's statement set forth a 12/24/18 $35 credit. Citibank's line-item credit was backdated to one day before the billing period even began. Citibank was subject to the provisions of TILA's Part B, which imposed on Citibank several statement requirements that inherently necessitated Citibank not set forth false or fraudulent information. Citibank willfully and knowingly disregarded at least one such requirement, which TILA imposed on Citibank, thereby violating TILA.

(ECF No. 1 at 25 (footnote and paragraph numbering and structure omitted).)

Plaintiff appears to be alleging that by including the $35 credit on the January 2019 statement, rather than on the December 2019 statement, Defendants falsely stated the date of the extension of credit. The allegations of the complaint, construed liberally in favor of Plaintiff, are sufficient, at the screening stage, to state a cognizable claim for violation of § 1637(b)(2).

**B.      Claims for Civil Violations of the Fair Credit Billing Act (Claims 10-25)**

In claims 10 through 25, Plaintiff alleges that he mailed to Defendant, at its billing-inquiries address, billing dispute notices; that these billing dispute notices were "in writing, set forth the account name and number sufficiently to enable its identification, indicated his belief the statement had a billing error, specified the amount of that billing error, and stated the reason for his belief that the statement contained a billing error." (ECF No. 1 at 26-47.) Plaintiff alleges that Defendant received his billing dispute notices less than sixty days after Defendant transmitted the respective statements containing the alleged billing errors and that, after receiving the billing dispute notices, Defendant acted, or failed to act, in ways that violated the Fair Credit Billing Act ("FCBA").

  *1.      Claims 10-15*

In claims 10 through 15, Plaintiff alleges that Defendant violated 15 U.S.C. § 1666(a), which provides:

> If a creditor, within sixty days after having transmitted to an obligor a statement of the obligor's account in connection with an extension of consumer credit, receives at the address disclosed under section 1637(b)(10) of this title a written notice (other than notice on a payment stub or other payment medium supplied by the creditor if the creditor so stipulates with the disclosure required under section 1637(a)(7) of this title) from the obligor in which the obligor--
>
> (1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor,

6

> (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and
>
> (3) sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error,
>
> the creditor shall, unless the obligor has, after giving such written notice and before the expiration of the time limits herein specified, agreed that the statement was correct--
>
>> (A) not later than thirty days after the receipt of the notice, send a written acknowledgment thereof to the obligor, unless the action required in subparagraph (B) is taken within such thirty-day period, and
>>
>> (B) not later than two complete billing cycles of the creditor (in no event later than ninety days) after the receipt of the notice and prior to taking any action to collect the amount, or any part thereof, indicated by the obligor under paragraph (2) either—
>>
>>> (i) make appropriate corrections in the account of the obligor, including the crediting of any finance charges on amounts erroneously billed, and transmit to the obligor a notification of such corrections and the creditor's explanation of any change in the amount indicated by the obligor under paragraph (2) and, if any such change is made and the obligor so requests, copies of documentary evidence of the obligor's indebtedness; or
>>>
>>> (ii) send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement and, upon request of the obligor, provide copies of documentary evidence of the obligor's indebtedness. In the case of a billing error where the obligor alleges that the creditor's billing statement reflects goods not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction, a creditor may not construe such amount to be correctly shown unless he determines that such goods were actually delivered, mailed, or otherwise sent to the obligor and provides the obligor with a statement of such determination.
>
> After complying with the provisions of this subsection with respect to an alleged billing error, a creditor has no further responsibility under this section if the obligor continues to make substantially the same allegation with respect to such error.

15 U.S.C.A. § 1666(a).

As to claims 10 through 13, Plaintiff alleges that Defendant willfully and knowingly violated § 1666(a) by disregarding collection action prohibitions, and specifically by making collections calls to Plaintiff's home and mailing Plaintiff dunning letters after Defendant received

Plaintiff's billing dispute notices and before Defendant responded to those notices. (ECF No. 1 at 26-30.)

As to claims 14 and 15, Plaintiff alleges that Defendant violated § 1666(a) by failing to respond to Plaintiff's billing dispute notices within two complete billing cycles, and that Defendant has never responded to those notices. (ECF No. 1 at 30-32.)

The allegations of the complaint, construed liberally in favor of Plaintiff, are sufficient, at the screening stage, to state a cognizable claim under § 1666(a).

    *2.*    *Claims 16-21*

In claims 16 through 21, Plaintiff alleges that Defendant violated 15 U.S.C. § 1666(c), which provides,

> For the purposes of this section, "action to collect the amount, or any part thereof, indicated by an obligor under paragraph (2)" does not include the sending of statements of account, which may include finance charges on amounts in dispute, to the obligor following written notice from the obligor as specified under subsection (a), if--
>
> (1) the obligor's account is not restricted or closed because of the failure of the obligor to pay the amount indicated under paragraph (2) of subsection (a), and
>
> (2) the creditor indicates the payment of such amount is not required pending the creditor's compliance with this section.
>
> Nothing in this section shall be construed to prohibit any action by a creditor to collect any amount which has not been indicated by the obligor to contain a billing error.

15 U.S.C. § 1666(c).

Plaintiff alleges that Defendant violated § 1666(c) when, after receiving Plaintiff's billing dispute notices, Defendant posted statements that did not indicate that Plaintiff was not required to pay the disputed amount. (ECF No. 1 at 32-39.)

These allegations, construed liberally in favor of Plaintiff, are sufficient, at the screening stage, to state a cognizable claim under § 1666(c).

    *3.*    *Claims 22-25*

In claims 22 through 25, Plaintiff alleges that Defendant violated 15 U.S.C. § 1666a(a) and (b), which provide,

(a) Reports by creditor on obligor's failure to pay amount regarded as billing

8

> error
>
> After receiving a notice from an obligor as provided in section 1666(a) of this title, a creditor or his agent may not directly or indirectly threaten to report to any person adversely on the obligor's credit rating or credit standing because of the obligor's failure to pay the amount indicated by the obligor under section 1666(a)(2) of this title, and such amount may not be reported as delinquent to any third party until the creditor has met the requirements of section 1666 of this title and has allowed the obligor the same number of days (not less than ten) thereafter to make payment as is provided under the credit agreement with the obligor for the payment of undisputed amounts.
>
> (b) Reports by creditor on delinquent amounts in dispute; notification of obligor of parties notified of delinquency
>
> If a creditor receives a further written notice from an obligor that an amount is still in dispute within the time allowed for payment under subsection (a) of this section, a creditor may not report to any third party that the amount of the obligor is delinquent because the obligor has failed to pay an amount which he has indicated under section 1666(a)(2) of this title, unless the creditor also reports that the amount is in dispute and, at the same time, notifies the obligor of the name and address of each party to whom the creditor is reporting information concerning the delinquency.

15 U.S.C. § 1666a(a), (b).

Plaintiff alleges that Defendant violated § 1666a(a) when it reported Plaintiff's nonpayment of the disputed amounts as a delinquency to three credit bureaus even though Defendant had not fulfilled its obligations under § 1666(a) to respond to Plaintiff's discovery dispute notices. (ECF No. 1 at 40-47.)

Plaintiff alleges that Defendant violated § 1666a(b) because, although Defendant did submit a response to Plaintiff's 11/24/18 and 12/26/18 billing dispute notices, Plaintiff informed Defendant that the amount was still in dispute through his 12/18/18 and 1/14/19 further billing dispute notices, and that, despite receiving these further billing dispute notices, Defendant subsequently reported Plaintiff's nonpayment as a delinquency to the three nation credit bureaus, did not report that this amount was in dispute, and did not notify Plaintiff of the names and addresses of third parties to whom Defendant was reporting the delinquency. (ECF No. 42-47.)

These allegations, construed liberally in favor of Plaintiff, are sufficient, at the screening stage, to state cognizable claims under § 1666a(a) and (b).

///

///

### C. **Claims for Criminal Violations (Claims 2 through 25)**

Plaintiff brings claims for criminal violations of various provisions of the TILA and the FCBA. (ECF No. 1 at 20-47.)

Generally, criminal statutes do not confer private rights of action. Thus, a private citizen asserting a claim under a criminal statute bears the burden of establishing that a private right of action exists. *See Stupy v. United States Postal Serv.*, 951 F.2d 1079, 1081 (9th Cir. 1991) (identifying factors that may establish a private right of action conferred under a criminal statute); *see also Robertson v. U.S. ex rel. Watson*, 560 U.S. 272, 278 (2010) ("Our entire criminal justice system is premised on the notion that a criminal prosecution pits the government against the governed, not one private citizen against another."); *Glassey v. Amano Corp.*, 2006 WL 889519, at *3 (N.D. Cal. Mar. 31, 2006) ("Private parties generally lack standing to enforce federal criminal statutes."), *aff'd*, 285 Fed. Appx. 426 (9th Cir. 2008).

Here, Plaintiff has not provided any authority in his complaint demonstrating that he can maintain a private right of action under the criminal provisions of the TILA or the FCBA. The Court therefore recommends that Plaintiff's claims for violation of these criminal provisions be dismissed. Further, because no amendment could remedy this fundamental flaw, the Court recommends that such dismissal be with prejudice.

### D. **State Law Breach of Contract Claim (Claim 1)[4]**

The elements for a breach of contract action under California law[5] are: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 70 Cal.

---

[4] Because the Court finds that Plaintiff has, for purposes of screening, stated cognizable claims under federal law, and these federal claims relate to the alleged breach of contract, the Court recommends exercising supplemental jurisdiction over the state law breach of contract claim. *See* 28 U.S.C. § 1367(a) (providing authority for federal courts to consider state-law claims when they are "so related" to the federal claims that they "form part of the same case or controversy"). If, however, Plaintiff's federal claims are dismissed prior to trial, the Court may decline to continue exercising supplemental jurisdiction over Plaintiff's state law breach of contract claim. *See* 28 U.S.C. § 1367(c) (A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered [in exercising supplemental jurisdiction]—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

[5] The credit card agreement may have a choice of law provision that indicates the applicable law. However, for purposes of screening, the Court assumes that California law applies.

Rptr. 3d 667, 679 (Cal. Ct. App. 2008), *as modified on denial of reh'g* (Feb. 5, 2008).

Here, Plaintiff alleges (1) that he entered into a credit card agreement with Defendant; (2) that he complied with all or substantially all of the material provisions of that agreement, including proffering a cash payment on his credit card account; (3) that Defendant breached the terms of the agreement when Defendant "repeatedly refused to accept and credit Mr. Anhar's 8/25/18 conforming cash payment, which the contract required Citibank to do"; and (4) that Plaintiff has been harmed and continues to be harmed by Defendant's breach of the agreement. (ECF No. 1 at 19-20.) These allegations, construed liberally in favor of Plaintiff, are sufficient, at the screening stage, to state a cognizable claim against Defendant for breach of contract.

## IV.    CONCLUSION AND RECOMMENDATION

Construing the allegations in the complaint liberally and in the light most favorable to Plaintiff, the Court finds, for purposes of screening, that the complaint states cognizable claims against Defendant for civil violations of the Truth in Lending Act, for civil violations of the Fair Credit Billing Act, and for state law breach of contract. The Court recommends dismissing Plaintiff's claims for criminal violations of the Truth in Lending Act and the Fair Credit Billing Act. The Court does not recommend granting leave to amend because Plaintiff does not have standing to pursue the claims for criminal violations and amendment as to those claims would accordingly be futile.

Therefore, based on the foregoing, IT IS HEREBY RECOMMENDED that this case proceed against Defendant, Citibank, N.A., on Plaintiff's claims for civil violations of the Truth in Lending Act and the Fair Credit Billing Act, and for state law breach of contract, and that Plaintiff's claims for criminal violations of the Truth in Lending Act and the Fair Credit Billing Act be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **September 24, 2019**                    /s/ Erica P. Grosjean
                                                                       UNITED STATES MAGISTRATE JUDGE