Michael N. Anhar
3183 Kendra Ct.
Turlock, CA, 95382-1335
Tel.: (209) 669-3909
michael.anhar@gmail.com
*Plaintiff, Pro Se*

# UNITED STATES DISTRICT COURT

## For the Eastern District of California

## Fresno Division

| | |
|---|---|
| **Michael N. Anhar**, | Case No. 1:19-cv-00496-NONE-EPG |
| Plaintiff; | **Verified Opposition to Defendant's Motion to Dismiss Complaint** (ECF No. 29) |
| v. | |
| **Citibank, N.A.**, | Hearing |
| Defendant. | Date: 03/20/20 (Fri.) |
| | Time: 10:30 a.m. |
| | Ctrm.: 4 (Floor 7) |
| | Judge: Dale A. Drozd |
| | *Submitted on the record and briefs, unless the Court orders otherwise.* (L.R. 230(g); ECF No. 28-1) |

# TABLE OF CONTENTS

I.   **OPPOSITION** ................................................................................................. 3

    a.   Overview ................................................................................................ 3

    b.   Statement of Facts ................................................................................ 4

II.   **ARGUMENT** ................................................................................................. 6

    a.   Citibank deceptively manipulates and misrepresents numerous expressed facts. .......................... 6

    b.   Citibank's Exhibit 1 is comprised of nine fraudulent billing statements. ..................................... 10

    c.   Citibank's Motion is moot given the Complaint has already been favorably screened. ................... 12

        i.     *The Complaint comports with Rule 8(a)(2).* ................................................... 12

        ii.    *The Complaint withstands Rule 12(b)(6).* ....................................................... 14

        iii.   *This court has already exercised supplemental jurisdiction over the state-law claim.* ........................ 20

III.   **CONCLUSION** ............................................................................................. 24

# TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...................................................... 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .................................. 12

*Gul v. Ctr. For Family Med.*, 2009 SD 12 (2009) ................................................ 22

*Guthmiller v. Deloitte & Touche, LLP*, 2005 SD 77 (2005) .................................. 22

*Hearns v. San Bernardino* 530 F.3d 1124, 1127 (9th Cir. 2008) .......................... 13

*Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ............................................. 14

*Hosp. Bldg. Co. v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976) ...................... 14

*Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) ................................................ 14

*Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ......................................... 14

*Tellabs v. Makor Issues Rights*, 551 U.S. 308, 322 (2007) .................................. 24

*Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000) ....... 14

### Fed. Rules of Civ. Proc.

Rule 8(a)(2) ................................................................................................... 3, 12, 13

Rule 11 ............................................................................................................... 4, 11

Rule 12(b)(6) ...................................................................................................... 3, 14

Rule 55 .................................................................................................................... 4

### 28 U.S.C.

§ 1367(a) ........................................................................................................ 3, 20, 21

### 15 U.S.C.

§ 1637(b) ....................................................................................... 15, 16, 17, 18, 19, 20

§ 1640(a) ............................................................................................................ 19, 20

### Jud. Council of Cal. Civ. Jury Instructions (2020)

CACI No. 300, 155 ................................................................................................. 22

I. **OPPOSITION**

    a.    **Overview**

The Court should deny Defendant's Motion because (a) Defendant deceptively manipulates and misrepresents numerous expressed facts; (b) Defendant's Exhibit 1 is comprise of *fraudulent billing statements*—one with an *entire erased paragraph* consisting of contract-amending language, and all with *entire missing pages/page-elements*; and (c) Defendant's Motion is moot given the Complaint has already been favorably screened—without the need for amendment, and for the same issues Defendant now raises—by two judges in this district. Just beneath its surface, Defendant's Motion is a meritless and malicious delay tactic employed by Defendant after it failed to secure an extension of time to file/serve an *Answer* to the Complaint.

The Complaint properly pleads not just Defendant's possible but plausible, probable, and ultimately provable state-law breach of contract, eight civil violations of the Truth in Lending Act ("TILA"), and 16 civil violations of the Fair Credit Billing Act ("FCBA"). (ECF No. 1.) Per Rule 8(a)(2), the Complaint contains a short and plain statement of each claim showing Plaintiff is entitled to relief; re Rule 12(b)(6), the Complaint states 25 claims upon which relief can be granted; and per 28 U.S.C. § 1367(a), this court has already exercised supplemental jurisdiction over the Complaint's state-law breach-of-contract claim. Thus, the Complaint not only meets but exceeds the standards set forth in the Federal Rules of Civil Procedure and

the U.S. Code. Defendant's Motion presents no unresolved legal issues, conceals existing factual issues, and advances frivolous boilerplate gripes built on fallacies and misrepresentations. It should be denied in full.

Further, given that (a) Defendant falsely certified to the court, under Rule 11(b), the credibility of its billing statements; (b) Defendant knew its Motion was moot before filing it because the Complaint had already been favorably screened by two judges for the same issues it now raises; and (c) Defendant's *Answer*—not its Motion—was due but not filed/served by the known deadline of 02/11/20, Defendant should be sanctioned under Rule 11(c)(3) on the Court's initiative, and the Court should order the clerk to enter a default under Rule 55 against Defendant and in favor of Plaintiff.

### b.    Statement of Facts

Plaintiff, Michael N. Anhar, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil action against Defendant, Citibank, N.A. ("Citibank") for breach of contract and civil violations of TILA/FCBA. (ECF No. 1; 4.)

On 09/24/19, U.S. Magistrate Judge Grosjean submitted to then-Chief U.S. District Judge O'Neill, her Findings and Recommendations. (ECF No. 11; incorporated by reference.)

On 11/13/19, then-Chief U.S. District Judge O'Neill adopted the Findings and Recommendations. (ECF No. 14; incorporated by reference.)

The case against Citibank proceeded without the need for amendment to the Complaint. (*See* ECF No. 15; 16; 17; 18; 26.)

On 01/24/20, Citibank's attorney Marcos D. Sasso sent an email to

Pl. Anhar asking him to stipulate to an extension of time as follows:

> Mr. Anhar – Our office represents Citibank in the above case. Under Local Rule 144(a), the parties may stipulate without court approval to a 28 day extension on the response to the complaint. Will you agree to such an extension? Currently Citibank's response to the complaint is due 1/31/2020; with the extension he response date will be 2/28/2020. We require time to gather and review your account records. The additional time will allow us the needed time. If so, we can prepare and circulate a draft stipulation for your approval.

(**Ex. A**.) Mr. Sasso's email incorrectly stated the due date for Citibank's

response to the Complaint as 01/31/20 instead of 02/11/20. Pl. Anhar

didn't reply to Mr. Sasso's email and thus didn't stipulate to the extension.

On 01/27/20, Pl. Anhar received a voice message from attorney

Michael Fausey, who described himself as a colleague of Mr. Sasso and said

he was calling to follow up on Mr. Sasso's email (above). Pl. Anhar didn't

respond to Mr. Fausey's message and thus didn't stipulate to the extension.

Some 20 minutes later, Pl. Anhar received a CM/ECF message saying

the due date of Citibank's answer is 03/09/20. (ECF No. 26; *see also* 27.)

On 01/28/20, Pl. Anhar filed/served his Motion to Correct Due Date

of Defendant's Answer from 03/09/20 to 02/11/20. (ECF No. 27.)

On 02/11/20, Citibank filed/served its instant Motion. (ECF No. 29.)

## II.  ARGUMENT

### a.  Citibank deceptively manipulates and misrepresents numerous expressed facts.

*First:* Citibank writes:

> Plaintiff contends the failure to accept the payment is a breach of the terms of the "cash-payment policy" in effect at the time. **Rather than pay the Account by some other method (i.e., by mail, by phone, online, or by check or money order at any branch) prior to the due date**, Plaintiff called Citibank, cancelled all of his accounts, and submitted a complaint to the Bureau of Consumer Financial Protection—all on or about August 25, 2018.

(ECF No. 29, 10:4; emphasis added; citation omitted.) Citibank deploys this likely red herring to victim-blame Pl. Anhar for its own contractual breach. As a preliminary matter, Pl. Anhar didn't just summarily cancel his accounts. As pled in the Complaint, first, he did as repeatedly instructed by Citibank's two ATMs (see below) and called Citibank. (*See* ECF No. 1, 2:1; ¶¶ 6–8, 25.)

 He spent a torturous and ultimately futile hour-or-so on the phone trying to get an explanation. But when he learned Citibank's repeated failures to accept his conforming payment were *intentional*— *i.e.*, that they were *refusals*, that's when he closed his accounts—*after 12+ years*. (*Ibid.*) Citibank pretends none of this

happened, but as pled in the Complaint, Pl. Anhar recorded the bulk of his phone call with Citibank, and later transcribed it. (*Id.* ¶ 6.) And now, that transcription is attached hereto as Exhibit E. (*See* **Ex. E**.)

As for the rest of Citibank's red herring, as much as Citibank may wish otherwise, any talk of a due date or other payment method is moot because once Citibank breached the contract, it became void, the debt thereunder became invalid ($0), and Pl. Anhar had no obligation to pay (nothing to pay), let alone by another method of Citibank's choosing. In providing payment *options* to its *customers*, Citibank necessarily acknowledged the choice of *which* option to exercise was the *customers'*. As pled in detail throughout his Complaint, on 08/25/18, Pl. Anhar did as he'd done for years (always with Citibank's acceptance) and chose to exercise *his* option to pay by cash. That payment—proffered and refused four times—complied with Citibank's own then-recently revised cash-payment policy, which was expressly iterated four times—*a fact Citibank now conceals*. (*See* **Ex. B** 1, 5, 9, 11.) Under that revised policy, Pl. Anhar's cash payment was a conforming payment. Thus, Citibank's refusal to accept and credit that payment constituted intentional failure to perform, which means Citibank materially breached its own agreement. Once Citibank did that, Pl. Anhar's contractual obligations ended. This is the gravamen of the breach-of-contract claim against Citibank, no matter how much Citibank cherry-picks around it.

***Second:*** Citibank writes, "From September 2018 through March 2019, Plaintiff *allegedly submitted letters* to Citibank regarding the Account and his August 25, 2018 transaction. Plaintiff *alleges submitting letters* to Citibank—which Plaintiff *characterizes as 'billing error' disputes*—in response to information disclosed on the Monthly Statements." (ECF No. 29, 10:10; emphasis added; citation omitted.) Citibank's innuendo is clear, and Pl. Anhar quashes it by attaching hereto, as Exhibit C, a whopping 22 letters evidencing Pl. Anhar's so-called *alleged* letters to Citibank. (**Ex. C**.) Each letter, excluding any sent after this action, is expressly pled in the Complaint. But even this list isn't exhaustive, as it excludes numerous correspondences filed with Citibank via the Consumer Financial Protection Bureau ("CFPB"), plus complaints filed against Citibank with other agencies.

***Third:*** Citibank writes: "Plaintiff allegedly attempted to make a cash payment of $120.00 on August 25, 2018 at a Citibank ATM, but was unable due to the fact that *a previously-assessed finance charge caused* his account to exceed his credit limit and become suspended." (ECF No. 29, 10:1; emphasis added.) But Pl. Anhar's actual allegations were:

> Citibank ***refused—four times***—to accept and credit his **conforming** cash payment, thereby failing to perform, harming him, and thus breaching its own written contract. Citibank's rationale for this?—**Its own Aug-18 interest charge caused Mr. Anhar's account to go over limit**, resulting in Mr. Anhar's ***suspension*** from making conforming cash ***payment***.

(ECF No. 1 ¶ 1; bold added.) Citibank's mealy-mouthed version of the above concealsⁿ Pl. Anhar's *repeated* attempts to make—and Citibank's *repeated* refusals to accept and credit—a *conforming* cash payment, and it whitewashes Citibank's liability not just in repeatedly refusing to honor that payment but also in *being the cause* of the overage *and* suspension in the first place.

    ***Fourth:*** Citibank writes, "Plaintiff further alleges receiving periodic billing statements from June 22, 2018 through March 22, 2019 …." (ECF No. 29, 9:21.) But Pl. Anhar's actual allegations were, "Citibank posted its 06/22/18 June Statement wherein it *(a) reiterated its revised cash-payment policy and (b) assessed a $26.57 interest charge, pushing Mr. Anhar's account over limit by $26.40, not resulting in account suspension*;" and "Citibank posted its 07/23/18 July Statement wherein it *(a) reiterated its revised cash-payment policy and (b) assessed a $26.69 interest charge, pushing Mr. Anhar's account over limit by $25.60, not resulting in account suspension*." (ECF No. 1 ¶¶ 17, 18; emphasis added.) Citibank's stripped-to-the-bone version of these expressed facts has robbed them of their substantive context and material detail. And though these are just two examples, which suffice for making the point here, Citibank actually applies this particular factual misrepresentation to two more of the Complaint's similar expressed facts. (*See* ECF No. 1 ¶¶ 19, 83.)

    ***Fifth:*** Citibank writes, "Plaintiff alleges receiving the Card Agreement on or about October 23, 2016, and an amendment to the 'cash-payment policy' on or about May 8, 2018." (ECF No. 29, 9:19.) But Pl. Anhar's actual

allegations were, "*Citibank mailed* Mr. Anhar its *10/23/16 Card Agreement*,"
and "*Citibank mailed* Mr. Anhar its *05/08/18 Update* setting forth Citibank's
revised cash-payment policy." (ECF No. 1 ¶¶ 13, 16; emphasis added.)
Here, Citibank's version hasn't only changed the actor and action in these
expressed facts but also misattributed certain events to certain dates. And
again, these are just two examples listed to make this point, as Citibank
deploys this type of factual manipulation to *eight* more of the Complaint's
similar expressed facts. (*See* ECF No. 1 ¶¶ 17, 18, 19, 32, 43, 54, 83, 90.)

    ***Finally:*** Citibank writes, "Plaintiff *brings* claims for breach of contract
(Claim 1), *criminal* and civil violations of TILA (Claims 2 through 9), and
*criminal* and civil violations of the FCBA (Claims 10 through 25)." (ECF
No. 29, 10:15; emphasis added.) But a review of the docket makes clear—
and thus Citibank presumptively knows—the *criminal* claims were *dismissed*
with prejudice some *three months ago*. (ECF No. 11; 14.) So why lie about it?

###     b.    Citibank's Exhibit 1 is comprised of nine fraudulent billing statements.

    Citibank's Exhibit 1 is comprised of nine billing statements spanning
July 2018 to March 2019. Each of these statements is fraudulent. Pl. Anhar
has personally downloaded (directly from his account on Citibank's website)
and attached hereto, as Exhibit D, a true and correct set of these statements.
He has placed a neon-pink box around each "unit" of discrepancy, revealing
the below particular discrepancies in Citibank's Exhibit 1:

***June Stmt. ('18):*** This is blatantly absent altogether. But it certainly shouldn't be given the fact that it's the first time Citibank reiterated, within a billing statement, its contract-amending language, which reads:

> Account messages [¶] Important Information Regarding Cash Payments at Citibank(R) Branches Beginning July 21, 2018, cash payments to your credit card will no longer be accepted by bank employees at Citibank(R) branches. **For your convenience, proprietary Citibank ATMs will accept cash payments up to $3,000 per credit card account per calendar month with your credit card PIN**. Call Customer Service to have a PIN mailed to you.

(**Ex. D** 3; emphasis added.)

***July Stmt. ('18):*** Page three has erased an entire paragraph—*i.e.*, *the same contract-amending language as above*. It's also missing the entire rights-and-disclosures page and several albeit immaterial page elements.

***Aug.–Dec. Stmts. ('18); Jan.–Mar. Stmts. ('19):*** Each is missing the entire rights-and-disclosures page and several albeit immaterial page elements. Further, page two of the October Statement (2018) has erased an entire albeit immaterial paragraph under the "Account messages" heading.

If a true and correct set of these *Citibank* billing statements is in Pl. Anhar's possession, then it's also presumptively in Citibank's possession. Yet Citibank filed, and thus certified under Rule 11(b), the credibility of its fraudulent billing statements; it should be sanctioned under Rule 11(c)(3).

**c.    Citibank's Motion is moot given the Complaint has already been favorably screened.**

**i.    *The Complaint comports with Rule 8(a)(2).***

Rule 8(a)(2) relevantly provides, "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." As Magistrate Judge Grosjean reasoned:

> Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.* at 678.

(ECF No. 11, 2:16.) Here, the Complaint contains a short and plain statement of each claim showing Pl. Anhar is entitled to relief. It pleads pure material facts and precise requisite elements that aren't only possible but plausible, probable, and ultimately provable. In applying this legal standard, two judges in this district concluded the Complaint properly pleads Citibank's state-law breach of contract, eight civil violations of TILA, and 16 civil violations of FCBA. (ECF No. 11; 14; *see also* 15.)

Citibank provides not even a scintilla of *evidence* from the Complaint itself proving it fails to comport to Rule 8(a)(2). Instead, Citibank frivolously whines about the Complaint's length as if the number of pages, paragraphs, and claims proves it lacks a short and plain statement of *each* claim. But as the Ninth Circuit held in *Hearns v. San Bernardino*, 530 F.3d 1124, 1127 (9th Cir. 2008), the district court erred in dismissing a complaint just because of its length, given its allegations "were coherent, well-organized, and stated legally viable claims." Citibank's argument is ultimately a strawman built on innuendo. The Complaint's length is due to (a) Pl. Anhar's use of good typography and (b) Citibank's profuse legal violations.

Citibank then returns to its pattern of perverting expressed facts when it writes, "The Complaint characterizes [the breach-of-contract] claim as the 'substantial factor, if not sole factor,' in allegedly causing [Pl. Anhar's] harm." (ECF No. 29, 12:13.) This is such a gross misrepresentation that it's an outright lie. The quoted phrase does appear in the Complaint but only as *one element* under *one claim*. The Complaint then goes on to allege Citibank willfully and knowingly disregarded, (a) *eight times* under Count 2–9, TILA statement requirements, "thereby violating TILA;" (ECF No. 1 ¶¶ 104, 110, 116, 122, 128, 134, 140, 147) and (b) *16 times* under Count 10–25, FCBA collections prohibitions, response requirements, statement requirements, and reporting prohibitions, "thereby violating FCBA." (*Id.* ¶¶ 156, 165, 177, 186, 194, 202, 210, 221, 232, 243, 254, 265, 274, 283, 294, 305.)

1

ii.     *The Complaint withstands Rule 12(b)(6).*

2

Rule 12(b)(6) relevantly provides, "A party may assert the following

3

defense[] by motion: ... failure to state a claim upon which relief can be

4

granted ...." But this is a high bar because a 12(b)(6) dismissal is only proper

5

when *no* relief *can* be granted under *any* set of facts that *can* prove the claims.

6

As the Ninth Circuit held, "A complaint should not be dismissed unless it

7

appears *beyond doubt* that the plaintiff *can prove no set of facts* in support of the

8

claim that would entitle it to relief." (*Williamson v. General Dynamics Corp.*,

9

208 F.3d 1144, 1149 (9th Cir. 2000); emphasis added.)

10

Further, when reviewing a complaint under a motion to dismiss, courts

11

must "view[] the facts alleged in the Complaint liberally and in the light most

12

favorable to [the] Plaintiff ...." (ECF No. 11, 1:24.) As Magistrate Judge

13

Grosjean reasoned in her Findings and Recommendations:

14

15

16

17

18

19

20

21

22

> In determining whether a complaint states an
> actionable claim, the Court must accept the
> allegations in the complaint as true, *Hosp. Bldg. Co.
> v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976),
> construe *pro se* pleadings liberally in the light most
> favorable to the Plaintiff, *Resnick v. Hayes*, 213 F.3d
> 443, 447 (9th Cir. 2000), and resolve all doubts in
> the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S.
> 411, 421 (1969). Pleadings of *pro se* plaintiffs
> "must be held to less stringent standards than formal
> pleadings drafted by lawyers." *Hebbe v. Pliler*, 627
> F.3d 338, 342 (9th Cir. 2010) (holding that pro se
> complaints should continue to be liberally construed
> after *Iqbal*).

(*Id.* 2:23; *see also* 14; 15.) Here, the Complaint states 25 claims upon which relief can be granted. It pleads 24 violations of federal law, over which this Court has original jurisdiction, and one violation of state law, over which this Court has supplemental jurisdiction. In applying this legal standard, once again, two judges in this district concluded the Complaint properly alleges a set of facts that could support the requested relief for Citibank's state-law breach-of-contract, eight TILA violations, and 16 FCBA violations.

*Re Count 2–8:* As preface to pleading the requisite elements, the Complaint quotes the following from TILA, Part B:

> The creditor … shall transmit to the obligor … a statement setting forth … [t]he total amount credited to the account during the period[,] … [t]he balance on which the finance charge was computed … [the fact that] the balance [was] determined without first deducting all credits during the period, … [and] the amount of such [credits] … .[17]

(ECF No. 1, 20:5.) The above-referenced footnote (footnote 17) reads, "15 U.S.C. §§ 1637(b)(3) *and (7)*." (*Id.* 20:22; emphasis added.) Yet Citibank cherry-picks even this to manufacture its argument that Count 2–8 "must be dismiss" because 15 U.S.C. § 1637(b)(3)—*alone*—is inapplicable when a "plaintiff argues that an amount was *not credited* to an account …."

As already established, the Complaint alleges that once Citibank breached the contract on 08/25/18, it became void, the debt thereunder became invalid—*i.e.*, *the balance became $0*—and Pl. Anhar had no obligation

to pay (there was nothing to pay). So when Citibank writes, "It is undisputed that Plaintiff refused to pay his Account by September 20, 2018 …," Citibank is being willfully deceptive. (ECF No. 29, 15:20.) Pl. Anhar *couldn't* have refused to pay because there was not only no *obligation to pay* but also no *balance to pay*, *interest that could've accrued*, or *late fees that could've been assessed* in September 2018, given that Citibank had already breached the contract back in August 2018.

This is why Count 2–8 regarding Citibank's September–December 2018 statements, as well as its January–March 2019 statements, all arise from Citibank's violation of *both* §§ 1637(b)(3) *and (7)*. Namely, Citibank failed to credit the account after its 08/25/18 breach and report the balance as *$0* but instead kept billing on the account for seven months after its breach, carrying over each previous month's non-existent (wrong) balance and continuing to inflate it with non-existent (illegal) fees and interest. It *wrongly and wrongfully listed the balance* as $3,228.73 in September; $3,289.18 in October; $3,352.90 in November; $3,418.13 in December (all 2018); $3,446.44 in January; $3,512.28 in February; and $3,540.65 in March (all 2019). (**Ex. D** 12, 15, 18, 21, 24, 27, 30.)

It's precisely for this reason the Complaint alleges that "Citibank wrongfully refused to set forth the post-credit correct balance on which the finance charge was computed, the amount of the credit, and the fact that the balance was calculated without first applying the credit;" and that "Citibank

willfully and knowingly disregarded those statement requirements, which TILA imposed on Citibank, thereby violating TILA." (ECF No. 1, ¶¶ 102 & 104, 108 & 110, 114 & 116, 120 & 122, 126 & 128, 132 & 134, 138 & 140.) As Magistrate Judge Grosjean summarized it:

> Plaintiff alleges that Defendant violated these provisions by imposing finance charges; failing to credit Plaintiff's account in various amounts "following Citibank's 08/25/18 breach of contract and Citibank's subsequent wrongful billings"; and "refusing to set forth the post-credit correct balance on which the finance charge was computed, the amount of the credit, and the fact that the balance was calculated without first applying the credit." (ECF No. 1 at 20-25.) These allegations, construed liberally in favor of Plaintiff, are sufficient, at the screening stage, to state a cognizable claim for violation of § 1637(b)(3) *and (7)*.

(ECF No. 11, 5:10; emphasis added; *see also* 14; 15.) In short, each balance Citibank listed on its seven statements after that of August 2018 was wrong.

**Re Count 9:** 15 U.S.C. § 1637(b)(2) relevantly provides, "The creditor … shall transmit to the obligor … a statement setting forth … [t]he … date of each extension of credit during the period … ." (ECF No. 1, 25:5.) As pled in the Complaint (*id.* ¶¶ 141–47), Citibank's January Statement (2019) was for the billing period of "12/25/18-01/22/19." (**Ex. D** 24.) Despite this, Citibank listed a line-item credit of $35, but instead of dating it as of the date it was *issued—i.e., during* the billing period, Citibank backdated the credit to

one day before the billing period even began—"12/24." (*Id.* 25.) Tellingly, 12/24/18 would've been the last day for Citibank to respond to Pl. Anhar's 10/24/18 billing dispute notice. (**Ex. C** 9.) Thus, backdating this otherwise random and arbitrary unsolicited credit may have been Citibank's failed attempt to circumvent its obligation to respond within two billing cycles.

Though this backdating violated § 1637(b)(2), Citibank argues a refund is "***not*** an extension of credit as set forth under TILA." (ECF No. 29, 17:21.) A return issued by a creditor as a line-item credit is a transaction that necessarily returns credit to a credit-card account and thus constitutes an extension of credit under § 1637(b)(2). Thus, the issuance of such a refund triggers TILA's requirement that the creditor disclose "the amount and date of [that] extension of credit during the period …." (*Ibid.*) But Citibank failed to disclose the *issuance* date *during the billing period*. It also failed to comport to the alternative requirements of § 1637(b)(2). All these requirements "inherently necessitated Citibank not set forth false or fraudulent information." (ECF No. 1 ¶ 146.) Thus, its failure to do so violated TILA.

***Re Actual Damages:*** Citibank writes, "The Complaint is devoid of well-pleaded factual allegations raising a plausible inference that Plaintiff sustained any actual damage or altered his behavior as a result of the alleged TILA disclosure violations." But again, Citibank is being willfully deceptive. First, the issue of actual damages is resolved by the fact finder, which here is a jury. (*See* ECF No. 1, 1:20, 47:6–7.) Second, Pl. Anhar (a) incorporates

here by reference his entire Complaint, and (b) reiterates the following from

that Complaint (just one of numerous times actual damages are addressed):

> Actual damages of $75,011 under all 25 claims to compensate Mr. Anhar for his exhaustive seven-plus months and several-hundred hours of seeking help from then repelling Citibank, establishing alternate accounts, filing and following up on more than half a dozen agency complaints, researching and drafting some two-dozen letters, reviewing nearly 360 pages of billing statements spanning 12+ years, making numerous calculations of the data contained in those statements, making and receiving various phone calls, fielding dozens of harassing and illegal collections calls, requesting and reviewing credit files, filing numerous disputes with credit bureaus, placing freezes on credit files, placing fraud alerts on credit files, bringing this action as a self-represented litigant (and all that that entails), and so on.

(ECF No. 1, 45 ¶ 3.) Clearly, no inference is required; only an *honest* reading.

**Re Statutory Damages for Count 2–9:** Citibank writes, "Because,

under TILA, Plaintiff cannot recover statutory damages for violations of

§ 1637(b)(2) and (3), as matter of law, Plaintiff's claims for statutory

damages in Claims 2 through 9 must be dismissed with prejudice." (ECF

No. 29, 19:11.) Again, Citibank is being willfully deceptive. First, under

Count 2–8 *each*, the Complaint expressly pleads Citibank's violations of

§§ 1637(b)(3) *and (7)*. (ECF No. 1, 20–5.) So when the Complaint demands

statutory damages for Count 2–8 per §§ 1640(a)(2)(A)(i) and (iii), those

damages are authorized because "a creditor shall have a liability determined under § 1640(a)(2) for failing to comply with the requirements of §§ 1637(b)(4) *through (13)*." (15 U.S.C. § 1640(a); cleaned up; emphasis added.) Thus, under this analysis, while statutory damages are indeed authorized for Count 2–8, Citibank seems correct they aren't authorized by § 1640(a) for *Count 9* for violating § 1637(b)(2). Of course, the claim itself survives, as does the demand for actual and punitive damages related thereto.

*Re Multiple Recoveries:* Citibank also seems correct about the $486.40 demanded under paragraph 6 of the Complaint's Demand-for-Recovery. (ECF No. 1, 46 ¶ 7.) The correct figure would be $107.60. (*See* **Ex. D** 12.)

*Re Alleging a Billing Error:* Citibank argues, "Plaintiff's FCBA claims should be dismissed because he has not alleged the existence of a billing error." This facially absurd red herring was already disposed of above by way of reference to the Complaint and Pl. Anhar's Exhibit C, which again is comprised of 22 letters evidencing Pl. Anhar's specific billing disputes sent directly to Citibank. Again, each letter, excluding any sent after this action, is expressly pled in the Complaint and includes dates and amounts. No matter how much Citibank misdirects, it can't "pretend-away" all the evidence.

### iii.   *This court has already exercised supplemental jurisdiction over the state-law claim.*

*First:* This court has already exercised supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state-law breach-of-contract claim. Despite this,

Citibank writes, "The card agreement governing the account includes a South Dakota choice of law provision." This is a red herring. As an initial matter, Citibank conceals the full provision: "*Federal law and* the law of South Dakota govern the terms and enforcement of this Agreement." (ECF No. 29-2, 17; emphasis added.) More to the point, Citibank willfully ignores the fact this court has already exercised supplemental jurisdiction over the state-law breach-of-contract claim. As Magistrate Judge Grosjean explained:

> Because the Court finds that Plaintiff has, for purposes of screening, stated cognizable claims under federal law, and these federal claims relate to the alleged breach of contract, the Court recommends exercising supplemental jurisdiction over the state law breach of contract claim. *See* 28 U.S.C. § 1367(a) (providing authority for federal courts to consider state-law claims when they are "so related" to the federal claims that they "form part of the same case or controversy").

(ECF No. 11, 10, fn. 4.) This finding was fully adopted by then-Chief District Judge O'Neill. (ECF No. 14; *see also* 15.)

    ***Second:*** By Citibank's own admission, the elements for a state-law breach-of-contract claim are substantially and substantively identical under South Dakota and California law. Namely, California requires showing the "'(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.' *CDF Firefighters v. Maldonado*, 70 Cal. Rptr. 3d 667,

679 (Cal. Ct. App. 2008), *as modified on denial of reh'g* (Feb. 5, 2008)." (ECF No. 11, 10:19; *see also* 14; 15; *Jud. Council of Cal. Civ. Jury Instructions* (2020), CACI No. 300, 155.) And per Citibank, "to prevail on a breach of contract claim under South Dakota law, a party must show (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages. *Gul v. Ctr. For Family Med.*, 2009 SD 12 (2009) (citing *Guthmiller v. Deloitte & Touche, LLP*, 2005 SD 77 (2005))." (ECF No. 29, 21:15.)

> ***Third:*** Citibank comes full-circle when it writes:

> While Plaintiff alleges that Citibank declined to accept his cash payment at the ATM on August 25, 2018, Plaintiff fails to acknowledge that his payment due date was September 20, 2018. *See* Ex. 1 at 4. Thus, Plaintiff had ***26*** days to make his payment before it would be past due. Rather than pay by some other means—by mail, by phone, online, or by check or money order at any branch at a later date— Plaintiff refused, breaching his own obligations under the card agreement. *See* Ex. 2 at 13.

(ECF No. 29, 22:1.) Citibank redeploys its stinky red herring and again victim-blames Pl. Anhar for its own contractual breach. Once more, any talk of a *September*-2018 due date or other payment method is moot because Citibank had already breached the contract in *August* 2018. Once Citibank did that, the contract became void, the debt thereunder became invalid ($0), and Pl. Anhar had no obligation to pay (nothing to pay), let alone by another method of Citibank's choosing. Citibank's refusal to accept and credit

Pl. Anhar's conforming cash payment constituted Citibank's intentional failure to perform, which means Citibank materially breached its own agreement. As Magistrate Judge Grosjean summarized it:

> Plaintiff alleges (1) that he entered into a credit card agreement with Defendant; (2) that he complied with all or substantially all of the material provisions of that agreement, including proffering a cash payment on his credit card account; (3) that Defendant breached the terms of the agreement when Defendant "repeatedly refused to accept and credit Mr. Anhar's 8/25/18 conforming cash payment, which the contract required Citibank to do"; and (4) that Plaintiff has been harmed and continues to be harmed by Defendant's breach of the agreement. (ECF No. 1 at 19-20.)

(ECF No. 11, 11:2.)

Of course, Citibank's contractual breach was only the beginning of its illegal conduct. Thereafter, despite Pl. Anhar's immediate and repeated disputes (*see*, *e.g.*, **Ex. C**), Citibank failed to credit the account and report it accordingly but instead kept billing on the account for seven more months, carrying over each previous month's non-existent (wrong) balance and continuing to inflate it with non-existent (illegal) fees and interest. During those seven months—plus another 10 thereafter (*and counting*, now for a total of at least 17 months)—Citibank continued, and continues, to misreport the account to the credit-reporting agencies. It's in the context of all of that that the Complaint properly pleads not just Citibank's possible but plausible,

probable, and ultimately provable breach of contract, as well as its eight civil violations of TILA, and 16 civil violations of FCBA. (ECF No. 1.)

*Ultimately:* To support its arguments, Citibank asks the Court to ignore much of the Complaint, which Citibank disingenuously calls "verbose, misleading, and redundant …." (ECF No. 29, 8:13.) But Citibank can't have it both ways. When it comes to a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine …." (*Tellabs v. Makor Issues Rights*, 551 U.S. 308, 322 (2007).) When this Court does that, it becomes clear that just beneath its surface, Citibank's Motion is a meritless and malicious delay tactic employed by Citibank after it failed to secure an extension of time to file/serve an *Answer* to the Complaint. Tellingly, Citibank chose 03/20/20 as the hearing date for its Motion, which was the original *incorrect* date its Answer was due.

### III.   CONCLUSION

Given all the above, the Complaint not only meets but exceeds the standards set forth in the Federal Rules of Civil Procedure and the U.S. Code. Citibank's Motion presents no unresolved legal issues, conceals existing factual issues, and advances frivolous boilerplate gripes built on fallacies and misrepresentations. It should be denied in full.

I verify under penalty of perjury that the foregoing is true and correct.[1]

Executed: March 6, 2020
in Turlock, California, U.S.A.

MICHAEL N. ANHAR
*Plaintiff, Self-Represented*
3183 Kendra Ct.
Turlock, CA, 95382-1335
Tel.: (209) 669-3909
michael.anhar@gmail.com

---

[1] Per 28 U.S.C. § 1746