1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MICHAEL N. ANHAR,                          Case No. 1:19-cv-00496-NONE-EPG

12                      Plaintiff,               FINDINGS AND RECOMMENDATIONS
                                                 RECOMMENDING THAT DEFENDANT'S
13            v.                                 MOTION TO DISMISS PLAINTIFF'S
                                                 COMPLAINT BE GRANTED IN PART AND
14    CITIBANK, N.A.,                            DENIED IN PART

15                      Defendant.               (ECF No. 29)

16

17          Plaintiff Michael N. Anhar ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed

18    this action on April 17, 2019, alleging claims against Defendant Citibank, N.A. ( "Defendant" or

      "Citibank") for breach of contract, violations of the Truth in Lending Act ("TILA"), and

19    violations of the Fair Credit Billing Act ("FCBA"). (ECF No. 1.)

20          On September 24, 2019, the undersigned screened Plaintiff's complaint and issued

21    findings and recommendations recommending that the case proceed on Plaintiff's claims for civil

22    violations of TILA, civil violations of the FCBA, and state law breach of contract. (ECF No. 11.)

23    The findings and recommendations also recommended that Plaintiff's claims for criminal

24    violations of TILA and the FCBA be dismissed. (*Id.*) District Judge Lawrence J. O'Neill[1] entered

25    an order adopting the findings and recommendations on November 14, 2019. (ECF No. 14.)

26    ///

27    _____

          [1] On February 2, 2020, District Judge Lawrence J. O'Neill assumed inactive senior status and the case was
28    unassigned. (ECF No. 28.)

                                                    1

1    Currently before the Court, on referral from District Judge Dale A. Drozd (ECF No. 33),

2    is Defendant's Motion to Dismiss Plaintiff's Complaint. (ECF No. 29.) For the reasons discussed

3    below, the Court recommends that Defendant's motion be granted as to Claims 2 through 9 for

4    violations of TILA and that the motion be denied as to Claim 1 for breach of contract and Claims

5    10 through 25 for violations of the FCBA.

6    **I.    PLAINTIFF'S COMPLAINT**

7    The complaint's factual allegations, which are accepted as true for the purposes of this

8    motion, are as follows:

9    On August 25, 2018, Plaintiff made four attempts to make a cash payment of $120 on his

10   Citibank credit card at Citibank ATMs, but his payment was refused, and the message on the

11   ATM stated: "I can't do that right now. For assistance, please call Customer Service." (ECF No. 1

12   at 2, 11-12.) Plaintiff contacted Defendant's customer service about his inability to make a cash

13   payment and was eventually informed that his credit card account had been suspended because,

14   when Defendant applied "Aug-18's interest charge" to Plaintiff's credit card account, that interest

15   charge caused the account to exceed the credit limit by $24.93. (*Id.* at 5-6, 12.)

16   Plaintiff had a second credit card with Defendant that had also exceeded the credit limit as

17   a result of Defendant's application of an interest charge, yet that second account was not

18   suspended, and Plaintiff was able to make a cash payment on that account. (ECF No. 1 at 8, 11.)

19   Further, Defendant's interest charges on both of Plaintiff's credit card accounts had, on 35

20   previous occasions, caused the credit cards to exceed the credit limit, and Defendant had not on

21   those previous occasions suspended Plaintiff's credit card accounts. (*Id.* at 6.) If Defendant had

22   accepted the $120 cash payment Plaintiff attempted to make on the suspended account, the

23   account would have gone back under the credit limit. (*Id.*)

24   Plaintiff closed both of his credit card accounts and promptly filed a CFPB[2] complaint.

25   (ECF No. 1 at 7, 12.) Defendant responded to the CFPB complaint as follows:

26       The error you received when attempting to make your payment at the ATM for
         your account ending in 1276 was due to the amount of the balance that exceeded
27       your credit limit, which resulted in the suspension of your account. Although your

28   _____
         [2] This acronym appears to refer to the Consumer Financial Protection Bureau.

1      account ending in 2471 also exceeded the credit limit, this account was not
       suspended at the time your $40.00 payment was received.
2
       (*Id.* at 7.)
3
              This refusal to accept Plaintiff's cash payment violated the terms of the agreement
4
       between Plaintiff and Defendant:
5
              Citibank's refusal to accept and credit Mr. Anhar's conforming payment was in
6              direct contravention of its revised cash-payment policy as established in its
               05/08/18 Update and reaffirmed in its 06/22/18 June Statement, 07/23/18 July
7              Statement, and 09/17/18 Account Update. When read concurrently with the
               governing 10/23/16 Card Agreement, the revised cash-payment policy serves to
8              amend the agreement. Under these combined and undisputed contractual elements
               and written provisions, Mr. Anhar's repeatedly proffered $120 cash payment
9              constituted a conforming payment. Thus, Citibank's refusal to accept and credit
               that payment constitutes intentional failure to perform, which means Citibank
10             materially breached its own agreement. Once Citibank breached the contract, it
               became void, and the debt thereunder became invalid.
11
       (ECF No. 1 at 8-9.)
12
              Over the next seven months, Defendant continued to treat the debt as valid and attempted
13
       to collect upon it:
14
              [Citibank] has made prohibited collections calls to Mr. Anhar's home, sent him
15             barred dunning letters, issued fraudulent monthly billing statements,
               manufactured hundreds of dollars in finance charges, and created lasting harm to
16             his creditworthiness by falsely reporting to the credit bureaus that his account is
               seriously delinquent. Citibank's willful, knowing, and persistent wrongful billing
17             on, dunning of, and third-party reporting of an account that's closed, a debt that's
               invalid, and a contract that's void, amounts to fraud and oppression.
18
       (ECF No. 1 at 9; *see also id.* at 10-18 (providing detailed allegations).) Defendant continued to
19
       impose finance charges on Plaintiff's account, failed to correctly credit Plaintiff, and issued
20
       inaccurate billing statements. (*Id.* at 20-25.) Plaintiff sent Defendant several written billing
21
       dispute notices, but Defendant did not respond and continued to send Plaintiff billing statements
22
       and collect on the debt, including by reporting the debt as delinquent to credit reporting agencies.
23
       (*Id.* at 25-45.)
24
              The complaint asserts claims against Defendant for breach of contract (Claim 1);
25
       violations of TILA (Claims 2 through 9); and violations of the FCBA (Claims 10 through 25).
26
       (ECF No. 1 at 20-45.) Plaintiff seeks relief in the form of costs of suit; prejudgment interest;
27
       actual damages in the amount of $75,011.00; criminal statutory damages in the amount of $5,000
28

3

1   and/or a one-year prison sentence for Citibank CEO Michael Corbat; civil statutory damages in

2   the amount of $801.44 for all TILA and FCBA violations; civil statutory damages of $486.40 for

3   all FCBA violations; punitive damages in the amount of $1,000,000.00; an order requiring

4   Defendant to immediately issue corrected billing statements for each month since August 25,

5   2018, including a final billing statement showing a $0 balance; an order requiring Defendant to

6   correct its internal and third-party records and reports, past, present and future, to reflect that

7   Plaintiff's account is no longer due and owing and Plaintiff's accounts were closed on August 25,

8   2018; and preliminary and permanent injunctions prohibiting Defendant and its parent, various

9   agents, and successors from taking, or reporting they are taking, adverse action against Plaintiff

10  and/or his account. (*Id.* at 45-47.)

11           **II.     DEFENDANT'S MOTION TO DISMISS**

12           On February 11, 2020, Defendant filed a motion to dismiss the complaint with prejudice

13  pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6). (ECF No. 29.) Plaintiff filed an

14  opposition on March 6, 2020, and Defendant replied on March 13, 2020.[3] (ECF Nos. 31, 32.)

15  Defendant's motion to dismiss was referred to the undersigned on November 30, 2020.[4] (ECF No.

16  33.)

17           **A.     Defendant's Position**

18           Defendant argues that Plaintiff's complaint does not contain a "short and plain statement"

19  of Plaintiff's claims as required by Rule 8. (ECF No. 29 at 12.) Plaintiff's Claims 2 through 9

20  alleging violations of TILA are also subject to dismissal under Rule 12(b)(6) because they fail to

21  state a claim upon which relief can be granted. (*Id.* at 13-19.) Specifically, Claims 2 through 8 are

22  deficient because section 1637(b)(3) of TILA only applies to amounts credited to the account and

23

24           [3] Defendant's reply was not signed. All filings submitted to the Court must bear the signature of the filing
     party. *See* Fed. R. Civ. P. 11(a); Local Rule 131. Defendant's reply did not contain any new or material arguments
     that the Court relied on in making these findings and recommendations and the Court will not strike Defendant's
25   reply at this time. However, Defendant is cautioned that future unsigned filings will be stricken.
             [4] On November 30, 2020, Plaintiff filed an opposition to the referral of this motion to the undersigned. (ECF
26   No. 34.) Plaintiff states that he opposes the referral because the parties have not consented to magistrate judge
     jurisdiction. (*Id.*) However, 28 U.S.C. § 636(b)(1)(B) permits a judge to designate a magistrate judge to submit
27   proposed findings and recommendations for disposition of a motion to dismiss for failure to state a claim upon which
     relief can be granted. Furthermore, the parties will be provided an opportunity to submit objections to the
     undersigned's findings and recommendations, which will be reviewed and considered by a district judge. *See* 28
28   U.S.C. § 636(b)(1)(C).

not failures to credit as Plaintiff alleges. (*Id.* at 14-15.) Further, the credits at issue are not credits at all and are instead previous balance amounts which were listed correctly on Plaintiff's periodic statements. (*Id.* at 15-16.) Defendant also used model disclosure forms and the use of those forms is an absolute defense to liability under TILA. (*Id.* at 16.) Defendant further complied with its disclosure obligations under TILA and Plaintiff merely disputes the amounts disclosed and not the disclosures themselves. (*Id.* at 16.) Defendant also argues that Claim 9 fails because Plaintiff does not allege an extension of credit as required for a violation of section 1637(b)(2) of TILA. (*Id.* at 17.) Defendant further contends that Plaintiff fails to allege detrimental reliance as required for actual damages under TILA. (*Id.* at 17-18.) Plaintiff also is not entitled to statutory damages and his TILA claims impermissibly seek multiple recoveries for a single disclosure violation. (*Id.* at 18-19.)

Defendant also argues that Plaintiff has failed to state a claim for violation of the FCBA and thus Claims 10 through 25 are subject to dismissal. (ECF No. 29 at 20-21.) Specifically, Plaintiff must allege the existence of a billing error to succeed on a claim under the FCBA and here the complaint does not identify any billing errors. (*Id.*) Finally, Plaintiff's breach of contract claim should be dismissed because the card agreement includes a South Dakota choice of law provision and Plaintiff caused his own damages by failing to make his payment on time. (*Id.* at 21-22.) Alternatively, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law breach of contract claim because his claims under TILA and the FCBA fail. (*Id.* at 22-23.)

**B.     Plaintiff's Position**

In his opposition, Plaintiff contends that Defendant's motion to dismiss should be denied because it misrepresents numerous facts, Exhibit 1 attached to the motion is comprised of fraudulent billing statements, and the motion is moot given that the complaint has already been favorably screened. (ECF No. 31 at 3, 6-13.) Defendant should be sanctioned under Rule 11 and its default should be entered because Defendant falsely certified its billing statements, knew that the motion was moot in light of the screening of the complaint, and its answer was due but not filed by February 11, 2020. (*Id.* at 3.)

Additionally, Plaintiff argues that the complaint adequately states claims for relief for

violations of TILA and the FCBA and for state law breach of contract because, once Defendant breached its contract with Plaintiff by refusing to accept Plaintiff's cash payment, the contract became void and the debt thereunder became invalid, *i.e.* the balance owed became $0, and Plaintiff had no obligation to pay. (ECF No. 31 at 15-24.) Claims 2 through 8 state valid claims for violations of sections 1637(b)(3) and (7) of TILA because Defendant did not report Plaintiff's balance as $0 and kept billing on the account for seven months, carrying over each previous month's balance and continuing to inflate it with fees and interest. (*Id.* at 16.) As to Claim 9, Defendant violated TILA by backdating a line-item credit of $35 to December 24, 2018, rather than the date it was issued, circumventing Defendant's obligation to respond to Plaintiff's October 24, 2018 billing dispute notice within two billing cycles. (*Id.* at 17-18.)

Plaintiff also argues that the issue of actual damages should be resolved by the fact finder, and Plaintiff has adequately pled that he sustained actual damages. (ECF No. 31 at 18-19.) While Plaintiff concedes that he is not entitled to statutory damages for Claim 9, he maintains that such damages are appropriate for violations of sections 1637(b)(3) and (7) of TILA as alleged in Claims 2 through 8. (ECF No. 31 at 19-20.) Plaintiff also concedes that he is not entitled to $486.40 in civil statutory damages for violations of the FCBA and instead contends that the correct amount is $107.60. (*Id.* at 20.) Plaintiff further attaches twenty-two (22) letters purportedly evidencing his billing disputes sent to Defendant to counter Defendant's assertion that Plaintiff has not alleged the existence of a billing error for purposes of the FCBA. (*Id.*; ECF No. 31-1.)

Finally, Plaintiff contends that the Court has already exercised supplemental jurisdiction over his state law breach of contract claim. (ECF No. 31 at 20-24.) Although the card agreement governing the account includes a South Dakota choice of law provision, the full provision states that both federal law and the law of South Dakota govern the terms of enforcement. (*Id.* at 21.) Additionally, the elements for breach of contract under South Dakota and California law are substantially the same and Defendant's breach by refusing to accept Plaintiff's payment excused Plaintiff's obligation to pay the debt. (*Id.* at 22-23.)

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   LEGAL STANDARDS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Hosp. Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) operates to test the sufficiency of the complaint. *See Iqbal*, 556 U.S. at 679. The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the Court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in *Conley*, 355 U.S. at 45-46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

///

///

7

## IV.   DISCUSSION

### A.   Incorporation by Reference

As an initial matter, both parties repeatedly rely on evidence outside the complaint in support of their arguments. (*See* ECF Nos. 29, 31.) The parties do not provide any legal justification, such as a request for judicial notice, for relying on these documents.

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the pleadings. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998). ). "[If] a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir. 2003). Under limited circumstances, the Court may look beyond the pleadings without converting a Rule 12(b)(6) motion to a motion for summary judgment and "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

As described below, the Court has considered certain documents in limited circumstances when those documents fit the applicable criteria. However, the Court declines to convert Defendant's motion to a motion for summary judgment and to generally consider all of the evidence outside the complaint that the parties rely on in their briefing.

### B.   Federal Rule of Civil Procedure 8

Defendant first argues that Plaintiff's complaint should be dismissed because it is "verbose and redundant" and therefore violates Federal Rule of Civil Procedure 8. (ECF No. 29 at 12.)

Rule 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To comply with this requirement, the pleading must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Plaintiff's complaint sets forth ninety-one paragraphs of general allegations followed by twenty-five separate claims, each of which incorporates all preceding paragraphs by reference.

8

(ECF No. 1.) Although the complaint is very lengthy and detailed, the Court does not find that this warrants dismissal, particularly in light of Plaintiff's *pro se* status. The complaint provides Defendant with fair notice of what Plaintiff's claims are and the grounds for those claims and therefore satisfies the requirements of Rule 8(a). Additionally, the Court's screening order (ECF No. 11) provides the parties with additional clarity regarding which claims are proceeding.

### C.   TILA Claims

1.   Claims 2 through 8 for Violations of 15 U.S.C. § 1637(b)(3), (7)

Claims 2 through 8 allege that Defendant violated TILA, 15 U.S.C. §§ 1637(b)(3) and (7), in issuing the September 2018 through March 2019 billing statements for Plaintiff's account (ECF No. 20-25.)

Defendant argues that Claims 2 through 8 should be dismissed because section 1637(b)(3) of TILA only applies to amounts credited to the account and not failures to credit as Plaintiff alleges. (ECF No. 29 at 14-15.) Plaintiff, in turn, argues that Claims 2 through 8 should not be dismissed for this reason because the complaint alleges violations of both section 1637(b)(3) and (7). (ECF No. 31 at 15-16.)

TILA requires creditors to disclose certain key terms and costs in credit transactions. *See* 15 U.S.C. § 1601 *et seq*. In relevant part, section 1637 requires creditors of any account on an open-end consumer credit plan[5] to transmit a statement including specified information for each billing cycle with an outstanding account balance. *See* 15 U.S.C. § 1637(b). Section 1637(b)(3) requires the statement to include "[t]he total amount credited to the account during the period." *Id.* at § 1637(b)(3). Section 1637(b)(7), in turn, requires the statement to include:

> [t]he balance on which the finance charge was computed and a statement of how the balance was determined. If the balance was determined without first deducting all credits during the period, that fact and the amount of such payments shall also be disclosed.

*Id.* at § 1637(b)(7).

///

---

[5] The TILA implementing regulation defines open-end credit as meaning "consumer credit extended by a creditor under a plan in which: (i) The creditor reasonably contemplates repeated transactions; (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid." 12 C.F.R. § 226.2.

1      In support of its argument, Defendant cites to *Reeder v. HSBC USA, Inc.*, 2009 WL

2   4788488, at *1 (N.D. Ill. Dec. 8, 2009). (ECF No. 29 at 14-15.) In *Reeder*, the plaintiffs obtained

3   a credit card from the defendant and disputed the assessment of an annual fee. *Reeder*, 2009 WL

4   4788488, at *1. The defendant's customer service stated that the fee would be credited to the

5   plaintiffs' account, but the fee was never actually credited, and the defendant continued to seek

6   payment of the fee. *Id.* at *2. The plaintiffs' complaint alleged that the failure to issue the

7   promised credit violated section 1637(b)(3). *Id.* at *4. The court granted the defendant's motion to

8   dismiss this claim, reasoning that the plaintiffs' argument "ignore[d] the plain language of the

9   statute, which makes clear that Section 1637(b)(3) applies only to 'amount[s] credited to the

10  account.'" *Id.* at *8. Because the plaintiffs alleged that their account was not in fact credited,

    section 1637(b)(3) was inapplicable. *Id.*

11     Although *Reeder* is not binding authority, the Court finds its reasoning persuasive. Here,

12  the complaint alleges that Defendant violated section 1637(b)(3) by "wrongfully refus[ing] to set

13  forth a $3,174.93 credit to the account following [Defendant's] 8/25/18 breach of contract" on the

14  September 2018 through March 2019 billing statements. (ECF No. 1 at 20-25.) As in *Reeder*,

15  Plaintiff does not allege that Defendant failed to disclose an amount that was credited on any of

16  the relevant billing statements. Instead, Plaintiff's section 1637(b)(3) claims in this case are based

17  on an amount that was *not* credited to his account. The plain language of section 1637(b)(3) only

18  requires creditors to disclose amounts credited to an account. *See* 15 U.S.C. § 1637(b)(3)

19  (requiring a creditor to disclose "[t]he total amount **credited** to the account during the period.")

20  (emphasis added). It does not address failures to credit amounts that the consumer believes should

21  have been credited. Additionally, the fact that Plaintiff has alleged violations of both section

22  1637(b)(3) and (7) in each of his claims does not affect whether or not 1637(b)(3) applies because

23  these are separate disclosure requirements under TILA. *See* 15 U.S.C. § 1637(b)(3), (7). The

24  Court therefore recommends granting Defendant's motion to dismiss Claims 2 through 8 to the

25  extent they allege a violation of section 1637(b)(3).

26     Defendant also argues that Claims 2 through 8 should be dismissed because the complaint

27  does not allege that Defendant failed to disclose what was required under section 1637(b)(3) or

28  (7), and instead alleges that Plaintiff believes that a different amount should have been disclosed.

1   (ECF No. 29 at 16-17.) Plaintiff argues that, once Defendant breached its contract with Plaintiff

2   by refusing to accept Plaintiff's cash payment, the parties' credit agreement became void and the

3   debt became invalid, *i.e.* the balance owed became $0, and Plaintiff had no obligation to pay

4   anything. (ECF No. 31 at 15-24.) Therefore, Claims 2 through 8 state valid claims for violations

5   of sections 1637(b)(3) and (7) of TILA because Defendant did not report Plaintiff's balance as $0

6   and kept billing on the account each month, carrying over each previous month's balance and

7   continuing to inflate it with fees and interest. (*Id.* at 16.)

8        The purpose of TILA, 15 U.S.C. § 1601 *et seq.,* is to ensure that creditors make

9   meaningful disclosure of credit terms to debtors. 15 U.S.C. § 1601. TILA is "only a disclosure

10  statute and does not substantively regulate consumer credit but rather requires disclosure of

11  certain terms and conditions of credit[.]" *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114,

12  1120 (9th Cir. 2009) (citations and internal quotation marks omitted). TILA's legislative history

13  is "consistent with the language of the statute limiting its scope to disclosure." *Id.* (citations

14  omitted). Therefore, "while an inaccurate disclosure that itself breaches a credit agreement may

15  also violate TILA, . . . the breach of a credit agreement based on conduct independent of the

16  disclosures does not necessarily give rise to a TILA claim." *Hauk*, 552 F.3d at 1120 (citation

     omitted).

17        Here, even construing the allegations in Plaintiff's complaint as true, the statements

18  disclosed the balance as Defendant had computed it. While Plaintiff disputes whether Defendant

19  was required to void that balance altogether as a result of a breach of contract, Plaintiff has not

20  pled a failure to accurately disclose the balance that Defendant believed was due. TILA is limited

21  in scope to disclosure and does not govern disputes over amounts owed when one party breaches

22  a contract. The Court therefore finds that Claims 2 through 8 for violations of section 1637(b)(3)

23  and (7) fail to state a claim for relief and recommends granting Defendant's motion as to these

24  claims.[6]

25  ///

26        [6] In light of the Court's recommendation, it need not address Defendant's additional arguments for
     dismissal, including that the balance is listed correctly on the billing statements, or that the billing statements show

27  that Defendant utilized model disclosure forms and the use of those forms "is an absolute defense to TILA
     liability[.]" (ECF No. 29 at 15-16.).

28

1        2.      <u>Claim 9 for Violation of 15 U.S.C. § 1637(b)(2)</u>

2           Claim 9 of the complaint alleges a violation of section 1637(b)(2) of TILA. (ECF No. 29

3    at 25.) Specifically, the complaint alleges that the January 2019 billing statement for Plaintiff's

4    account covering the period of December 25, 2018, through January 22, 2019, identified a $35

5    credit dated December 24, 2018. (*Id.*)

6           According to Defendant, the complaint does not adequately allege that the transaction at

7    issue was a credit because the billing statement attached to its motion "clearly shows that the

8    entry is a $35.00 ***refund*** of a late fee incurred during the previous billing period, ***not*** an extension

9    of credit as set forth under TILA." (ECF No. 29 at 17.) (Emphasis in original.) In opposition,

10   Plaintiff generally disputes the accuracy of all billing statements attached to Defendant's motion

11   and instead attaches what Plaintiff contends are the correct billing statements to his opposition.

12   (ECF No. 31 at 3, 6-13.) Plaintiff argues that a refund is a transaction that returns credit to the

13   account and therefore constitutes an extension of credit. (*Id.* at 18.) Because Defendant failed to

14   disclose the $35 credit during the December 2018 billing period and instead disclosed it during

     the January 2019 billing period, Defendant violated section 1637(b)(2). (*Id.*)

15          The Court first addresses whether, in ruling on Defendant's motion to dismiss, it may

16   consider the billing statement attached to Defendant's motion or the billing statement attached to

17   Plaintiff's opposition. (*See* ECF Nos. 29-1, 31-1 at 55-87.) As noted above, in ruling on a Rule

18   12(b)(6) motion, the Court may consider materials outside the complaint "on which the complaint

19   'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the

20   plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)

21   motion." *Marder*, 450 F.3d at 448.

22          Here, in support of Claim 9, Plaintiff refers to and describes the contents of the billing

23   statement covering the period of December 25, 2018, through January 22, 2019. (ECF No. 1 at

24   25.) Plaintiff's claim rests on the allegation that Defendant's "Jan-19 statement" covered the

25   period of December 25, 2018 through January 22, 2019, but the statement set forth a $35 credit

26   dated December 24, 2018, which was "backdated to one day before the billing period even

27   began." (*Id.*) Therefore, the complaint necessarily relies on the January 2019 billing statement

28   and it is central to Plaintiff's claim. While Plaintiff disputes the authenticity of the billing

statement attached to Defendant's motion, Defendant has not questioned the authenticity of the billing statement attached to Plaintiff's opposition. Therefore, all three factors are satisfied with respect to the billing statement attached to Plaintiff's opposition. The Court will therefore consider the January 2019 billing statement attached as Exhibit D to Plaintiff's opposition (*see* ECF No. 31-1 at 79-81) but will not consider the billing statement attached as Exhibit 1 to Defendant's motion because its authenticity is disputed.

Turning to the merits, Section 1637(b)(2) requires creditors of any account on an open-end consumer credit plan to transmit a billing statement that includes, in relevant part: "[t]he amount and date of each extension of credit during the period[.]" 15 U.S.C. § 1637(b)(2).

The complaint alleges that the $35 amount at issue was a credit. (ECF No. 1 at 15.) The January 2019 statement attached to Plaintiff's opposition identifies a "REFUND LATE FEE" of $35.00 and a post date of "12/24" under the subheading "Payments, Credits and Adjustments." (ECF No. 31-1 at 80.) Defendant does not identify any authority supporting its argument that section 1637(b)(2) does not apply to refunds. (*See* ECF No. 29.)[7] Accepting the allegations of the complaint as true and construing the facts in Plaintiff's favor, the Court finds that Plaintiff has adequately alleged an extension of credit in support of Claim 9 for violation of section 1637(b)(2).

However, for the reasons discussed below, the Court will recommend dismissing this claim on the basis of a failure to allege damages.

### 3.   TILA Damages

A consumer may recover "any actual damage sustained ... as a result of the [disclosure] failure." 15 U.S.C. § 1640(a)(1). In order to establish actual damages, there must be a showing of detrimental reliance. *Gold County Lenders v. Smith (In re Smith),* 289 F.3d 1155, 1157 (9th

---

[7] Defendant's reply cites to *Esquibel v. Chase Manhattan Bank USA, N.A.*, 487 F.Supp.2d 818, 829 (S.D. Tex. 2007), which reasoned that over-the-limit fees and late fees are not extensions of credit. (*See* ECF No. 32 at 12.) However, Plaintiff does not allege that disclosure of a late fee violated section 1637(b)(2). Instead, he alleges that a refund of a late fee violated Defendant's disclosure requirements. Therefore, the issue is whether *refunds*, not late fees, are extensions of credit under section 1637(b)(2). Additionally, Defendant's argument that the refund at issue could not be an extension of credit because Plaintiff was no longer using the credit card is not persuasive. The Supreme Court decision Defendant cites for the proposition that "a credit card company . . . extends credit to an individual or organization when it opens or renews an account, as well as when the cardholder actually uses the credit card to make purchases" did not hold that those were the only circumstances that involve an extension of credit for purposes of TILA. *See Am. Exp. Co. v. Koerner,* 452 U.S. 233, 241 (1981).

1    Cir.2002).

2        Defendant argues that the Court should dismiss Plaintiff's TILA claims because the

3    complaint does not allege detrimental reliance on or actual damages. (ECF No. 29 at 18.) Plaintiff

4    argues that the issue of actual damages should be resolved by the fact finder, and Plaintiff has

5    adequately pled that he sustained actual damages. (ECF No. 31 at 18-19.)

6        The complaint's demand for relief requests:

7        Actual damages[] of $75,011 under all 25 claims to compensate Mr. Anhar for his
         exhaustive seven-plus months and several-hundred hours of seeking help from
8        then repelling Citibank, establishing alternate accounts, filing and following up on
         more than half-a-dozen agency complaints, researching and drafting some two-
9        dozen letters, reviewing nearly 260 pages of billing statements spanning 12+
         years, making numerous calculations of the data contained in those statements,
10       making and receiving various phone calls, fielding dozens of harassing and illegal
         collections calls, requesting and reviewing credit files, filing numerous disputes
11       with credit bureaus, placing freezes on credit files, placing fraud alerts on credit
         files, bringing this action as a self-represented litigant (and all that that entails),
12       and so on.

13   (ECF No. 1 at 45-46.)

14       However, these harms concern Plaintiff's own attempts to have his statement changed to

15   reflect what he believed to be the correct amounts. They do not concern damages from his

16   mistaken reliance on the amounts disclosed. Plaintiff does not allege any type of detrimental

17   reliance on Defendant's failed TILA disclosures. Although Plaintiff identifies various efforts he

18   took, he does not allege that he was relying on a TILA disclosure Defendant did or did not make

19   when taking those efforts.

20       The lack of damages is especially apparent regarding the one claim that the Court has

21   found states a facial violation of TILA, i.e., the listing of the $35 refund on the January 2019

22   statement instead of the December 2018 statement.  Plaintiff has not alleged any plausible

23   damage or reasonable reliance on this alleged misstatement.  Plaintiff has not pointed to any harm

24   that came to him based on the refund being posted one day earlier than the statement

25   period.  Thus, even though Plaintiff's complaint states a technical violation of section 1637(b)(2),

26   it should be dismissed for lack of damages.

27       Nor are statutory damages allowed for a claim under section 1637(b)(2). 15 U.S.C. §
     1650(a). As noted above, the Court has recommended dismissal of all of Plaintiff's TILA claims

28

                                    14

1    other than the section 1637(b)(2) claim relating to the $35 refund on the January 2019 billing

2    statement. Because, as Plaintiff concedes, he cannot recover statutory damages for a violation of

3    section 1637(b)(2), the Court also recommends dismissal of Claim 9 for violation of section

4    1637(b)(2) due to Plaintiff's failure to adequately allege damages in support of this claim.

5        **D.    FCBA Claims**

6        Claims 10 through 25 assert violations of the FCBA. (ECF No. 1 at 26-45.) Specifically,

7    the complaint alleges that Defendant made improper attempts to collect on the debt before

8    responding to Plaintiff's written billing dispute notices, failed to timely respond to Plaintiff's

9    written billing dispute notices, issued billing statements after receiving Plaintiff's written billing

10   dispute notices without indicating that Plaintiff was not required to pay the disputed amounts, and

11   willfully and knowingly reported Plaintiff's debt as delinquent to third-party credit bureaus after

12   receiving Plaintiff's written billing dispute notices. (*Id.*)

13       Defendant argues that Claims 10 through 25 should be dismissed because Plaintiff must

14   allege the existence of a billing error to state a claim under the FCBA and here the complaint does

15   not identify any specific billing errors. (ECF No. 29 at 20-21.) Plaintiff attaches twenty-two (22)

16   letters purportedly evidencing his billing disputes sent to Defendant to counter Defendant's

17   assertion that Plaintiff has not alleged the existence of a billing error. (*Id.*; ECF No. 31-1.)

18       The Court will again begin by addressing whether it can consider the billing dispute letters

19   attached to Plaintiff's opposition. As noted above, in ruling on a Rule 12(b)(6) motion, the Court

20   may consider materials outside the complaint "on which the complaint 'necessarily relies' if: (1)

21   the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3)

22   no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder*, 450

23   F.3d at 448.

24       Claims 10 through 25 specifically refer to Plaintiff's "dispute notice[s]" dated September

25   28, 2018, October 24, 2018, November 24, 2018, December 18, 2018, December 26, 2018, and

26   January 14, 2019. (ECF No. 1 at 26-45.) The complaint also necessarily relies on these documents

27   and they are central to Plaintiff's claims. Plaintiff's FCBA claims are premised on the allegation

28   that Defendant made improper attempts to collect on the debt before responding to the September

     28, 2018, October 24, 2018, and December 26, 2018 dispute notices (Claims 10 through 13);

failed to timely respond to the September 28, 2018 and October 24, 2018 dispute notices (Claims 14 and 15); issued billing statements after receiving the September 28, 2018 and October 24, 2018 dispute notices without indicating that Plaintiff was not required to pay the disputed amounts (Claims 16 through 21); and willfully and knowingly reported Plaintiff's debt as delinquent to third-party credit bureaus even though Defendant had received the September 28, 2018, October 24, 2018, November 24, 2018,  December 18, 2018, December 26, 2018, and January 14, 2019 dispute notices (Claims 22 through 25). (*Id.*) Additionally, Defendant has not questioned the authenticity of any of the letters attached to Plaintiff's opposition. Therefore, all three factors are satisfied with respect to the letters dated September 28, 2018, October 24, 2018, November 24, 24, 2018, December 18, 2018, December 26, 2018, and January 14, 2019[8] that are attached to Plaintiff's opposition. (*See* ECF No. 31-1 at 17-20, 25, 27-31, 39-40.) The Court will consider these letters for purposes of Defendant's motion to dismiss,[9] but will not consider the remaining letters attached as Exhibit C to Plaintiff's opposition because the complaint does not refer to them and they do not appear to be central to Plaintiff's claims.

Turning to the merits of the parties' arguments, the FCBA is part of TILA and provides specific procedures that creditors and consumers must follow in resolving credit card disputes. 15 U.S.C. § 1666. To state a claim under the FCBA, Plaintiff must allege (1) that he provided timely, sufficient notice of a billing error to Defendant; and (2) Defendant failed to timely acknowledge receipt of the notice and correct the error or provide a written explanation of why there is no error. *Marcotte v. Gen. Elec. Capital Servs., Inc.*, 2009 WL 10671521, at *5 (S.D. Cal. Aug. 31, 2009); *see also* 12 C.F.R. § 226.13(b) (requiring that the consumer's written notice of billing error "[t]o the extent possible, indicate[] the consumer's belief and the reasons for the belief that a billing error exists, and the type, date, and amount of the error"); *Cunningham v. Bank One,* 487 F.Supp.2d 1189, 1192-93 (W.D. Wash. 2007) (noting that a consumer's "belief" under the FCBA

---

[8] The October 24, 2018, November 24, 2018, and December 18, 2018 dispute notices also expressly "incorporate by reference" Plaintiff's letters dated October 22, 2018, October 11, 2018, and October 9, 2018. (*See* ECF No. 31-1 at 25, 27-28.) The Court will therefore also consider the October 22, 2018 and October 9, 2018 letters attached as Exhibit C to the opposition by virtue of their incorporation by reference in to the dispute notices that meet all three factors for consideration. (*Id.* at 21-24.) However, it does not appear that a copy of the October 11, 2018 letter was attached to Plaintiff's opposition. (*See id.* at 17-54.)

[9] The Court is not accepting the truth of what is asserted, but is merely evaluating the allegations in the letters to see if they fall within the scope of the FCBA.

"need not be in good faith, rather, even a plaintiff's bad-faith nit-picking may constitute a notice of a billing error.") (citation and internal quotation marks omitted). The FCBA defines a "billing error" to include, among other things, a "failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor." 15 U.S.C. § 1666(b)(4); *see also* 12 C.F.R. § 226.13(a)(4) (defining "billing error" to include, in relevant part, "[a] reflection on a periodic statement of the creditor's failure to credit properly a payment or other credit issued to the consumer's account.").

Here, Plaintiff's September 28, 2018 billing dispute expressly states that Plaintiff "den[ies] and dispute[s] the above-referenced alleged debt in its entirety" and then continues to explain that he attempted to make a cash payment four times on August 25, 2018, and Defendant "refuse[d] . . . to honor, accept, and credit said payment." (ECF No. 31-1 at 17, 19.) Plaintiff's October 22, 2018 letter similarly disputes the entire debt and explains that his dispute is based on Defendant's refusal "to honor, accept, and credit my proper cash payment." (*Id.* at 23-24.) These letters are incorporated by reference in to Plaintiff's subsequent dispute notices to Defendant. (*See id.* at 25, 27-28, 30.). These letters therefore appear to describe the basis for Plaintiff's dispute as Defendant's failure to properly credit Plaintiff's account for his payment, which is a billing error under the FCBA. Construing the allegations liberally and in the light most favorable to Plaintiff, both as a *pro se* plaintiff and as the non-moving party, the Court finds that Plaintiff has sufficiently identified a billing error for purposes of surviving a Rule 12(b)(6) motion.

As Defendant does not present any other arguments for dismissing Plaintiff's FCBA claims, the Court recommends that the motion to dismiss Claims 10 through 25 be denied.

### E.     Breach of Contract

Claim 1 of the complaint alleges a breach of contract claim. (ECF No. 1 at 19-20.) According to the complaint, Defendant breached the parties' contract by refusing to accept and credit Plaintiff's August 25, 2018 conforming cash payment. (*Id.* at 19.)

Defendant argues that the applicable card agreement has a South Dakota choice of law provision, and any "damage" Plaintiff suffered is due to his decision not to make a payment by some other means before his payment was due in September of 2018. (ECF No. 29 at 21-22.) Defendant attaches a copy of a card agreement dated October 23, 2016 to the motion in support of

this argument. (ECF No. 29-2.) Plaintiff does not dispute the authenticity of the card agreement, but points out that the full provision states, "Federal law and the law of South Dakota govern the terms and enforcement of this Agreement." (ECF No. 31 at 21.) Additionally, the elements for breach of contract are substantially the same under South Dakota and California law. (*Id.* at 22-23.) Plaintiff also had no obligation to pay by the September 2018 due date because Defendant's cash payment policy permitted Plaintiff to pay by cash and Defendant had already breached the contract in August of 2018 by refusing to accept and credit Plaintiff's cash payment, excusing Plaintiff's contractual obligations. (*Id.* at 7, 23.) Plaintiff also attaches copies of Defendant's cash payment policy as set forth in account updates dated May 8, 2018, and September 17, 2018, and his billing statements for June 2018 and July 2018. (ECF No. 31-1 at 4-15.)

As above, the Court first addresses whether it may consider the card agreement attached to Defendant's motion and the cash payment policy attached to Plaintiff's opposition. The Court may consider these documents if the complaint "necessarily relies" on them because "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder*, 450 F.3d at 448.

In support of the breach of contract claim, the complaint refers to and quotes from the October 23, 2016 card agreement as well as the cash payment policy from the May 8, 2018 and July 17, 2018 account updates and June and July 2018 billing statements. (ECF No. 1 at 19.) The complaint specifically cites to each of these documents as forming the basis for this claim. The complaint therefore necessarily relies on these documents and they are central to Plaintiff's breach of contract claim. Further, neither party has disputed the accuracy of these documents. Accordingly, all three factors are met for the card agreement attached as Exhibit 2 to Defendant's motion and the cash payment policy attached as Exhibit C to Plaintiff's opposition. The Court will consider these documents in the course of making these findings and recommendations.

Here, as the parties agree, the card agreement contains a choice-of-law provision applying South Dakota law. (ECF No. 29-2 at 17.)[10] *See Branch* , 14 F.3d at 454. However, neither party

---

[10] Although Plaintiff correctly notes that the choice-of-law provision also references federal law, breach of contract is a state law claim and not a federal claim. *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 840 (9th Cir. 2004) ("[A] cause of action[] for damages stemming from alleged breach of contract[] is

has presented any arguments addressing whether the choice-of-law provision should be enforced. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 65 (2013) ("A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits."); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) ("In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state[.]")

The Court need not resolve the choice-of-law issue for purposes of ruling on the motion. As an initial matter, the elements for a breach of contract claim are substantially the same under both California and South Dakota law. *See CDF Firefighters v. Maldonado*, 70 Cal. Rptr. 3d 667, 679 (Cal. Ct. App. 2008), *as modified on denial of reh'g* (Feb. 5, 2008) (defining the breach of contract elements as "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."); *cf. Weitzel v. Sioux Valley Heart Partners*, 2006 S.D. 45, ¶ 31, 714 N.W.2d 884, 894 (defining the breach of contract elements as "1. An enforceable promise; 2. A breach of the promise; 3. Resulting damages.") (citations omitted.) Further, Defendant solely argues that the breach of contract claim should be dismissed because Plaintiff caused his own damages by failing to make a payment by another means other than cash.

However, Plaintiff's complaint alleges that the cash payment policy permitted him to make cash payments through a Citibank ATM "up to $3,000 per credit card account per calendar month with your credit card PIN." (ECF Nos. 1 at 19, 31-1 at 4, 8, 12, 14.) Defendant does not point to any provision of the card agreement that requires Plaintiff to make a payment by another means if Defendant rejects a cash payment. The Court cannot determine, based on a motion to dismiss, whether there are other reasons why Plaintiff selected that form of cash payment. Plaintiff also alleges that Defendant's breach occurred on August 25, 2018, before the September 20, 2018 payment due date. (ECF No. 1 at 19.) Construing these alleged facts liberally and in the light most favorable to the Plaintiff, the Court finds that Plaintiff has adequately alleged that

clearly a creature of state law."); *see also Hall v. N. Am. Van Lines, Inc*, 476 F.3d 683, 687 (9th Cir. 2007)("[T]he presence of underlying federal issues does not create jurisdiction over a well-pleaded state law claim.").

1    Defendant caused his damages.

2           As Defendant does not present any other arguments for dismissal of this claim, the Court

3    recommends that Defendant's motion to dismiss Plaintiff's breach of contract claim be denied.

4           **F.      Rule 11 Sanctions and Default**

5           Finally, Plaintiff's opposition argues that Defendant should be sanctioned under Rule 11

6    and its default should be entered because Defendant misrepresented numerous facts in the motion,

7    attached "fraudulent" billing statements to the motion, knew the motion was moot in light of the

8    Court's screening order, and Defendant's answer was due but not filed by February 11, 2020.

9    (ECF No. 31 at 3, 6-13.)

10          In relevant part, Rule 11 of the Federal Rules of Civil Procedure provides:

11          **(b) Representations to the Court.** By presenting to the court a pleading, written
            motion, or other paper—whether by signing, filing, submitting, or later advocating
12          it—an attorney or unrepresented party certifies that to the best of the person's
            knowledge, information, and belief, formed after an inquiry reasonable under the
            circumstances:
13          **(1)** it is not being presented for any improper purpose, such as to harass, cause
            unnecessary delay, or needlessly increase the cost of litigation;
14          **(2)** the claims, defenses, and other legal contentions are warranted by existing law
            or by a nonfrivolous argument for extending, modifying, or reversing existing law
15          or for establishing new law;                      * * *

16          **(c) Sanctions.**
            **(1) In General.** If, after notice and a reasonable opportunity to respond, the court
17          determines that Rule 11(b) has been violated, the court may impose an
            appropriate sanction on any attorney, law firm, or party that violated the rule or is
18          responsible for the violation.

19   Fed. R. Civ. P. 11.

20          There are two competing considerations underlying Rule 11. *United National Insurance*

21   *Co. v. R & D Latex Corp.,* 242 F.3d 1102, 1115 (9th Cir. 2001). On one hand, attorneys

22   occasionally "engage in litigation tactics so vexatious as to be unjustifiable even within the broad

23   bounds of our adversarial system, and ... neither the other parties nor the courts should have to

24   abide such behavior or waste time and money coping with it." *Id.* On the other hand, "our system

25   of litigation *is* an adversary one, and . . . presenting facts and law as favorably as fairly possible in

26   favor of one's client is the nub of the lawyer's task." *Id.* (Emphasis in original.) Accordingly,

27   judges "should impose sanctions on lawyers for their mode of advocacy only in the most

28   egregious situations, lest lawyers be deterred from vigorous representation of their clients." *Id.*;

*see also In re Keegan Management Co., Securities Litigation*, 78 F.3d 431, 437 (9th Cir. 1996) ("Rule 11 is an extraordinary remedy, one to be exercised with extreme caution.").

Although Plaintiff disagrees with Defendant's counsel's representation of the facts, having reviewed the parties' briefs, the Court finds that Defendant's counsel was merely attempting to present the facts and law as favorably and fairly as possible in favor of his client. *United National Insurance Co.,* 242 F.3d at 1115. Likewise, the errors and omissions in the billing statements Plaintiff describes as "fraudulent" were often, as Plaintiff concedes, "immaterial." (*See* ECF No. 31 at 10-11.) The Court also has not considered the billing statements attached to Defendant's motion in issuing these findings and recommendations. In these circumstances, the Court does not find that the arguments in Defendant's motion or the attached billing statements warrant sanctions.

As to Plaintiff's argument that sanctions are appropriate because the complaint has already been favorably screened, a favorable screening order does not necessarily preclude a defendant from challenging a complaint under Rule 12(b)(6) *See Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) ("[T]he sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring."); *Norsworthy v. Beard,* 87 F.Supp.3d 1104, 1111 n.4 (N.D. Cal. 2015) ("The issuance of a screening order . . . does not foreclose Defendants from moving to dismiss the complaint."); *Hunt v. Martinez*, 2020 WL 564815, at *3 (E.D. Cal. Feb. 5, 2020), *report and recommendation adopted*, 2020 WL 1433000 (E.D. Cal. Mar. 24, 2020) ("Despite the similarities in wording between 28 U.S.C. §§ 1915(e)(2), 1915A and Rule 12(b)(6), courts distinguish between the *sua sponte* screening of complaints and the consideration of motions that defendants bring under Rule 12(b)(6)."); *Barker v. California Dep't of Corr. & Rehab.*, 2015 WL 3913546, at *4 (E.D. Cal. June 25, 2015), *report and recommendation adopted*, 2015 WL 5474307 (E.D. Cal. Sept. 16, 2015) ("Plaintiff cannot rely solely on the court's screening as a basis for overcoming a Rule 12(b)(6) motion."). Prohibiting a defendant from filing a Rule 12(b)(6) motion solely because a complaint has been screened would deprive defendants of the basic procedural right to challenge the sufficiency of the pleadings. *James v. Perez*, 2012 WL 5387676, at *2 (E.D. Cal. Nov. 1, 2012). Additionally, the parties have both asked the Court to consider documents that

Plaintiff relied on in the complaint but were not attached to it and have raised arguments that were not before the Court at screening. Therefore, the Court will not recommend sanctioning Defendant or denying its motion because the complaint was previously favorably screened.

Finally, Plaintiff argues that Defendant should be sanctioned or have its default entered for failing to timely file an answer. The record indicates that the U.S. Marshal mailed Defendant a waiver of service on December 13, 2019, and it was returned executed on January 13, 2020. (ECF No. 26.) Defendant was entitled to answer or otherwise respond to the complaint within sixty (60) days from the date the request for waiver was sent. *See* Fed. R. Civ. P. 12(a)(1)(B). Defendant's response was therefore due on or before February 11, 2020. The Court recognizes, as Plaintiff points out, that Defendant did not file an answer prior to February 11, 2020. However, on February 11, 2020, Defendant filed its motion to dismiss pursuant to Rule 12(b)(6). (ECF No. 29.) That motion was a legitimate and timely response to Plaintiff's complaint and a separate answer was not required. *Lau v. Silva*, 2006 WL 3359205, at *1 (E.D. Cal. Nov. 20, 2006), *report and recommendation adopted sub nom. Lau v. Anthony V. Silva, P.C.*, 2007 WL 430629 (E.D. Cal. Feb. 6, 2007); Fed. R. Civ. P. 12(b) (a motion made on any grounds enumerated in Rule 12(b) "shall be made before pleading if a further pleading is permitted").

As a result, the Court will not recommend that Defendant be sanctioned under Rule 11 or that default be entered against Defendant.

## G.  CONCLUSION AND RECOMMENDATION

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.  Defendant's motion to dismiss (ECF No. 29) be GRANTED as to Claims 2 through 9 for violations of TILA, 15 U.S.C. § 1637(b)(2), (3), and (7) and DENIED as to Claim 1 from breach of contract and Claims 10 through 25 for violations of the FCBA, 15 US.C. § 1666; [11]

2.  Defendant be directed to respond to Plaintiff's complaint within fourteen (14) days of an order adopting these findings and recommendations;

3.  Plaintiff's request for sanctions against Defendant under Federal Rule of Civil

---

[11] As Plaintiff has not sought leave to amend and the Court does not believe the deficiencies can be cured by amendment, the Court does not recommend giving leave to amend the complaint.

1    Procedure 11 and for entry of default (ECF No. 31) be denied; and

2        4.   This matter be referred back to the undersigned for further scheduling and other

3            proceedings consistent with the order adopting these findings and recommendations.

4        These findings and recommendations are submitted to the United States district judge

5    assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen

6    (14) days after being served with these findings and recommendations, any party may file written

7    objections with the court. Such a document should be captioned "Objections to Magistrate Judge's

8    Findings and Recommendations." Any reply to the objections shall be served and filed within

9    seven (7) days after service of the objections. The parties are advised that failure to file objections

10   within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772

11   F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

12

13   IT IS SO ORDERED.

14       Dated:   __**March 25, 2021**__            ___/s/_Erica_ P. Grosjean___

15                                            UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28