Michael N. Anhar
3183 Kendra Ct.
Turlock, CA  95382-1335
Tel.: (209) 669-3909
michael.anhar@gmail.com
*Plaintiff/Petitioner, Pro Se*

# UNITED STATES DISTRICT COURT

## For the Eastern District of California

## Fresno Division

| | |
|---|---|
| **Michael N. Anhar**, | No.: 1:19-cv-00496-NONE-EPG |
| Plaintiff/Petitioner; | **Notice of Motion and Motion to Strike and Dismiss Citibank's Answer and Counterclaim; Memorandum of Points and Authorities** |
| v. | |
| **Citibank, N.A.**, | |
| Defendant/Respondent. | (ECF No. 40) |
| **Citibank, N.A.**, | |
| Counter-Claimant; | Date:      August 31, 2021 |
| v. | Time:      9:30 a.m. |
| **Michael N. Anhar**, | Place:      Ctrm. 4 (Fl. 7) |
| Counter-Defendant. | *Submitted on the record and briefs, unless ordered otherwise.* (L.R. 230(g); ECF No. 39-2) |

## NOTICE & MOTION

TO ALL PARTIES/ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on/at the above date/time, or as soon thereafter as the matter can be heard in the above courtroom of the above court located at 2500 Tulare Street, Fresno, California, 93721-1321, Plaintiff ("Anhar") will and does move the Court, per Federal Rules of Civil Procedure ("Rule/FRCP") 12(f)(2) and (b)(6), to strike in full and dismiss with prejudice Defendant's ("Citibank's") Answer and Counterclaim ("A&C"). (ECF No. 40.)

This motion is based on the matters contained herein; the below Memorandum of Points & Authorities; all the papers, files, and records of this case; any further evidence that may be presented at this motion's hearing or at anytime permitted thereafter; and on any further matters the Court deems appropriate.

Dated: August 2, 2021

MICHAEL N. ANHAR
*Plaintiff/Petitioner, Pro Se*

# TABLE OF CONTENTS

Notice & Motion................................................................... 2

Table of Contents ................................................................ 3

Table of Authorities .......................................................... 5

Memorandum of Points & Authorities ......................... 8

    A. Introduction ........................................................ 8

    B. Legal Standards.................................................. 9

        **1. Motions to Strike................................................ 9**

        **2. Motions to Dismiss........................................... 10**

    C. Argument ............................................................ 11

        **1. Citibank's Answer is rife with prejudicially insufficient defenses and redundant, immaterial, and impertinent matter and thus should be stricken in full. ...................... 11**

            *a. Citibank's affirmative defenses are facially absurd, wholly conclusory, and don't even give fair notice......... 11*

            *b. Citibank profusely evades admitting allegations or denying the substance of allegations. .............................. 17*

            *c. Citibank profusely baselessly invokes lack of knowledge or information to deny allegations. ..................................... 19*

            *d. Citibank flagrantly denies allegations in bad faith and fails to admit the parts that are true. .............................. 20*

**2. Citibank's Counterclaim fails to state a claim on which relief can be granted and thus must be dismissed with prejudice**..................................................... **22**

    a. *Citibank's Roes 1 through 10 are facially implausible scapegoats and boogeymen.* .............................. *23*

    b. *Citibank's first claim is facially implausible because it fails to plead the complete contract.* ................................ *24*

    c. *Citibank's second claim is facially implausible because it's factually bankrupt.*...................................... *26*

D. Conclusion ......................................................... 28

Verification ......................................................... 28

# TABLE OF AUTHORITIES

## Cases

*New York City Employees' Retirement System v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) ...................................................... 9

*Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1059 (N.D. Cal. 2004)............................................................................... 9

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010)............................................................................... 9

*Nurse v. U.S.*, 226 F.3d 996, 1000 (9th Cir. 2000) ............................ 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ................................ 10, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........... 10, 12, 13

*Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) ....................... 10

*Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) .............. 10

*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)............................................................................... 11

*Harris v. Chipotle Mexican Grill, Inc.*, 303 F.R.D. 625, 627 (E.D. Cal. 2014)............................................................................... 11

*Dodson v. Strategic Rests. Acquisition Co. II, LLC*, 289 F.R.D. 595, 603 (E.D. Cal. 2013) (Karlton, J.) ................................................ 11

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) ......................................... 11

*Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979)..... 11, 12

ANHAR V. CITIBANK                              MOT. TO STRIKE & DISMISS D'S A&C

*Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010).................................................................................. 11, 12

*Kohler v. Flava Enters., Inc.*, 779 F.3d 1016 (9th Cir. 2015)............. 12

*In re Sterten*, 546 F.3d 278, 285 (3d Cir. 2008) ................................ 12

*Barnes v. AT&T Pension Benefit Plan*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010) ...................................................................... 12

*Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) ................................................................................. 12

*Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734 (N.D. Ill. 1982) .... 13

Order Granting In Part and Denying In Part Pl.'s Mot. to Strike Aff. Defenses 5 9:18, *Varrasso v. Barksdale*, No. 3:13-cv-01982-BAS-JLB (S.D. Cal. Apr. 5, 2016) .................................................... 15

*Manley v. Boat/U.S. Inc.*, Case No. 13-cv-5551, 10 (N.D. Ill. Mar. 29, 2016) ........................................................................................ 15

*Lane v. Page*, 272 F.R.D. 581, 602 (D.N.M. 2011)............................ 17

*State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. 2001)........................................................................................ 17

*Johnson v. Meltzer*, 134 F.3d 1393 (9th Cir. 1998)............................ 28

*Autera v. Robinson*, 419 F.2d 1197, 1202 n. 22 (D.C. Cir. 1969)....... 28

**Statutes**

28 U.S.C. § 1746.............................................................................. 28

ANHAR V. CITIBANK                    MOT. TO STRIKE & DISMISS D'S A&C

## Federal Rules of Civil Procedure

12(f)(2) .......................................................................................... 2

12(b)(6) ......................................................................................... 9

7.1(a) ............................................................................................. 8

12(f) ............................................................................................... 9

7(a)(1) .......................................................................................... 12

7(a)(2) .......................................................................................... 12

8 .................................................................................................... 12

11(b)(2) ........................................................................................ 17

11(c) ............................................................................................. 17

11(b)(3) ........................................................................................ 17

8(b) ............................................................................................... 17

8(b)(1) .......................................................................................... 18

8(b)(2) .......................................................................................... 18

8(b)(5) ..................................................................................... 19, 20

8(b)(4) ..................................................................................... 20, 21

10(a) ............................................................................................. 24

21 .................................................................................................. 24

## Other

L.R. 305 .......................................................................................... 8

ANHAR V. CITIBANK                          MOT. TO STRIKE & DISMISS D'S A&C

**MEMORANDUM OF POINTS & AUTHORITIES**

**A.   INTRODUCTION**

Anhar is proceeding *pro se* and *in forma pauperis* in this civil action against Citibank for breach of contract and civil violations of the Fair Credit Billing Act ("FCBA"). (ECF Nos. 1, 4.)

On July 12, 2021, Citibank filed its A&C. (ECF No. 40.) That A&C is so infested with prejudicial procedural and substantive defects and deficiencies that it should be stricken in full and must be dismissed with prejudice.

As a preliminary matter: (a) since initially appearing in this case, Citibank has failed to file its corporate disclosure statement, violating Rule 7.1(a) for nearly 1.5 years now; (b) it lists the wrong case number on each page of its 61-page A&C; (c) its Certificate of Service misstates the name of the service document; (d) as just one of several signs of its copied-and-pasted boilerplate affirmative defenses, except in two of 17 instances, Citibank substitutes the phrase "the Demand" ostensibly for "the Complaint"; (e) likewise, except in three of 22 instances in its affirmative defenses, Citibank invokes "Claimant" ostensibly to refer to Anhar; and (f) Citibank asks for dismissal despite 17 claims of the Complaint already having survived Citibank's Motion to Dismiss.

All the above is, of course, in the context of Citibank's having previously (a) failed to sign its motion-to-dismiss Reply (ECF No. 32),

thus violating Rule 11(a), for which the Court admonished it (ECF No. 35 4 n.3), and (b) filed nine fraudulent billing statements (ECF No. 29-1), which Anhar opposed and countered (ECF No. 31), but which this Court ultimately found constituted a litigation tactic that wasn't sufficiently vexatious or egregious to warrant even an admonishment, let alone the sanctions Anhar urged. (ECF No. 35 20:20–21:2.)

### B.   LEGAL STANDARDS

#### 1.   Motions to Strike

Rule 12(f) provides for striking any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Because courts generally disfavor motions to strike, the movant usually needs to show the material in question is both extraneous and prejudicial.[1] In deciding such motions, "the court must interpret the pleadings in the light most favorable to the nonmoving party and must resolve any doubt in favor of the nonmoving party."[2] Ultimately, granting a motion to strike lies within the sound discretion of the court.[3]

---

[1] *New York City Employees' Retirement System v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009).

[2] *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1059 (N.D. Cal. 2004).

[3] *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010) (citing *Nurse v. U.S.*, 226 F.3d 996, 1000 (9th Cir. 2000)).

## 2.   Motions to Dismiss

Rule 12(b)(6) provides for dismissal based on a "failure to state a claim upon which relief can be granted." The movant needs to show the counterclaim lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4] Facial plausibility is a higher standard than mere speculative possibility[5] and therefore requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

An adequate defense requires a defendant to be adequately informed. So a pleading can't merely "le[ave] open the possibility that a [counter-claimant] might later establish some 'set of [undisclosed] facts' to support recovery."[7] Only well-pled factual matter must be accepted as true. "[M]ere conclusions … are not entitled to the assumption of truth,"[8] so courts need "'not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'"[9]

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] *Twombly*, 550 U.S. at 555.

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *Twombly*, 550 U.S. at 561 (citation omitted).

[8] *Iqbal*, 556 U.S. at 664.

[9] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

Accordingly, anything "masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[10]

### C.   ARGUMENT

**1.   Citibank's Answer is rife with prejudicially insufficient defenses and redundant, immaterial, and impertinent matter and thus should be stricken in full.**

*a.   Citibank's affirmative defenses are facially absurd, wholly conclusory, and don't even give fair notice.*

"Affirmative defenses can be challenged as a matter of pleading or as a matter of law."[11] Insufficiency as a matter of law means the affirmative defense "lacks merit 'under any set of facts the defendant might allege.'"[12] Insufficiency as a matter of pleading means the affirmative defense fails to give fair notice.[13] Courts use two standards to test pleading sufficiency: the *Conley*[14] "fair notice" standard,

---

[10] *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

[11] *Harris v. Chipotle Mexican Grill, Inc.*, 303 F.R.D. 625, 627 (E.D. Cal. 2014) (citing *Dodson v. Strategic Rests. Acquisition Co. II, LLC*, 289 F.R.D. 595, 603 (E.D. Cal. 2013) (Karlton, J.)).

[12] *Id.* (citing *Dodson*, 289 F.R.D. at 603).

[13] *Id.* (citing *Dodson*, 289 F.R.D. at 603).

[14] *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010).

upheld by the Ninth Circuit in *Kohler*,[15] and the *Twombly*[16] heightened pleading standard, upheld by the Supreme Court in *Iqbal*.[17]

The heightened pleading standard was already discussed above. As for the fair-notice standard, an affirmative defense is insufficient if it fails to give the plaintiff fair notice of the nature and grounds for the affirmative defense[18] such that it "specifically deprive[s] [the plaintiff] of an opportunity to rebut [a] defense or to alter [his] litigation strategy accordingly."[19] This standard serves "to weed out the boilerplate listing of affirmative defenses … ."[20]

This Court is bound by precedent, chiefly from the Supreme Court, which promulgates the Rules that define and govern pleadings. Under Rule 7(a)(1) and (2), "a complaint [or counterclaim]" and "an answer to a complaint" are pleadings. And Rule 8 expressly governs the pleading of affirmative defenses. Accordingly, Citibank's A&C, and its affirmative defenses therein, are pleadings and thus subject to the Rules governing pleadings and the heightened pleading standard.[21]

---

[15] *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016 (9th Cir. 2015).

[16] *Twombly*, 550 U.S. at 544.

[17] *Iqbal*, 556 U.S. at 662.

[18] *Simmons*, 609 F.3d at 1023 (citing *Wyshak*, 607 F.2d at 827).

[19] *In re Sterten*, 546 F.3d 278, 285 (3d Cir. 2008).

[20] *Barnes v. AT&T Pension Benefit Plan*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010).

[21] *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286,

Here, Citibank advances 22 so-called affirmative defenses. All are copied-and-pasted boilerplate. All but one (21st) are just a single sentence; four aren't even affirmative defenses (13th, 14th, 20th, 22nd); three are about tort law (2nd, 6th, 15th); one is about criminal law (6th); two are duplicates (13th, 20th); two raise prior issues (1st, 16th); and one is a flagrant lie (21st). All 22 so-called affirmative defenses are facially absurd, wholly conclusory,[22] and don't even give fair notice. They're not defenses; they're deflections and deceptions.

*1st Aff. Defense: Failure to State a Claim*. Citibank already unpersuasively raised this issue. (ECF No. 35.) The Complaint states 17 plausible claims against Citibank. (*Id.*)

*2nd Aff. Defense: Comparative Negligence*. This defense invokes principles of tort law. This isn't a tort case.

*3rd Aff. Defense: Adequate Legal Remedy*. Citibank fails to state, even generally, to what "adequate legal remedy" it's referring.

*4th Aff. Defense: No Injury*. Citibank fails to state, even generally, to what "injury" or "act or practice" it's referring.

*5th Aff. Defense: Failure To Mitigate*. Citibank fails to state, even generally, to what "damages," "claims," or failure it's referring.

---

1294 (7th Cir. 1989) (citing *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734 (N.D. Ill. 1982)).
[22] *Twombly*, 550 U.S. at 561.

*6ᵗʰ Aff. Defense: Independent/Intervening Conduct.* This defense invokes principles of tort and criminal law. This isn't a tort or criminal case. Citibank fails to state, even generally, to what "independent third parties or their agents" it's referring, as this case has only two parties that used to be contracted: Anhar and Citibank.

*7ᵗʰ Aff. Defense: Estoppel.* Citibank fails to state, even generally, to what "conduct, actions and inactions of Claimant" it's referring, or how the same could possibly let alone plausibly "constitute an estoppel."

*8ᵗʰ Aff. Defense: Waiver.* Citibank fails to state, even generally, to what "conduct, action and inactions of Claimant" it's referring, or how the same could possibly let alone plausibly "bar[]" the Complaint or "amount to and constitute a waiver of any right or rights."

*9ᵗʰ Aff. Defense: Unclean Hands.* Citibank fails to state, even generally, how "the doctrine of unclean hands" could possibly let alone plausibly "bar[]" or even apply to this action.

*10ᵗʰ Aff. Defense: Laches.* Anhar timely filed this action less than eight months after Citibank's first violation, and less than one month after its then-most recent. (Compl. ¶ 2.) Citibank has had notice of this case for some 1.5 years. (ECF No. 26.) Citibank fails to state, even generally, how this timeline, which is supported by the record, could possibly let alone plausibly mean "Claimant unreasonably has delayed

taking action," or how it could possibly let alone plausibly cause Citibank any prejudice, let alone "substantial prejudice."

*11ᵗʰ Aff. Defense: Statute of Limitations*. As above, Anhar timely filed this action, and Citibank has had notice for some 1.5 years. (Compl. ¶ 2; ECF No. 26.) Citibank fails to state, even generally, how this well-supported timeline could possibly let alone plausibly bar this action, or to what statute of limitation Citibank is referring, as there's none in "15 U.S.C. section 1666," despite Citibank's citing to it.

*12ᵗʰ Aff. Defense: Ratification*. Citibank fails to state, even generally, how "the doctrine of ratification" could possibly let alone plausibly "bar[]" or even apply to this action, or to what "conduct, actions and inactions of Claimant" it's referring.

*13ᵗʰ and 14ᵗʰ Aff. Defenses: Discharge of Duty and Speculative Damages*.[23] These aren't affirmative defenses.

*15ᵗʰ Aff. Defense: Contributory Negligence*. This defense invokes principles of tort law. This isn't a tort case.

*16ᵗʰ Aff. Defense: Choice of Law*. Citibank already unpersuasively raised this issue. (ECF No. 35.) California law controls the breach-of-contract claim. (*Id.* at 19:5–7.)

---

[23] *See*, *e.g.*, Order Granting In Part and Denying In Part Pl.'s Mot. to Strike Aff. Defenses 5 9:18, *Varrasso v. Barksdale*, No. 3:13-cv-01982-BAS-JLB (S.D. Cal. Apr. 5, 2016); *see also Manley v. Boat/U.S. Inc.*, Case No. 13-cv-5551, 10 (N.D. Ill. Mar. 29, 2016).

*17th Aff. Defense: Preemption*. Citibank fails to state, even generally, to what "federal law" it's referring, or how the preemption doctrine could possibly let alone plausibly apply here. Citibank itself has repeatedly argued (including in its A&C) that the Card Agreement makes the contract claim a state issue. (ECF Nos. 29, 29-2.)

*18th Aff. Defense: Good Faith/Reasonable Commercial Standards*. Citibank fails to state, even generally, to what "act[ions] in good faith" or "reasonable commercial standards" it's referring, or how its longitudinal pattern of intentional misconduct—*which still hasn't stopped*—doesn't inherently preclude this defense.

*19th Aff. Defense: Unintentional Violation/Bona Fide Error*. Citibank fails to state, even generally, to what "claims," "bona fide error," "maintenance," or "procedures" it's referring, or how its longitudinal pattern of intentional misconduct—*which still hasn't stopped*—doesn't inherently preclude this defense.

*20th Aff. Defense: Discharge of Duty*. This isn't an affirmative defense. It's also a substantive duplicate of the thirteenth defense.

*21st Aff. Defense: Agreement to Arbitrate*. This is a flagrant lie. Citibank itself concedes in ¶ 14 of its A&C, **"Citibank received a letter from Plaintiff opting out of the arbitration agreement applicable to the Account."** (Emphasis added.) Anhar retains a copy of that letter, plus Citibank's reply to it confirming his opting out of arbitration, and he

pleaded as much in his *verified* Complaint. (Compl. ¶¶ 2, 14, 15.)
Citibank's intentionally saying otherwise is a flagrant Rule-11(b)(2)
violation and should be sanctioned under 11(c).

      *22ⁿᵈ Aff. Defense: Reservation of Right to Assert Other Defenses.*
This isn't an affirmative defense.

      All these so-called affirmative defenses violate Rule 11(b)(2) and
(3) and are prejudicially insufficient, redundant, immaterial, and/or
impertinent. Thus, they should all be stricken.

                    **b.**    ***Citibank profusely evades admitting allegations***
                                ***or denying the substance of allegations.***

      Rule 8(b) "permits only three possible responses to a complaint:
(1) admission; (2) denial; or (3) a disclaimer statement in compliance
with Rule 8(b)'s provision for lack of knowledge or information, which
is deemed a denial."[24] Accordingly, merely saying "the document
'speaks for itself'" is an "unacceptable device, used by lawyers who
would prefer not to admit something that is alleged about a document
in a complaint (or who may perhaps be too lazy to craft an appropriate
response to such an allegation) … ."[25]

---

[24] *Lane v. Page*, 272 F.R.D. 581, 602 (D.N.M. 2011).
[25] *State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. 2001).

Here, Citibank evades admitting an allegation or denying the substance of an allegation *75 times*. In ¶¶ 4, 5, 9, 17–19, 28, 32, 33, 43, 49, 54, 78, 83, 90, 149, 158, 167, 169, 179, 188, 196, 204, 212, 214, 223, 225, 234, 236, 245, 247, 256, 258, 267, 276, 285, and 296, Citibank says it "states" something (of its own) rather than "admits" the allegation. In ¶¶ 2 and 3, Citibank says it "does not challenge" the allegation rather than "admits" the allegation. In ¶ 4, Citibank says, "[T]here are no allegations in Paragraph 4 [of the Complaint] directed at Citibank and, therefore, no response is required," despite ¶ 4 of the Complaint expressly alleging Anhar has "had four student loans with Defendant, plus a checking and savings account, as well as a more recent second credit card—all now closed by Mr. Anhar."

In ¶ 12, Citibank launches into rhetorically responding to its own adulterated version of the allegation, and then actually makes a counter-allegation. And in ¶¶ 9, 15, 17–19, 32, 43, 49, 54, 78, 83, 90, 149, 158, 167, 169, 179, 188, 196, 204, 212, 214, 223, 225, 234, 236, 245, 247, 256, 258, 267, 276, 285, and 296, Citibank says a given document alleged in the Complaint "speaks for itself," rather than responding to the allegations about that document/its contents. All these evasions violate Rule 8(b)(1) and (2) and are prejudicially immaterial and impertinent. Thus, they should be stricken.

### c. *Citibank profusely baselessly invokes lack of knowledge or information to deny allegations.*

Per Rule 8(b)(5), "A party *that lacks* knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial." (Emphasis added.)

Here, in the context of its having been notified of this case some 1.5 years ago, Citibank invokes lack of knowledge or information *152 times*. Of these, a mere 14 may be credible. The remaining 138 are facially absurd because in nearly all (if not all) of them, Citibank disavows its own documents, written statements, or other records, some of which Citibank itself has previously filed with the court.

Detailing each instance is impractical. So it'll have to do to list all the offending paragraphs first, and then summarize only the first several just to demonstrate their baselessness. The offending paragraphs are: 4, 12, 14, 16, 20–24, 25, 26, 29, 30, 31, 34, 35, 37–42, 44–48, 50–53, 55–57, 63, 64, 67–70, 72–77, 79, 80, 84, 86–89, 91, 150–54, 159–62, 168, 170–74, 180–83, 189–92, 197–200, 205–08, 213, 215–19, 224, 226–30, 235, 237–41, 246, 248–52, 257, 259–63, 268–72, 277–81, 286–92, 297–303.

Some examples of Citibank's baseless disavowals include: ¶ 4 re Anhar's having had student loans and a checking and savings account with Citibank itself; ¶ 12 re the original brand name and account

number of the subject Citibank account; ¶ 14 wherein Citibank says both that it received Anhar's letter opting out of arbitration and that it lacks sufficient knowledge or information of the same; ¶ 16 re whether Citibank mailed its own policy update to Anhar; ¶¶ 20–24 re Anhar's August 25, 2018 interactions with Citibank's own ATMs; ¶ 25 re Anhar's calling Citibank's own customer service department; ¶ 26 re Citibank's having received Anhar's first Consumer Financial Protection Bureau ("CFPB") complaint, despite having replied to it; ¶ 29 re Citibank's having received Anhar's first CFPB feedback, despite having replied to it; ¶ 30 re Citibank's having received Anhar's second CFPB complaint, despite having replied to it; ¶ 31 re Citibank's own customer service department having mailed Anhar a letter; ¶ 34 re Citibank's having received Anhar's second CFPB feedback, despite having replied to it, and so on. All these baseless invocations of lack of knowledge or information violate Rule 8(b)(5) and are prejudicially immaterial and impertinent. Thus, they should be stricken.

### d.  *Citibank flagrantly denies allegations in bad faith and fails to admit the parts that are true.*

Per Rule 8(b)(4), "A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest."

Here, Citibank denies allegations in bad faith and fails to admit the parts that are true more than a dozen times. First, Citibank denies,

in full, the Complaint's ¶ 1. This equates to denying that this case "concerns Michael N. Anhar's now-closed Citi® ThankYou® Preferred Mastercard.®" Yet in the "Factual Background" section of its A&C, Citibank acknowledges this case is about Anhar's Citibank account. (A&C 57:2–14; *see also* ¶ 12.) Citibank's denial also equates to denying that Anhar's account is closed. Yet in ¶ 12 of its A&C, Citibank alleges, "[T]he Account is charged-off [*i.e.*, closed] … ." (A&C ¶ 12.) Citibank's denial also equates to denying that "[i]ts own Aug-18 interest charge caused Mr. Anhar's account to go over limit, resulting in Mr. Anhar's suspension from making conforming cash payment." Yet in ¶ 9 of its A&C, Citibank says, "[T]he contents of the letter dated September 10, 2018 speaks [sic] for itself." (A&C ¶ 9.) That letter is from Citibank (from the Office of the President, no less), and Anhar quotes from it in his Complaint, and it expressly shows Citibank's own words contradict its denial about the cash-payment suspension. (Compl. ¶ 9.)

The above examples are just in the first paragraph alone. Citibank goes on to repeat this denial-and-contradiction pattern in ¶¶ 9 (twice), 6 (four times), 7 (six times), and 5, where it denies its own parent company's contact information. All these bad-faith denials and failures to partially admit violate Rule 8(b)(4) and are prejudicially immaterial and impertinent. Thus, they should be stricken.

**2.    Citibank's Counterclaim fails to state a claim on which relief can be granted and thus must be dismissed with prejudice.**

As a preliminary matter, in ¶ 1 of its Counterclaim, Citibank wrongly refers to "claims arising out of Anhar's Citibank credit card *accounts* … ." (Emphasis added.) Anhar's second Citibank credit-card account is informative here, but his claims arise only out of his first account, plus Citibank's various related FCBA violations. (Compl. ¶ 1)

Further, also in ¶ 1 of its Counterclaim, Citibank wrongly says, "Anhar's Complaint challenges the validity of the balance on Anhar's delinquent credit card account with Citibank." The Complaint alleges there couldn't have been a delinquency in the first place because well-before payment was due, Citibank had already "*refused—four times—* to accept and credit Anhar's conforming cash payment, thereby failing to perform … and thus breaching its own written contract," and then Citibank went "on to violate … the FCBA … ." (Compl. ¶ 1.)

Finally, ¶¶ 15 and 16 under Citibank's first claim aren't even elements of a breach-of-contract cause of action. They're misplaced request for relief, and they're already pled in the Wherefore clauses of Citibank's Answer (item 4) and Counterclaim (items (b)–(d)). These misplaced requests for relief are prejudicially redundant, immaterial, and impertinent. Thus, they should be stricken.

### a.   *Citibank's Roes 1 through 10 are facially implausible scapegoats and boogeymen.*

The plausibility of Citibank's Roes 1 through 10 rests on one troubling premise: *Don't look at us…whatever you do, don't look at us.*

On the caption page of its A&C, Citibank list Anhar and Citibank as the only two parties to this action. Citibank also alleges in its "Jurisdiction" section that its "Counterclaim … is based [on] and does not require for its adjudication the presence of third parties over which the Court cannot acquire jurisdiction." (A&C 56:7–9.) To allege this necessarily means Citibank knows who the parties to this case are.

Despite the foregoing, in ¶ 6 of its so-called affirmative defense, Citibank invokes some mysterious "independent third parties or their agents." More to the point, in ¶ 4 of its Counterclaim, Citibank alleges "Roes 1 through 10" are counter-defendants here, and they're "legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to Citibank, as herein alleged." First, as it did repeatedly throughout its affirmative defenses, Citibank is again invoking a principle of tort law: proximate cause. This isn't a tort case. Further, Citibank fails to state, even generally, to what "events and happenings" or "injury and damages" it's referring, or to where in its A&C it's referring when it says "as herein alleged." Citibank pleads no facts whatsoever to

support the plausible existence of any additional counter-defendants.

All these scapegoats and boogeymen, which Citibank doesn't even

caption (thus violating Rule 10(a)) should be dropped under Rule 21.

### b.      *Citibank's first claim is facially implausible because it fails to plead the complete contract.*

The plausibility of Citibank's first claim rests on one troubling

premise: *Don't look at the whole contract.*

Anhar's account was governed by a Card Agreement that

declares, "This Card Agreement **(Agreement)** is your contract with

us," and "[a]ny amendments to this Agreement also are part of this

Agreement." (ECF No. 29-2 Bates 8.) In ¶ 6 of its Counterclaim,

Citibank confirms, "The Account is governed by a written Card

Agreement, as amended from time-to-time." Despite all this, when

Citibank pleads the elements of its first "*Card-Agreement*" claim, it

fails to plead an indispensible 2018 amendment to that Agreement.

Namely, in 2018, in its mailed letter to Anhar dated May 8, 2018

and title UPDATE, Citibank gave notice of an upcoming amendment.

Therein, Citibank notified Anhar of "[u]pcoming changes to paying

your credit bill with cash," which would take effect "July 21, 2018."

(ECF No. 31-1 Bates 4–5.) Citibank even reiterated these upcoming

changes within the body of Anhar's June 22, 2018 billing statement,

where it said, "For your convenience, proprietary Citibank ATMs

**will accept cash payments** up to $3,000 per credit card account per calendar month with your credit card PIN." (ECF No. 31-1 Bates 58, emphasis added.) About a month later, the cash-payment changes took effect. Two days later, Citibank again reiterated its cash-payment changes, this time within Anhar's July 23, 2018 billing statement. (ECF No. 31-1 Bates 62.) Citibank has never disputed the authenticity of Anhar's original true and correct June and July 2018 statements. (*See*, *e.g.*, A&C ¶¶ 17, 18; *see also* ECF No. 32.)

Per Citibank's own copy of the Agreement, if Anhar followed the payment instructions in that Agreement, pertinently by "pay[ing] in U.S. dollars" and "follow[ing] the additional payment instructions shown on [his] statement," then Citibank "**[wi]ll credit the payment** to [his] Account as of the day we receive it." (ECF No. 29-2 Bates 12, emphasis added.) But on August 25, 2018, without any advance notice, when Anhar did all he was contractually obligated to do and attempted four times to make a cash payment that conformed to the Agreement and its July 21, 2018 cash-payment amendment, Citibank refused, all four times, to accept and credit Anhar's conforming cash payment.

The very first time Citibank refused to accept and credit Anhar's conforming cash payment, Citibank failed to perform under the Agreement and amendment and thus breached its own contract. And the moment Citibank did that, the contract became void, and the debt

thereunder became invalid. Accordingly, because Citibank's breach was on August 25, 2018—almost a month before payment was even due on September 20, 2018—there was no further obligation for Anhar to try, yet again, to make payment. Thus, any of Citibank's talk of other payment methods (of its own choosing) refers to wanting Anhar to pay *after* Citibank had already breached the contract.

Citibank's cash-payment amendment is part of the Agreement, which is the contract, and thus it's indispensable to any claims made under that Agreement. By failing to plead that amendment, Citibank is left with a contract claim that's based on an incomplete contract. Thus, its claim is facially implausible and must be dismissed with prejudice.

### c. *Citibank's second claim is facially implausible because it's factually bankrupt.*

The plausibility of Citibank's second claim rests on two troubling premises: *Don't look at the whole contract, and don't ask any questions.*

In its Counterclaim, Citibank incessantly makes conclusory statements like, Anhar "ultimately defaulted on the Account" (¶ 9); Anhar "fail[]ed to make timely payments on the Account" (¶ 14); "Anhar is indebted to Citibank in the amount of at least $3,540.65" for which "demand has been made on Anhar," (¶ 18); "Anhar has failed and refuses to make payments" (¶ 19); "Citibank billed Anhar for the Account and received no proper objections" (¶ 19); and so on.

Besides failing to plead the complete contract—which alone invalidates Citibank's second claim—Citibank doesn't plead a scintilla of fundamental and foundational facts, not even *one* billing statement. Instead, it alleges $3,540.65 but fails to state, even generally, how it computed this figure, over what period it allegedly accrued, or even what it's allegedly comprised of (*i.e.*, principal/fees/interest). In fact, in ¶¶ 15 and 18 of its Counterclaim, Citibank alleges the entire amount is "principal." (*See also* ¶ (a) of the Countercl.'s Wherefore clause.) But this is facially absurd and disproved by Citibank's own previously filed evidence (which is invalid on other grounds), as the credit limit of the subject account topped out at "$3,150." (ECF No. 29-1 Bates 1.) Thus, even based on Citibank's own alleged figure, a *minimum* of $390.65 can't even mathematically be principal.

Further, Citibank alleges a default but fails to state, even generally, how or even when this allegedly happened, let alone the alleged default amount. Citibank alleges benefit was received, payment was demanded, payment was refused, and an amount was billed, but fails to state, even generally, how, how much, or even when any of this allegedly happened. Finally, Citibank alleges not receiving any proper objections—thus implicitly conceding it did receive objections—yet it fails to state, even generally, what objections it received, how they

were allegedly improper, or even when it received them. And again, all this is on top of failing to plead the complete contract in the first place.

Even if Citibank had pled the complete contract—which it expressly didn't—Citibank's claim is factually bankrupt. By failing to plead even a scintilla of fundamental and foundational facts, Citibank is left with nothing more than wholly conclusory allegations. Thus, its claim is facially implausible and must be dismissed with prejudice.

### D.   CONCLUSION

Given all the above, Citibank's A&C is so infested with prejudicial procedural and substantive defects and deficiencies that it should be stricken in full and must be dismissed with prejudice.

### VERIFICATION

I certify under penalty of perjury that the foregoing is true and correct.[26]

Executed: August 2, 2021
in Turlock, California, U.S.A.

MICHAEL N. ANHAR
*Plaintiff/Petitioner, Pro Se*
3183 Kendra Ct.
Turlock, CA  95382-1335
Tel.: (209) 669-3909
michael.anhar@gmail.com

---

[26] 28 U.S.C. § 1746; *see also Johnson v. Meltzer*, 134 F.3d 1393 (9th Cir. 1998) (citing *Autera v. Robinson*, 419 F.2d 1197, 1202 n. 22 (D.C. Cir. 1969)).