Michael N. Anhar
3183 Kendra Ct.
Turlock, CA  95382-1335
Tel.: (209) 669-3909
michael.anhar@gmail.com
*Plaintiff/Petitioner, Pro Se*

STROOCK & STROOCK & LAVAN LLP
Arjun P. Rao (SBN 265347)
Marcos D. Sasso (SBN 228905)
Nami R. Kang (SBN 227954)
2029 Century Park E., Ste. 1800
Los Angeles, CA  90067-3086
Tel.: (310) 556-5800
Fax: (310) 556-5959
lacalendar@stroock.com
*Attorneys for Defendant and Counterclaimant
  CITIBANK, N.A.*

UNITED STATES DISTRICT COURT

For the Eastern District of California

Fresno Division

| | |
|---|---|
| **Michael N. Anhar**, <br><br>  Plaintiff/Petitioner; <br><br> v. <br><br> **Citibank, N.A.**, <br><br>  Defendant/Respondent. | No.: 1:19-cv-00496-NONE-EPG <br><br> **Joint Scheduling Report** <br><br> <u>Mandatory Scheduling Conference</u> <br> Date:     August 16, 2021 <br> Time:    11 a.m. <br> Place:    Ctrm. 10 (Fl. 6) <br> Judge:   Erica P. Grosjean |

**Citibank, N.A.**,

        Counter-Claimant;

v.

**Michael N. Anhar**,

        Counter-Defendant.

*The parties intend to appear by phone.*

On July 27, 2021, Plaintiff ("Anhar") and Defendant's ("Citibank's") counsel met and conferred by phone per the Order Setting Mandatory Scheduling Conference. (ECF No. 39.) Per that same Order, plus the Order Setting Scheduling Conference and Fed. R. Civ. P. ("Rule") 26(f), the parties submit this Joint Scheduling Report. (ECF No. 38.)

**1.     Summary of factual and legal contentions, and relief sought:**

*Anhar's summary*: Anhar is proceeding *pro se* and *in forma pauperis* in this civil action against Citibank for breach of contract and numerous civil violations of the Fair Credit Billing Act ("FCBA"). The case concerns Anhar's Citibank credit-card account, which Anhar pristinely maintained for over 12 years but which he closed on August 25, 2018. That account was governed by a Card Agreement, which was his contract with Citibank. That Agreement/contract was amended from time to time, and any amendments to that Agreement were also part of that Agreement. Effective July 21, 2018, Citibank instituted such an amendment in the form of a revised cash-payment policy. Citibank even twice reiterated this cash-payment

amendment in Anhar's June and July 2018 billing statements, wherein it set forth the terms under which Citibank ATMs "will accept cash payments." Citibank has never disputed the authenticity of Anhar's original true and correct June and July 2018 statements.

Per Citibank's own copy of the Agreement, if Anhar followed the payment instructions in that Agreement, pertinently by paying in U.S. dollars and following the additional payment instructions shown on his statements, then Citibank "[w]ill credit his payment" to his account the same day Citibank received it. But on August 25, 2018, without any advance notice, when Anhar did all he was contractually obligated to do and attempted four times to make a cash payment that conformed to the Agreement and its July 21, 2018 cash-payment amendment, Citibank refused, all four times, to accept and credit Anhar's conforming cash payment. Citibank's rationale for this is that its own August 2018 interest charge caused Anhar's account to go over limit, resulting in Anhar's suspension from making conforming cash payment. Citibank's interest charge had cause Anhar's account to go over limit 35 other times before, all without issue or suspension.

The very first time Citibank refused to accept and credit Anhar's conforming cash payment, Citibank failed to perform under the Agreement and amendment and thus breached its own contract. And the moment Citibank did that, the contract became void, and the debt thereunder became invalid. Accordingly, because Citibank's breach was on August 25, 2018—

almost a month before payment was even due on September 20, 2018—there was no further obligation for Anhar to try, yet again, to make payment. Thus, any of Citibank's talk of other payment methods (of its own choosing) refers to wanting Anhar to pay *after* Citibank had already breached the contract. Despite this, ever since then, Citibank has gone on to pretend the debt is valid by taking numerous actions that have repeatedly violated the FCBA.

All the foregoing has harmed and continues to harm Anhar. Thus, Anhar requests relief as follows: judgment in his favor and against Citibank; costs of suit; prejudgment interest; actual damages under 15 U.S.C. § 1640(a)(1) of $75,011 or such amount as may be proven at trial; civil statutory damages under 15 U.S.C. §§ 1640(a)(2)(A)(iii) of $15,284.04 for all FCBA claims; punitive damages under 15 U.S.C. §§ 1640(a)(2)(A)(iii) of $1,000,000 "or such higher amount as may be appropriate in the case of an established pattern or practice of such failures"; an order requiring Citibank to issue immediately to Anhar corrected billing statements for each month since August 25, 2018, including a final billing statement showing a $0 balance; an order requiring Citibank to correct immediately all its internal and external (third-party) records and reports (past, present, future) to reflect that (a) effective August 25, 2018, the account is no longer due and owing or under contract due to Citibank's contractual breach, and (b) the account-closure date of Anhar's credit-card account is August 25, 2018; and preliminary and permanent injunctions prohibiting Citibank, including its

1  parent, officers, managers, employees, agents, representatives, members,
2  affiliates, contractors, subsidiaries, successors, assignees, heirs, executors,
3  trustees, and attorneys, from taking, or reporting that they are taking, any
4  adverse action against Anhar and/or his account.
5  *Citibank's summary*: Citibank contends that it did not breach the
6  contract that governs Plaintiff's Citibank credit card account.  Citibank's
7  investigation of Plaintiff's claims is ongoing, and it reserves, and in no way
8  waives, all defenses.  However, at the time Plaintiff attempted to make the
9  payment via the ATM the account was over the limit.  This was do to
10 Plaintiff's use of the card, not conduct by Citibank.  Any damages Plaintiff
11 may have incurred where as a result of his failure to pay the minimum
12 amount by the payment due date, and not Citibank's decision not to accept
13 his cash payment.  Accordingly, any purported "damage" suffered is due to
14 Plaintiff's decision not to make a payment prior to the payment due date
15 and, by failing to meet his own contractual obligations, Plaintiff cannot state
16 a claim for breach of contract.
17 In addition, Plaintiff's claims for violation of the FCBA fail because:
18 (1) Plaintiff does not, and cannot, meet his burden to demonstrate that any
19 disclosures on his monthly credit card billing statements are inaccurate; (2)
20 Plaintiff does not, and cannot, meet his burden of demonstrating the
21 existence of a "billing error" within the meaning of the FCBA; and (3)
22 Plaintiff cannot establish any damage suffered.

Finally, Plaintiff is obligated to Citibank to pay the balance incurred on the account.  Pursuant to the terms of the Card Agreement (as amended from time to time), Plaintiff agreed, in consideration of Citibank extending credit, to pay for any transactions charged to the Account, including, as applicable, fees and finance charges.  In reliance upon the provisions of the Card Agreement, Citibank did extend credit pursuant thereto at the request of Plaintiff.  Citibank has duly performed all the conditions precedent on its part required to be performed under the Card Agreement.  Plaintiff has breached the Card Agreement by failing to make timely payments on the Account.  Accordingly, Citibank seeks to recover from Plaintiff the balance owing on the Account, which is at least $3,540.65.

Pursuant to the terms of the Card Agreement, Citibank is entitled to interest on the unpaid principal sums advanced by Citibank at the agreed contract rate of interest.  Citibank will ask leave of this Court to amend its Counterclaim at the time of trial, to conform to proof, to state the exact amount of interest to which Citibank is entitled.  The Card Agreement also provides that Citibank may recover attorneys' fees and costs incurred in connection with the collection of the balance due on the Account.

**2.     Summary of major disputed facts and contentions of law:**

The major disputes and contentions are whether: (a) Citibank breached the contract, (b) Anhar breach the contract, (c) Citibank violated the FCBA, (d) Citibank harmed Anhar, (e) Citibank owes money to Anhar,

(f) Anhar owes money to Citibank, and (g) there are parties to this case other than Anhar and Citibank.

**3.   Status of all matters presently set before the Court:**

*August 16, 2021 Mandatory Joint Scheduling Conference*: expected to proceed as planned, with both parties intending to appear by phone.

*Anhar's August 2, 2021 Motion to Strike and Dismiss Citibank's Answer and Counterclaim*: Citibank's opposition/non-opposition due August 17, 2021; Anhar's reply (if any) due August 24, 2021. Hearing is set for August 31, 2021 at 9:30 a.m. in Courtroom 4. The matter is submitted on the record and briefs, unless ordered otherwise.

**4.   Discovery Plan:**

    a.   Rule-26(a)(1) initial disclosures exchange: August 30, 2021[1]

    b.   Non-expert discovery deadline: May 16, 2022[2]

    c.   Mid-status discovery conference: February 16, 2022[3]

    d.   Expert-witnesses disclosure deadline: After making several diligent attempts, the parties were unable to agree on this date. Anhar proposes May 16, 2022; Citibank proposes April 16, 2022.

    •   Rebuttal expert-witnesses disclosure deadline: After making several diligent attempts, the parties were unable to agree on

---

[1] 14 days post Rule-26(f) conf. per Rule 26(a)(1)(C)
[2] $\approx$ 9 months post Rule-26(f) conf. per ECF No. 39 ¶ 4b.
[3] $\approx$ 6 months post Rule-26(f) conf. per ECF No. 39 ¶ 4c.

   this date. Anhar proposes June 16, 2022; Citibank proposes May 16, 2022.

- Expert-discovery deadline: July 16, 2022

 e. The parties don't propose any changes in the limits on discovery imposed by Rule 26(b); 30(a)(2)(A), (B); 30(d); or 33(a).

 f. Citibank anticipates needing a protective order relating to the discovery of certain information within its internal documents. Citibank will meet and confer with Plaintiff to determine if a joint motion/stipulation for protective order can be submitted.

 g. The parties don't have any issues or proposals relating to the timing, sequencing, phasing, or scheduling of discovery.

 h. The parties don't anticipate the need to take discovery outside the United States.

**5.**   **Dates agreed to by the parties:**

 a. Dispositive-motions filing deadline: June 30, 2022[4]

 b. Pre-trial conference: October 28, 2022[5]

 c. Trial: December 27, 2022[6]

6.   **Settlement**: The parties have discussed their openness to settlement and to settlement conference before a magistrate judge. On August 2, 2021,

---

[4] 45 days post expert-witnesses disclosure deadline per ECF No. 39 ¶ 5a.
[5] ≈ 120 days post dispositive-motions filing deadline per ECF No. 39 ¶ 5b.
[6] ≈ 60 days post pre-trial conf. per ECF No. 39 ¶ 5c.

8

ANHAR V. CITIBANK                     J. SCHED'G REP.
LA 52603361
LA 52603445

1  Anhar submitted to Citibank for its consideration a Settlement Demand. The
2  parties plan to continue exploring settlement.
3  7.  Anhar has demanded a trial-by-jury.
4  8.  The parties expect the trail to take 1–4 days.
5  9.  The parties don't request bifurcation or phasing of trial or have any
6  other suggestion for shortening or expediting discovery, pre-trial motions, or
7  trial.
8  10. This matter is unrelated to any other matter pending in this court or in
9  any other court, including bankruptcy court.

Additional Disclosures Related to Electronic Discovery

The parties discussed Electronic Discovery and don't anticipate any difficulties or disagreements. The parties will work to segregate and preserve computer-based information to avoid accusations of spoliation. The parties don't anticipate the need for any email discovery. The parties agreed to notify each other immediately on learning of inadvertent production of privileged information and agreed to bring any disputes related thereto promptly to the Court. The parties are uncertain if data restoration or backup data will be necessary, but Anhar expressed wanting to ensure that, to the extent it hasn't already, Citibank take steps to preserve any electronic records related to his August 25, 2018 interactions with the Citibank ATMs at its branch on Geer Road in Turlock, California; Citibank noted this.

Dated: August 9, 2021

/s/ Michael N. Anhar
MICHAEL N. ANHAR
*Plaintiff/Petitioner, Pro Se*

STROOCK & STROOCK & LAVAN LLP

Dated: August 9, 2021

/s/ Marcos D. Sasso
(as authorized on August 9, 2021)
MARCOS D. SASSO
*Defendant and Counterclaimant
Citibank, N.A.*